ACCEPTED
15-25-00072-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/26/2025 5:03 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00072-CV

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT AUSTIN

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/26/2025 5:03:01 PM
CHRISTOPHER A. PRINE
~~Clerk~~

FRANCES SPANOS SHELTON,

*Appellant*,

v.

VERNON LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, KATHRYN NICOLE LAWRIE, AND KATHERINE LEUSCHNER,

*Appellees.*

On Interlocutory Appeal from the 414th District Court
of McLennan County, Texas, Cause No. 2024-3035-5

BRIEF OF APPELLANT

Kirk L. Pittard
State Bar No. 24010313
kpittard@dpslawgroup.com
Rick Thompson
State Bar No. 00788537
rthompson@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 (fax)

Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Ryan C. Johnson
State Bar No. 24048574
rjohnson@cjsjlaw.com
Scott H. James
State Bar No. 24037848
sjames@cjsjlaw.com
M. Katie Quillen
State Bar No. 24133047
kquillen@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
(254) 732-2242
(866) 627-3509 (fax)

COUNSEL FOR APPELLANT

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

As required by Texas Rule of Appellate Procedure 38.1(a), Appellant hereby identifies all parties and their appellate and trial counsel as well as other parties to the trial court's order:

| APPELLANT | APPELLATE COUNSEL |
|---|---|
| Frances Spanos Shelton ("Fran") | Kirk L. Pittard<br>State Bar No. 24010313<br>Rick Thompson<br>State Bar No. 00788537<br>DURHAM, PITTARD & SPALDING, LLP<br>P.O. Box 224626<br>Dallas, Texas 75222<br>(214) 946-8000<br>(214) 946-8433 (fax) |

**TRIAL & APPELLATE COUNSEL**

Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Ryan C. Johnson
State Bar No. 24048574
rjohnson@cjsjlaw.com
Scott H. James
State Bar No. 24037848
sjames@cjsjlaw.com
M. Katie Quillen
State Bar No. 24133047
kquillen@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
(254) 732-2242

ii

| **APPELLEES** | **TRIAL & APPELLATE COUNSEL** |
|---|---|
| Vernon Leuschner | Andy McSwain<br>State Bar No. 1361100<br>mcswain@thetexasfirm.com<br>Mark E. Firmin<br>State Bar No. 24099614<br>mfirmin@thetexasfirm.com<br>BEARD KULTGEN BROPHY BOSTWICK &<br>DICKSON PLLC<br>220 South 4th Street<br>Waco, Texas 76701<br>(254) 776-5500<br>(254) 776-3591 (fax) |
| Robert Spanos, Christopher Spanos, Katherine Leuschner, and Katherine Nicole Lawrie | Jim Dunnam<br>State Bar No. 06258010<br>jimdunnam@dunnamlaw.com<br>Andrea Mehta<br>State Bar No. 24078992<br>andreamehta@dunnamlaw.com<br>Mason Vance Dunnam<br>State Bar No. 24108079<br>masondunnam@dunnamlaw.com<br>DUNNAM & DUNNAM LLP<br>4125 West Waco Drive<br>Waco, Texas 76710<br>(254) 753-6437<br>(254) 753-7434 (fax) |

# TABLE OF CONTENTS

**Page(s)**

Identity of Parties and Counsel ................................................................. ii

Table of Authorities ................................................................................. vii

Statement of the Case ............................................................................... xiv

Statement of Jurisdiction .......................................................................... xvi

Statement Regarding Oral Argument ...................................................... xvii

Issues Presented ..................................................................................... xviii

Statement of the Record ........................................................................... xix

Introduction ................................................................................................ 1

Statement of the Facts ................................................................................. 2

Summary of Argument ................................................................................. 9

Argument and Authorities ......................................................................... 10

I.    The District Court Abused Its Discretion by Ordering the
      Appointment of the Receiver Because the Order Enforces
      the County Court at Law's Void Orders ........................................... 12

II.   County Court at Law No. 1 of McLennan County Had No
      Jurisdiction Over the Trust Dispute ................................................. 13

      A.    County Court at Law No. 1 Had No Jurisdiction
            Over the Administrative of a Trust in 2022 .............................. 15

            1.    *Section 25.1572 of the Texas Government Code
                  Did Not Confer Jurisdiction on the McClennan
                  County Court at Law Over Cases Involving the
                  Administration of a Trust* .............................................. 15

            2.    *The Claims Regarding the Administration of the
                  Trust Did Not Fall Within the County Court's
                  Amount-in-Controversy Jurisdiction Either* ................ 16

3.    *County Court at Law No. 1 Did Not Have
Original Probate Jurisdiction Over the Trust
Claims* .......................................................................18

4.    *County Court at Law No. 1 Did Not Have
Pendent or Ancillary Jurisdiction Over the Trust
Claims* .......................................................................20

B.    Assuming Arguendo the County Court at Law No.
1 Had Some Sort of Ancillary Jurisdiction Over the
Trust Claims, the County Court Lost Jurisdiction
No Later Than May 18, 2022—*i.e.*, Before the
County Court Extended the Term of Judge Stem as
Trust Advisor .........................................................................24

III.   Assuming the Trial Court Had Jurisdiction, Appellees
Failed to Present Any Evidence to Support the
Appointment of a Receiver Under Texas Law ......................................26

A.    The Appointment of a Receiver Under Texas Civil
Practice and Remedies Code § 64.001 Was an Abuse
of Discretion Because the Decision Is Not Supported
by Any Evidence.....................................................................27

1.    *Section 64.001(a)(2) does not apply here*................................28

2.    *Section 64.001(a)(3) does not authorize the district
court's appointment of the receiver*.........................................29

3.    *Section 64.001(a)(6) does not authorize the district
court's appointment of the receiver either* ..............................33

B.    The Appointment of a Receiver Under Texas
Property Code § 114.008 Was an Abuse of
Discretion as Well............................................................................38

C.    The "Rules of Equity" Did Not Justify the
Appointment of the Receiver..........................................................40

**Page(s)**

IV. The Order Appointing Receiver Requires Fran to Pay the Bills of the Trust, Which Violates Texas Law and Results in an Unconstitutional Taking of Fran's Property ...................................42

V. The Order Appointing Receiver Also Improperly Enjoins Any Beneficiary from Directly or Indirectly Taking Any Action That Would Hinder the Receiver ...............................................44

Conclusion and Prayer ...............................................................................45

Certificate of Compliance .........................................................................47

Certificate of Service .................................................................................47

Appendix in Support of Appellant's Brief .............................................48

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abila v. Miller*, 683 S.W.3d 842 (Tex. App.—Austin 2023, no pet.) ...............30

*Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223 (Tex. 1991) ..............................12

*Benefield v. State*,
   266 S.W.3d 25 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ...................37

*Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998) ......................................................11

*Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887
   (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd w.o.j.) ........................45

*Brown v. Peters*, 94 S.W.2d 129 (Tex. Comm'n App. 1936) ..............................14

*Castaneda v. Chapa*, No. 13-22-00537-CV, 2024 WL 2197216
   (Tex. App.—Corpus Christi-Edinburg May 16, 2024, pet. denied)............22

*City of Houston v. Carlson*, 451 S.W.3d 828 (Tex. 2014) ....................................43

*Commons of Lake Houston, Ltd. v. City of Houston*,
   711 S.W.3d 666 (Tex. 2025)..................................................................................43

*Copeland v. Bluebonnet Fin. Assets*, No. 05-21-00714-CV,
   2023 WL 3860430 (Tex. App.—Dallas June 7, 2023, no pet.) .......................12

*Elliott v. Weatherman*, 396 S.W.3d 224 (Tex. App.—Austin 2013, no pet.).....11

*Estate of Benson*, No. 04-15-00087-CV, 2015 WL 5258702
   (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd) ...................................11

*Estate of Hoskins*, 501 S.W.3d 295
   (Tex. App.—Corpus Christi-Edinburg 2016, orig. proceeding)..................38

# TABLE OF AUTHORITIES [CONT'D]

**Cases**                                                                                                    **Page(s)**

*Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100
    (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.)..........................28, 34

*Estate of Price*, 528 S.W.3d 591 (Tex. App.—Texarkana 2017, no pet.)...........35

*Estate of Vines*, No. 01-21-00003-CV, 2022 WL 1085624
    (Tex. App.—Houston [1st Dist.] Apr. 12, 2022, no pet.).......................11, 12

*Fallon v. MD Anderson Physicians Network*, 586 S.W.3d 58
    (Tex. App.—Houston [1st Dist.] 2019, pet. denied).....................................30

*Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*,
    262 S.W.3d 813 (Tex. App.—Fort Worth 2008, no pet.)...............................31

*Floyd v. MMWKM Advisors, LLC*, No. 05-23-00638-CV,
    2024 WL 549036 (Tex. App.—Dallas Feb. 12, 2024, no pet.).......................28

*Fortis Benefits v. Cantu*, 234 S.W.3d 642 (Tex. 2007)...............................35

*Franks v. Hovey*, No. 10-18-00218-CV, 2022 WL 395228
    (Tex. App.—Waco Feb. 9, 2022, pet. denied)................................................12

*Gilmer v. Ferguson*,
    148 S.W.2d 984 (Tex. Civ. App.—El Paso 1941, no writ)............................37

*Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930
    (Tex. App.—Austin 1997, no pet.).........................................................24, 25

*Greiner v. Jameson*, 865 S.W.2d 493
    (Tex. App.—Dallas 1993, writ denied).........................................................44

*Guardianship of Fairley*, 650 S.W.3d 372 (Tex. 2022).............................25

**Cases**                                                                                    **Page(s)**

*Hamilton Metals, Inc. v. Global Metal Servs., Ltd.*, 597 S.W.3d 870
(Tex. App.—Houston [14th Dist.] 2019, pet. denied) ...................................10

*Hawkins v. Twin Montana, Inc.*, 810 S.W.2d 441
(Tex. App.—Fort Worth 1991, no writ).........................................................37

*In re Breviloba, LLC*, 650 S.W.3d 508 (Tex. 2022).....................................................15

*In re Estate of Hallmark*,
629 S.W.3d 433 (Tex. App.—Eastland 2020, no pet.) ...................................22

*In re Harrison*, No. 14–15–00370–CV, 2015 WL 5935816
(Tex. App.—Houston [14th Dist.] Oct. 13, 2015, orig. proceeding)............13

*In re McCray*, No. 05–13–01195–CV, 2013 WL 5969581
(Tex. App.—Dallas Nov. 7, 2013, orig. proceeding) ...................................13

*In re Southwestern Bell Tel. Co.*,
35 S.W.3d 602 (Tex. 2000) (orig. proceeding)......................................... 13, 23

*In re Texas Conference of Seventh-Day Adventists*, 652 S.W.3d 136
(Tex. App.—Fort Worth 2022, orig. proceeding) ................................. 13, 23

*In re Toyota Motor Corp.*, No. 10–11–00050–CV, 2011 WL 5830468
(Tex. App.—Waco Nov. 16, 2011, orig. proceeding) ...................................24

*Interest of J.S.*, 670 S.W.3d 591 (Tex. 2023).........................................................33

*Jay & VMK, Corp. v. Lopez*, 572 S.W.3d 698
(Tex. App.—Houston [14th Dist.] 2019, no pet.).........................................28

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150 (Tex. 2004) ....................31

**Cases**            **Page(s)**

*Junkin v. Sterchi Furniture Co.*, 92 S.W.2d 1098
(Tex. Civ. App.—San Antonio 1936, no writ) ................................................28

*Kelley v. Homminga*, 706 S.W.3d 829 (Tex. 2025) .........................................xiii, 1

*Krumnow v. Krumnow*,
174 S.W.3d 820 (Tex. App.—Waco 2005, pet. denied).......................... 10, 26

*Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*,
904 S.W.2d 656 (Tex. 1995)..............................................................................36

*Lawton v. Lawton*, No. 01–12–00932–CV, 2014 WL 3408699
(Tex. App.—Houston [1st Dist.] Jul. 10, 2014, no pet.)................................25

*Matter of Bumstead Family Irrevocable Trust*,
No. 13-20-00350-CV, 2022 WL 710159 (Tex. App.—Corpus
Christi-Edinburg Mar. 10, 2022, pet. denied) ...............................................37

*Matter of Marriage of Pinkston and Smith*, No. 12-24-00185-CV,
2024 WL 3858474 (Tex. App.—Tyler Aug. 15, 2024, no pet.) .............. 26, 35

*Medina v. Benkiser*, 262 S.W.3d 25
(Tex. App.—Houston [1st Dist.] 2008, no pet.).............................................18

*Mexico Foods Holdings, LLC v. Nafal*, No. 05-23-00108-CV,
2023 WL 6284705 (Tex. App.—Dallas 2023, no pet.) ...................................11

*Miles v. Ford Motor Co.*, 914 S.W.2d 135 (Tex. 1995) ..............................xiv, 2, 9

*Moody Nat'l Bank v. Moody*, No. 14-21-00096-CV, 2022 WL 14205534
(Tex. App.—Houston [14th Dist.] Oct. 25, 2022, pet. denied)....................38

*Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855
(Tex. App.—Houston [1st Dist.] 1999, no pet.)....................................... 11, 34

**Cases**                                                                **Page(s)**

*Pajooh v. Royal West Invs. LLC, Series E*, 518 S.W.3d 557
     (Tex. App.—Houston [1st Dist.] Mar. 30, 2017, no pet.) .............................37

*Peek v. Mayfield*, No. 02-22-00492-CV, 2023 WL 5967886
     (Tex. App.—Fort Worth Sept. 1411, 2023, pet. denied)...............................38

*Repka v. Am. Nat'l Ins. Co.*, 186 S.W.2d 977 (Tex. 1945)...................................18

*Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891 (Tex. 1937) .......................41

*Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC*,
     564 S.W.3d 913 (Tex. App—Houston [14th Dist.] 2018, no pet.) ................12

*San Antonio River Auth. v. Austin Bridge & Road, L.P.*,
     601 S.W.3d 616 (Tex. 2020)...............................................................................25

*Schuchmann v. Schuchmann*, 193 S.W.3d 598
     (Tex. App.—Fort Worth 2006, pet. denied)...................................................22

*Schuld v. Dembrinski*,  12 S.W.3d 485
     (Tex. App.—Dallas 2000, no pet.) ........................................................... 24, 25

*Spiritas v. Davidoff*, 459 S.W.3d 224
     (Tex. App.—Dallas 2015, no pet.) ........................................................... 10, 26

*TC & C Real Estate Holdings, Inc. v. ETC Katy Pipeline, Ltd.*,
     No. 10–16–00134–CV, 2017 WL 7048923
     (Tex. App.—Waco Dec. 20, 2017, pet. denied)..............................................12

*Tex. Unemployment Comp. Comm'n v. Metropolitan Bldg. & Loan Ass'n*,
     139 S.W.2d 309 (Tex. Civ. App.—Austin 1940, writ ref'd) .........................41

*Thompson v. Consolidated Gas Util. Corp.*, 300 U.S. 55 (1937)...........................43

**Cases**                                                                   **Page(s)**

*Thompson v. Winkelmann*, No. 01-06-00457-CV, 2008 WL 921041
(Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.)................................42

*Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358 (Tex. 2000).............................16

*United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400 (Tex. 2007)........................16

*Welch v. Milton*, 185 S.W.3d 586 (Tex. App.—Dallas 2006, pet. denied) .......31

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 51.014(a)........................................................xiii

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1) ..................................................8, 44

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(2), (3), (6)........................27-29, 33-35

TEX. CIV. PRAC. & REM. CODE § 64.001(b) ................................................ 28-29, 35

TEX. CONST. art. 1, § 17(a) ...................................................................................43

TEX. ESTATES CODE § 22.029 ................................................................................21

TEX. ESTATES CODE § 31.002(a) ...........................................................................19

TEX. ESTATES CODE § 31.002(b)(2) .......................................................................19

TEX. ESTATES CODE § 31.002(b)(3) ................................................................. 19, 20

TEX. ESTATES CODE § 32.001 .......................................................................... 19-20

TEX. GOV'T CODE § 22.201 .................................................................................xiii

TEX. GOV'T CODE § 22.220(d) ................................................................................1

## TABLE OF AUTHORITIES [CONT'D]

**Page(s)**

TEX. GOV'T CODE § 22.221 ...............................................................................xiii, 1

TEX. GOV'T CODE § 25.0003 (2022) ......................................................... 15-16, 18

TEX. GOV'T CODE § 25.1572 (2022) ................................................................9, 15

TEX. GOV'T CODE § 311.011 .....................................................................................33

TEX. GOV'T CODE § 311.021 .....................................................................................33

TEX. GOV'T CODE § 312.005 .....................................................................................33

TEX. GOV'T CODE § 73.001(a).....................................................................................8

TEX. PROP. CODE § 114.008(a)(5)............................................................................38

## Other Authorities

BLACK'S LAW DICTIONARY (12th ed. 2024) ............................................ 21, 23, 40

## Rules

TEX. R. APP. P. 28.1, 29.3.............................................................................................8

TEX. R. APP. P. 41.3.....................................................................................................10

**STATEMENT OF THE CASE**

| | |
|---|---|
| **Nature of the Case:** | This case arises from a dispute regarding the administration of the Dorothy Spanos Living Trust ("Trust") and the district court's appointment of a receiver. |
| **Respondent District Court:** | Hon. Judge Ryan Luna, 414th Judicial District Court of McLennan County |
| **Course of Proceedings:** | Ms. Frances Spanos Shelton ("Fran") sued for the removal of Mr. John Malone as trustee, for breach of fiduciary duties, and to reinstate her as trustee. In turn, Appellees sued Fran for alleged breaches of trust during her tenure as trustee. |
| | After Mr. Malone resigned as trustee, the Appellees moved for the appointment of a receiver of the Trust. |
| **Disposition:** | On March 2, 2025, following a hearing on the motions, the district court issued its Order Appointing Receiver. *See* CR 1291-99 (Tab A) |
| | Fran filed this interlocutory appeal in the Tenth Court of Appeals and sought temporary relief pending resolution of the issues presented. The Tenth Court granted the requested relief. |
| | The Texas Supreme Court transferred the case to this Court for purposes of docket equalization. |

Concurrently, Fran is filing a petition for writ of mandamus in the Tenth Court of Appeals.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this interlocutory appeal pursuant to Section 51.014(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a); *see also* TEX. GOV'T CODE § 22.201(p) ("The Fifteenth Court of Appeals District is composed of all counties in this state."). The Court does not, however, appear to have jurisdiction to issue mandamus relief in cases over which it does not have exclusive appellate jurisdiction. *See* TEX. GOV'T CODE §§ 22.221(c), (c-1), § 22.220(d); *see also Kelley v. Homminga*, 706 S.W.3d 829, 830 (Tex. 2025) ("We hold that the relevant statutes authorize the Fifteenth Court to hear (1) appeals and writs within the court's exclusive intermediate appellate jurisdiction, and (2) appeals we transfer into the court to equalize the courts of appeals' dockets."). The Court does not have exclusive appellate jurisdiction over this case.

For this reason, Appellant is concurrently filing a petition for writ of mandamus in the Tenth Court of Appeals because the district court's Order Appointing Receiver enforces void orders issued earlier by County Court at Law No. 1 and is, thus, also void.

The arguments presented in this interlocutory appeal largely overlap with the arguments set forth in the petition for writ of mandamus. Thus,

Fran will be filing a motion in this Court and the Tenth Court, seeking the transfer of this appeal back to the Tenth Court for the convenience of the parties, the efficient resolution of these virtually identical disputes in a single forum, and to prevent a waste of judicial resources. *See Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 (Tex. 1995).

## STATEMENT REGARDING ORAL ARGUMENT

Given the jurisdictional complexity and the complicated history of this case, Appellant believes that oral argument will assist the Court in resolving the issues presented in this appeal if the Court opts to address the issues presented in this appeal rather than return the case to the Tenth Court for resolution in one forum.

## ISSUES PRESENTED

1.  Whether the district court abused its discretion by appointing a receiver in the absence of any evidence satisfying the applicable statutory requirements for the appointment of a receiver.

2.  Whether the district court's order appointing receiver constitutes an abuse of discretion because it gives effect to void orders previously issued by the County Court at Law No. 1.

3.  Whether the County Court at Law's earlier orders are void.

4.  Whether the district court's findings and conclusions in the Order Appointing Receiver are supported by any legally sufficient evidence.

5.  Whether the district court's Order Appointing Receiver, which requires Fran, who is neither a Trustee nor signatory on the Trust's bank accounts, to pay all expenses incurred by the Trust in the ordinary course of business results in an unconstitutional taking of Fran's personal property.

6.  Whether the district court abused its discretion by issuing its Order Appointing Receiver, which enjoined Fran from exercising her statutory right to challenge the rulings of the district court and the actions of the receiver.

## STATEMENT OF THE RECORD

The Clerk's Record will be referred to by page number—*e.g.*, CR 1. The Reporter's Record consists of three volumes. Volume two of the Reporter's Record is the transcript of the hearing on the parties' motion to appoint receiver and motion to re-affirm Fran as trustee. References to volume two will be by volume and page number—*e.g.*, 2 RR 1. Volume three of the Reporter's Record includes the exhibits from that hearing, which shall be referenced by volume, exhibit number, and, when practicable, page number —*e.g.*, 3 RR Pl.'s Ex. 1 at 1.

**INTRODUCTION**

This is a complicated family dispute regarding the appointment of a receiver for the Dorothy Spanos Living Trust ("Trust"). This case is further complicated by the fact that County Court at Law No. 1 of McLennan County issued numerous orders in an earlier proceeding that purport to govern the current administration of the Trust—even though that court never had subject matter jurisdiction over the Trust disputes.

Fran is challenging the void orders of the county court at law in a separate mandamus proceeding in the Tenth Court of Appeals because the statutes creating this Court do not appear to vest the Court with jurisdiction to issue writs of mandamus in cases over which the Court does not have exclusive appellate jurisdiction. *See* TEX. GOV'T CODE § 22.221(c), (c-1), TEX. GOV'T CODE § 22.220(d); *see also Kelley v. Homminga*, 706 S.W.3d 829, 830 (Tex. 2025) ("We hold that the relevant statutes authorize the Fifteenth Court to hear (1) appeals and writs within the court's exclusive intermediate appellate jurisdiction, and (2) appeals we transfer into the court to equalize the courts of appeals' dockets."). This Court does not have exclusive appellate jurisdiction over this matter.

1

Because the issues in this interlocutory appeal overlap with the issues presented in the petition for writ of mandamus, Fran intends to file a motion in this Court and with the Tenth Court to transfer this appeal back to the Tenth Court so that all issues can be efficiently resolved by one court with jurisdiction to grant the relief sought in both. *See Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 (Tex. 1995).

In any event, the district court abused its discretion by issuing the order appointing a receiver over certain Trust property and directing the receiver to take possession of, and sell, a tract of Trust property because there is no evidence to support the district court's findings or its order appointing the receiver. The Order Appointing Receiver also includes directives that do not comport with Texas law or the state and federal constitutions. Thus, the Order Appointing Receiver constitutes an abuse of discretion and should be reversed by this Court.

### STATEMENT OF FACTS

On December 19, 2007, Ms. Dorothy Spanos transferred much of her real and personal property into the Dorothy Spanos Living Trust. *See* CR 467, 551 (Tab B). Ms. Spanos appointed herself trustee. *See* CR 466. And she appointed Ms. Frances Spanos Shelton ("Fran"), her daughter, to serve as co-

2

trustee. Ms. Spanos did not appoint her other daughter, Appellee Katherine Leuschner, as a trustee. Ms. Spanos also signed the First Amendment to the Trust. *See* CR 553-60. Upon Ms. Spanos's death, Fran became the sole trustee.

In March 2022, Ms. Leuschner filed an application in the County Court at Law No. 1 of McLennan County for the appointment of Retired Judge Robert Stem as the temporary administrator of Ms. Spanos's estate as well as the trust advisor for the Trust. *See* CR 801-02. Under the terms of the Trust, a trust advisor acts as a "super-trustee" with the power to, among other things, remove a trustee with or without cause, appoint a successor trustee, direct a trustee to execute any documents necessary to carry out his will, and, if any conflicts arise, overrule and trump the authority and actions of a trustee. *See* CR 476-78.

On March 8, 2022, the county court at law entered an order appointing Judge Stem as the temporary administrator of Ms. Spanos's estate and trust advisor of the Trust. *See* CR 817-19 (Tab C). His term was set to expire on September 5, 2022. *See* CR 817. On May 18, 2022, the county court at law discharged Judge Stem as the temporary administrator and ended the

administration of the estate. *See* Tab 821-23 (Tab D). Judge Stem remained the purported trust advisor under the county court's earlier order.

On September 1, 2022, the county court signed an order extending the appointment of Judge Stem as trust advisor until he "either determines that there no longer exists a necessity for a Trust Advisor, by agreement of the Parties, or if the Court, in the best interest of the Trust, determines cause exists for the removal of the Trust Advisor." *See* CR 827-28 (Tab E). On May 3, 2023, Judge Stem removed Fran as Trustee of the Trust, skipped over Mr. Ricky Shelton, who was named the successor trustee in the Trust provisions, and appointed his colleague Mr. John Malone, a Waco attorney, as Trustee. *See* CR 923 (Tab F).

On October 25, 2024, Fran filed this lawsuit against Mr. Malone for breach of his fiduciary duties. CR 9-19. On February 3, 2025, Appellees filed a joint petition in intervention, seeking damages from Fran for alleged self-dealing and breaches of trust during her stint as trustee. *See* CR 385-569. On February 24, 2025, Mr. Malone resigned as trustee. *See* CR 990. Thus, the Trust is effectively without a trustee.

Fran filed a motion to re-affirm herself as Trustee or, in the alternative, to properly designate a trustee of the Trust. CR 787-928. On February 25,

2025, Appellees filed an application to appoint a receiver over all Trust property. CR 956-1019, 1061-65.

On March 4, 2025, the district court conducted an evidentiary hearing on the parties' motions. 2 RR 1. Appellees opened the hearing by calling Judge Stem as a witness. Judge Stem is a highly esteemed, former judge in the Waco legal community, and his reputation and credentials followed him into the courtroom during the hearing. The district court permitted Judge Stem to testify, over Fran's objections, as a perceived expert on the legal effect of the Trust document, the jurisdiction of the county court at law that appointed him, the merits of Fran's pending claims, and whether Fran's attorneys violated professional legal ethics. 2 RR 79, 93-95. The district court also permitted Judge Stem to admonish Fran and her attorneys in open court for filing the suit to remove Mr. Malone as Trustee, which he considered "ridiculous, baseless, [and] spiteful lawsuit conduct." 2 RR 101. Judge Stem also testified that he believed Fran's actions violated the terms of the trust. 2 RR 92, 101.

Judge Stem's testimony at the hearing directly conflicted with prior statements that he made to Fran before she filed the motion to remove Mr. Malone as trustee of the Trust (who Judge Stem appointed). Before Fran

5

filed the motion, Judge Stem informed her that she was not being removed as trustee for cause, but rather to shield her from the "enormously difficult situation" she found herself in "through no fault of [her] own," which was created by the actions of Ms. Leuschner, which Judge Stem characterized as "firing laser beams at [Fran]." 2 RR 103, 112. Judge Stem ultimately conceded that his testimony in the district court conflicted with his remarks to Fran many months earlier. *See* 2 RR 113. Judge Stem also admitted that, even though he testified that he had unidentified cause to remove Fran as trustee, he continued to allow Fran to "handle all the finances for the Trust" until a couple of months before the hearing—*i.e.*, for almost another year and a half after she was removed by Judge Stem as trustee. 2 RR 92, 116-17. The district court concluded the hearing after the testimony of Judge Stem and the arguments of counsel. *See* 2 RR 137. Fran did not have an opportunity to present any witnesses or testimony or evidence on her behalf.

On March 31, 2025, based on the testimony of Judge Stem, the district court granted Appellees' motion for the appointment of a receiver, in part, and issued its Order Appointing Receiver. *See* CR 1291-99 (Tab A). The trial court made the following finding in support of its ruling:

> Due to the extraordinary controversy surrounding the sale of the Front 45 Acres, there is a material risk of harm, injury, damage

6

and/or loss to the Property and/or Trust funds, as well as the various beneficiaries, if a Receiver is not appointed to carry out the terms of the Trust.

CR 1292. The district court concluded that "[i]rreparable damage will ensue to the beneficiaries of the Trust unless there is an immediate sale of the Front 45 Acres pursuant to the terms of the Trust." CR 1292. Although the Order Appointing Receiver is "supported" by 11 findings of fact and conclusions of law, the district court did not identify any alleged harm, damage, or loss to the property, trust funds, or the beneficiaries that would result from its failure to appoint a receiver.

The order directed the receiver to take possession of, and sell, the front 45-acre tract of Trust property in Crawford, Texas. The order effectively denied Fran's motion to re-affirm or designate a trustee for the Trust. The district court appointed attorney Aubrey R. Williams to serve as the receiver. *See* CR 1293.

The Order Appointing Receiver not only appointed the receiver and set forth his powers and obligations, but also directed Fran, who was purportedly removed as Trustee by Judge Stem, to turn over "all documents and materials representing all interests of the Trust in the Front 45 Acres" within 10 days. CR 1295 (Tab A). The Order also requires Fran, who is no

7

longer a signatory on the Trust's bank account, to "continue to make regular and routine payments of any bills or invoices incurred by the Trust in the ordinary course of business." CR 1295. The Order effectively compels Fran to pay the Trust's bills out of her personal funds.

On April 3, 2025, Fran filed this interlocutory appeal in the Tenth Court of Appeals. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1) ("A person may appeal from an interlocutory order of a district court . . . that appoints a receiver or trustee."). She concurrently filed an emergency motion for temporary relief from the district court's order because the order required her to pay the bills of the Trust even though she is neither a trustee nor a signatory to the Trust's bank account. *See* TEX. R. APP. P. 28.1, 29.3. On April 9, 2025, the Tenth Court granted the requested temporary relief and stayed the order appointing the receiver pending resolution of this appeal or further order of that court.

On May 1, 2025, the Texas Supreme Court transferred this case from the Tenth Court to this Court for docket equalization. *See* TEX. GOV'T CODE § 73.001(a) ("Except as provided by Subsection (b), the supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

8

Following the filing of this brief, Fran intends to file a motion in this Court and the Tenth Court to transfer this interlocutory appeal back to the Tenth Court for the efficient resolution of these related disputes in a single forum. *See Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 (Tex. 1995).

## SUMMARY OF ARGUMENT

The district court abused its discretion because its Order Appointing Receiver adopted and incorporated the terms of earlier orders issued by the County Court at Law No. 1, which had no jurisdiction over the Trust or the related disputes when it issued its many orders. In 2022, when the county court issued its orders appointing Judge Stem as the trust advisor, county courts at law in McLennan County were granted jurisdiction "in third degree felony cases" and were given the power to "conduct arraignments, conduct pretrial hearings, accept guilty pleas, and conduct probation revocation hearings in felony cases"; the county court at law also possessed jurisdiction to hear cases that fell within its amount-in-controversy jurisdiction. TEX. GOV'T CODE §§ 25.1572, 25.003 (2022). The County Court at Law No. 1 did not have jurisdiction to make rulings involving the administration of a trust.

Because the county court at law did not have jurisdiction, its orders appointing Judge Stem as the trust advisor, and all decisions made by Judge

9

Stem on behalf of the Trust, are void for want of jurisdiction. Although these orders were issued, and acts were taken, back in 2022 and 2023, the district court's Order Appointing Receiver adopts and incorporates terms of the 2022 and 2023 orders issued by the county court at law. The district court's order is, therefore, void as well. The issuance of a void order constitutes an abuse of discretion, as does the issuance of an order based on an earlier void order, like the district court's Order Appointing Receiver.

In addition, the Order Appointing Receiver and the 11 findings of fact in support of the district court's order are not supported by any evidence. Thus, the district court also abused its discretion by issuing its order when there was no evidence to support it or the findings on which it is based.

## ARGUMENT AND AUTHORITIES

The Court reviews an order appointing a receiver under an abuse of discretion standard. *See Hamilton Metals, Inc. v. Global Metal Servs., Ltd.*, 597 S.W.3d 870, 878 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Spiritas v. Davidoff*, 459 S.W.3d 224, 231 (Tex. App.—Dallas 2015, no pet.); *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2005, pet. denied).[1] A

---

[1] Because this case was transferred to this Court from the Tenth Court of Appeals at Waco, this Court "must decide the case in accordance with the precedent of the transferor court under principles of stare decisis." TEX. R. APP. P. 41.3. When possible, Fran has attempted to provide the Court with citations to Waco precedent.

court abuses its discretion if it rules "arbitrarily, unreasonably, or without regard to guiding legal principles" or "without supporting evidence." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

The parties seeking the appointment of the receiver, the Appellees in this case, have the burden "to demonstrate that the circumstances justify the appointment of a receiver." *Estate of Vines*, No. 01-21-00003-CV, 2022 WL 1085624, at *5 (Tex. App.—Houston [1st Dist.] Apr. 12, 2022, no pet.); *see Estate of Benson*, No. 04-15-00087-CV, 2015 WL 5258702, at *5 (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd); *Elliott v. Weatherman*, 396 S.W.3d 224, 230 (Tex. App.—Austin 2013, no pet.).

A trial court's findings and conclusions in support of the appointment of a receiver in an interlocutory appeal "are not binding on [this Court] but may be helpful in determining if the trial court exercised its discretion in a reasonable and principled fashion." *Mexico Foods Holdings, LLC v. Nafal*, No. 05-23-00108-CV, 2023 WL 6284705, at *4 (Tex. App.—Dallas 2023, no pet.); *Elliott*, 396 S.W.3d at 228. But such findings and conclusions "do not carry the same weight on appeal as findings made under rule 296" even if they are unchallenged. *Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 858–59 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

If challenged, however, as they are in this case, the Court reviews the findings and conclusions by the standards otherwise used for reviewing the sufficiency of the evidence. *See Franks v. Hovey*, No. 10-18-00218-CV, 2022 WL 395228, at *5 (Tex. App.—Waco Feb. 9, 2022, pet. denied); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). A legal sufficiency challenge to findings of fact fails if there is more than a scintilla of evidence to support the findings. *See Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC*, 564 S.W.3d 913, 918-19 (Tex. App—Houston [14th Dist.] 2018, no pet.); *TC & C Real Estate Holdings, Inc. v. ETC Katy Pipeline, Ltd.*, No. 10–16–00134–CV, 2017 WL 7048923, at *1 (Tex. App.—Waco Dec. 20, 2017, pet. denied). Under the abuse-of-discretion standard, legal and factual sufficiency challenges are not independent grounds for reversal; rather, they are relevant factors for determining if the district court abused its discretion. *See Copeland v. Bluebonnet Fin. Assets*, No. 05-21-00714-CV, 2023 WL 3860430, at *1 (Tex. App.—Dallas June 7, 2023, no pet.); *Estate of Vines*, 2022 WL 1085624, at *4.

I.   **THE DISTRICT COURT ABUSED ITS DISCRETION BY ORDERING THE APPOINTMENT OF THE RECEIVER BECAUSE THE ORDER ENFORCES THE COUNTY COURT AT LAW'S VOID ORDERS.**

A district court abuses its discretion when it issues an order in a case over which it does not have subject matter jurisdiction; such orders are void.

12

*See In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding); *In re Texas Conference of Seventh-Day Adventists*, 652 S.W.3d 136, 142 (Tex. App.—Fort Worth 2022, orig. proceeding). A district court also abuses its discretion when it issues an order that enforces an earlier void order issued by another court. *See In re Harrison*, No. 14–15–00370–CV, 2015 WL 5935816, at *5 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, orig. proceeding) ("An order that is predicated on an erroneous or void order is also void."); *In re McCray*, No. 05–13–01195–CV, 2013 WL 5969581, at *2 (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding).

As set forth below, the county court at law had no jurisdiction to appoint Judge Stem as trust advisor. Thus, the county court at law's orders are void **and** the district court's Order Appointing Receiver, which adopts and incorporates aspects of those county court at law orders, is also void. *See* CR 1292, 1295.[2]

## II. COUNTY COURT AT LAW NO. 1 OF MCLENNAN COUNTY HAD NO JURISDICTION OVER THE TRUST DISPUTE.

The district court's Order Appointing Receiver is void because it incorporates the terms of the County Court at Law No. 1's order appointing

---

[2] The district court's Order Appointing Receiver acknowledges, sanctions, and approves the County Court at Law's appointment of Judge Stem as the trust advisor. *See* CR 1292, 1295.

Judge Stem as receiver, which is void. *See* Tab A (CR 1295-96). The County Court at Law No. 1 had no jurisdiction to appoint Judge Stem as trust advisor, who, in turn, improperly removed Fran as trustee. Thus, the district court's Order Appointing Receiver, which incorporates and silently adopts those terms of the County Court at Law No. 1's orders, constitutes an abuse of the district court's discretion.

Pursuant to the terms of the Trust, any trust advisor like Judge Stem "must be appointed by a court of ***competent jurisdiction*** on petition of a Trustee or beneficiary." CR 845. And though Ms. Leuschner pleaded in her application for appointment of a trust advisor that jurisdiction was proper in the County Court at Law No. 1, it clearly was not. CR 801; *see Brown v. Peters*, 94 S.W.2d 129, 130 (Tex. Comm'n App. 1936) (jurisdiction is based on allegations in the petition unless a lack of jurisdiction is apparent from face of the petition). As explained below, County Court at Law No. 1 was not a court of competent jurisdiction to appoint Judge Stem as trust advisor. Because the county court did not have jurisdiction over the Trust, its order appointing Judge Stem as trust advisor was void, and any actions taken by Judge Stem with respect to the Trust are likewise void and an abuse of the district court's discretion.

14

**A.** **County Court at Law No. 1 Had No Jurisdiction Over the Administration of a Trust in 2022.**

County courts at law in Texas have varying jurisdictions dependent on statutes enacted by the Legislature. *See In re Breviloba, LLC*, 650 S.W.3d 508, 511 (Tex. 2022) (citing TEX. GOV'T CODE §§ 25.0041-.2512). No statute in effect in 2022 conferred jurisdiction on McLennan County Court at Law No. 1 over the administration of a trust.

    *1.    Section 25.1572 of the Texas Government Code Did Not Confer Jurisdiction on the McClennan County Court at Law Over Cases Involving the Administration of a Trust.*

In 2022, a county court in McLennan County had "jurisdiction in third degree felony cases," as well as authority "to conduct arraignments, conduct pretrial hearings, accept guilty pleas, and conduct probation revocation hearings in felony cases." TEX. GOV'T CODE § 25.1572 (2022); *see* TEX. GOV'T CODE § 25.1571. County courts were also vested with limited amount-in-controversy jurisdiction. *See* TEX. GOV'T CODE § 25.0003 (2022). However, cases involving the administration of a trust were not within the jurisdiction that was expressly granted to County Court at Law No. 1 by statute.

15

2. *The Claims Regarding the Administration of the Trust Did Not Fall Within the County Court's Amount-in-Controversy Jurisdiction Either.*

Section 25.0003 of the Government Code grants county courts at law "jurisdiction over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for county courts." TEX. GOVT CODE § 25.0003(a) (2022).[3] County courts exercising "civil jurisdiction concurrent with constitutional county courts have concurrent jurisdiction with the district court in civil cases in which the matter in controversy exceeds $500 but does not exceed $250,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs." *See* TEX. GOV'T CODE § 25.0003(c)(1) (2022). Ms. Kathy Leuschner's 2022 claims against Fran did not fall within the county court's amount-in-controversy jurisdiction.

The amount in controversy is typically determined by "the amount the plaintiff seeks to recover." *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 402 (Tex. 2007); *see Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000). The amount in controversy may be calculated in two ways here. The first is to view Ms. Leuschner's request for the appointment of a trust advisor as a claim for the partition, sale, and distribution of all property in the Trust.

---

[3] A true and correct copy of 2002 version of Section 25.0003 is attached in the Appendix as Tab G.

16

That method is supported by her application for the appointment of a trust advisor, which alleged that a trust advisor was necessary because Fran and her husband had hired a surveying and engineering company to divide and partition the acreage of the Crawford Ranch in a way that benefitted Fran and her children and harmed Ms. Lueschner and her children's "future use and enjoyment" of the property. *See* CR 807-08. Ms. Leuschner also alleged that the partition and distribution proposed by Fran was contrary to the terms of the Trust. *See* CR 807-08. Thus, she alleged that a trust advisor was necessary to "ensure that Decedent's wishes are honored." CR 809.

It is undisputed that the Trust property is valued at $1 million or more. *See* 2 RR 118, 122. This value is at least four times the $250,000 jurisdictional cap for constitutional county courts at law. Thus, if the value of the Trust property in dispute is the correct way to calculate the amount in controversy in this case, the county court at law did not have jurisdiction.

The second method for determining the amount in controversy is to calculate the value of Ms. Leuschner's request for the appointment of a trust advisor. Long ago, however, the Texas Supreme Court held that county courts at law do not have amount-in-controversy jurisdiction over cases in which the plaintiff seeks relief other than money damages. *See Repka v. Am.*

17

*Nat'l Ins. Co.*, 186 S.W.2d 977, 981 (Tex. 1945); *Medina v. Benkiser*, 262 S.W.3d 25, 27 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Ms. Leuschner's application for the appointment of a trust advisor did not seek damages but instead requested the county court at law to appoint Judge Stem as the trust advisor—*i.e.*, Ms. Leuschner sought equitable relief which is not capable of monetary valuation. *See Medina*, 262 S.W.3d at 27. To the extent that the second method is the correct method for determining the amount in controversy, Ms. Leuschner's claims did not fall within the jurisdiction of the County Court at Law No. 1.

As a result, regardless of the proper method of calculating the amount in controversy, Ms. Leuschner's claims did not fall within the County Court at Law No. 1's amount-in-controversy jurisdiction.

### 3. County Court at Law No. 1 Did Not Have Original Probate Jurisdiction Over the Trust Claims.

Ms. Leuschner moved to appoint Judge Stem as the trust advisor while her motion for a temporary administration of Ms. Spanos's estate was before the Country Court at Law No. 1. Thus, the county court was exercising its probate jurisdiction.[4] The county court's probate jurisdiction included "all

---

[4] County Court at Law No. 1 had probate jurisdiction because McLennan County did not have a statutory probate court. *See* TEX. GOV'T CODE § 25.0003(d), (e).

matters related to probate proceedings" as specified in Section 31.002. *See* TEX. ESTATES CODE §§ 31.002, 32.001(a). Section 31.002(a) defines "matters related to probate proceedings" as including many different types of claims; however, a claim related to trust administration is not one of them.[5]

Section 31.002(b)(2) states that matters related to probate proceedings includes "the interpretation and administration of a testamentary trust if the will creating the trust has been *admitted to probate* in the court." TEX. ESTATES CODE § 31.002(b)(2) (emphasis added). Section 31.002(b)(3) states that "the interpretation and administration of an inter vivos trust created by a decedent whose will has been *admitted to probate* in the court." TEX. ESTATES CODE § 31.002(b)(3) (emphasis added). Section 31.002(b)(3) comes the closest to vesting the county court with jurisdiction over Ms. Leuschner's 2002 trust claims; however, at bottom, that section does not apply because Ms. Spanos's will was never submitted to the district court for probate.

---

[5] Section 31.002 defines matters related to a probate proceeding to include: (1) an action against a personal representative or former personal representative arising out of the representative's performance of the duties of a personal representative; (2) an action against a surety of a personal representative or a former personal representative; (3) a claim brought by a personal representative on behalf of an estate; (4) an action brought against a personal representative in his capacity as personal representative; (5) an action for trial of title to real property that is estate property, including the enforcement of a lien against the property; and (6) an action for trial of the right of property that is estate property. TEX. ESTATES CODE § 31.002(a).

19

On March 2, 2022, Ms. Leuschner filed her motion for the appointment of a temporary administrator for Ms. Spanos' estate and for the appointment of a trust advisor. CR 801-11. Although the Trust is an inter vivos trust, it should be undisputed that Ms. Spanos's will has never been admitted to probate in any court. CR 803 ("Applicant is not contesting the validity of the Will."). Regardless, Appellees presented no evidence that Ms. Spanos's will was submitted to the county court for probate. Accordingly, the request for the appointment of a trust advisor was not a matter related to a probate proceeding as a matter of law, and the county court did not have probate jurisdiction over the trust claims under Section 31.002(b)(3).

4. *County Court at Law No. 1 Did Not Have Pendent or Ancillary Jurisdiction Over the Trust Claims.*

Statutory county courts acting as probate courts can exercise "pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy." TEX. ESTATES CODE § 32.001(b). However, Section 31.002(b) only permits a county court at law to exercise its pendant or ancillary jurisdiction in a probate matter when the decedent's will "has been admitted to probate." TEX. ESTATES CODE § 31.002(b)(3). The county court at law could not exercise its pendant or ancillary jurisdiction over Ms. Leuschner's trust claims for two reasons.

20

First, although counsel for Appellees repeatedly argued to the district court that County Court at Law No. 1 was exercising its pendant or ancillary jurisdiction over the trust claims because of the pending probate matter, *see* 2 RR 10-11, 29-30, 34, opposing counsel conflated two, very different legal concepts: (1) probating a will and (2) a pending probate matter. Probating a will is the formal judicial process "by which a testamentary document is established to be a valid will." BLACK'S LAW DICTIONARY *Probate* (12th ed. 2024). A probate matter, on the other hand, is a generic term for any "matter or proceeding relating to a decedent's estate." TEX. ESTATES CODE § 22.029. Thus, for example, a probate matter may or may not include probating a will.

Ms. Leuschner never challenged the validity of Ms. Spanos's will in the county court at law. *See* CR 803 ("Applicant is not contesting the validity of the will, the Trust, or its amendment, but rather seeks to have the Trust faithfully interpreted and the Trust and Estate properly administered."). The county court was exercising its jurisdiction over a probate matter, not the probating of Ms. Spanos's will. Consequently, the county court had no

21

pendant or ancillary jurisdiction over Ms. Leuschner's trust claims, which were filed along with the probate matter.[6]

Second, courts exercising probate jurisdiction may exercise pendant or ancillary jurisdiction "when a close relationship exists between the non-probate claims and the matter pending in the probate court" and doing so "will aid in the efficient administration of a matter pending in the probate court." *Schuchmann v. Schuchmann*, 193 S.W.3d 598, 603 (Tex. App.—Fort Worth 2006, pet. denied); *see In re Estate of Hallmark*, 629 S.W.3d 433, 438 (Tex. App.—Eastland 2020, no pet.). A close relationship between probate and non-probate proceedings exists, for example, when the matters involve the same parties, the same causes of action, and the same underlying facts. *See, e.g., Castaneda v. Chapa*, No. 13-22-00537-CV, 2024 WL 2197216, at *5 (Tex. App.—Corpus Christi-Edinburg May 16, 2024, pet. denied).

The County Court at Law No. 1's exercise of jurisdiction over the trust claims did not and could not have "aid[ed] in the efficient administration of"

---

[6] In its order appointing the trust advisor, the County Court at Law No. 1 never stated that, and likely never considered whether, it had jurisdiction over the Trust. Rather, the court found "that this Court has jurisdiction and venue over this estate, and the interest of this estate and trust requires the immediate appointment of a Temporary Administrator and Trust Advisor." CR 817. This language suggests that the county court knew it lacked jurisdiction over the Trust and, at best, simply assumed ancillary jurisdiction over the trust claims.

any estate claims.  Ms. Spanos's will is a simple "pourover will"—*i.e.*, a "will giving money or property to an existing trust."  CR 802-03; BLACK'S LAW DICTIONARY *Will* (12th ed. 2024).  Thus, the only administration of the estate that was required was the transfer of Ms. Spanos's assets that had not already been transferred to the Trust to be transferred to the Trust.

Ms. Leuschner's claims, on the other hand, related to the temporary administration *of the Trust* and were unrelated to the limited administration *of the estate*.  The administration of the Trust did not aid in Judge Stem's administration of the estate—*i.e.*, collecting, accounting for, and transferring the remaining assets in the estate to the Trust.  Although Ms. Leuschner asserted estate and trust claims in the county court that involved some of the same parties, those claims sought to enforce two different documents that governed different parties and different property, and those two documents were written to serve two very different functions.

For these reasons, the county court's exercise of pendant or ancillary jurisdiction over Ms. Leuschner's trust claims would not have been proper. *See In re Southwestern Bell Tel.*, 35 S.W.3d at 605; *In re Tex. Conference of Seventh-Day Adventists*, 652 S.W.3d 136, 142 (Tex. App.—Fort Worth 2022, orig. proceeding); *In re Toyota Motor Corp.*, No. 10–11–00050–CV, 2011 WL

5830468, at *1 (Tex. App.—Waco Nov. 16, 2011, orig. proceeding). Because the district court's Order Appointing Receiver incorporates the terms of the county court's void order, its order is likewise void, and the district court abused its discretion by issuing it.

> **B.** **Assuming Arguendo the County Court at Law No. 1 Had Some Sort of Ancillary Jurisdiction Over the Trust Claims, the County Court Lost Jurisdiction No Later Than May 18, 2022— *i.e.*, Before the County Court Extended the Term of Judge Stem as Trust Advisor.**

Assuming for the sake of argument that County Court at Law No. 1 could have exercised pendant or ancillary jurisdiction over the Trust claims, the court lost the authority to exercise such jurisdiction no later than May 18, 2022—*i.e.*, the date the county court discharged Judge Stem as the temporary administrator and terminated the temporary administration of Ms. Spanos's estate.

"In Texas, the pendency of a probate proceeding is a requisite for a court's exercise of jurisdiction over matters related to it." *Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930, 933 (Tex. App.—Austin 1997, no pet.) (applying the predecessor to Section 32.001(b) of the Estates Code); *Schuld v. Dembrinski*, 12 S.W.3d 485, 487 (Tex. App.—Dallas 2000, no pet.). Once an estate is closed, the court exercising pendant or ancillary jurisdiction under

24

Section 32.001 loses jurisdiction over those claims. *See Lawton v. Lawton*, No. 01–12–00932–CV, 2014 WL 3408699, at *2 (Tex. App.—Houston [1st Dist.] Jul. 10, 2014, no pet.); *Dembrinski*, 12 S.W.3d at 487; *Goodman*, 952 S.W.2d at 933.

County Court at Law No. 1 signed an Agreed Order Approving the Discharge of the Temporary Administrator and Termination of Temporary Administration on May 18, 2022. CR 821-24. On that date, County Court at Law No. 1 lost any pendant or ancillary jurisdiction over any claims. *See Goodman*, 952 S.W.2d at 933; *Lawton*, 2014 WL 3408699, at *2; *Dembrinski*, 12 S.W.3d at 487.[7] Thus, the County Court at Law No. 1's September 1, 2022, Agreed Order to Extend the Appointment of Judge Stem as the Trust Advisor is void for want of jurisdiction. His actions taken with respect to the Trust after September 5, 2022, including the removal of Fran as trustee on May 3, 2023, and the appointment of Mr. Malone as "Special Independent Trustee," are also void. *See* CR 827-28, 923.

---

[7] In the district court, Appellees made much of the fact that this order was agreed; however, that fact is irrelevant because "subject-matter jurisdiction cannot be conferred on a court by consent or waiver." *Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022); *see San Antonio River Auth. v. Austin Bridge & Road, L.P.*, 601 S.W.3d 616, 627 (Tex. 2020). Although Appellees relied on *Guardianship of Fairley* in the district court to support their argument that the agreed order somehow vested the county court with jurisdiction, that case is totally distinguishable because the County Court at Law No. 1, unlike the court in *Guardianship of Fairley*, ordered termination of the estate administration.

Because the County Court at Law No. 1 could not exercise jurisdiction over Ms. Leuschner's trust claims, its appointment of Judge Stem is void and the district court's order incorporating the terms of these orders is likewise void. Thus, those rulings were abuses of discretion and should be reversed.

III. **ASSUMING THE TRIAL COURT HAD JURISDICTION, APPELLEES FAILED TO PRESENT ANY EVIDENCE TO SUPPORT THE APPOINTMENT OF A RECEIVER UNDER TEXAS LAW.**

In Texas, a court's appointment of a receiver is a "harsh, drastic, and extraordinary remedy" which trial courts should be "particularly loathe to utilize." *Matter of Marriage of Pinkston and Smith*, No. 12-24-00185-CV, 2024 WL 3858474, at *2 (Tex. App.—Tyler Aug. 15, 2024, no pet.); *see Spiritas v. Davidoff*, 459 S.W.3d 224, 232 (Tex. App.—Dallas 2015, no pet.); *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2004, pet. denied). The district court's appointment of Mr. Williams to serve as the receiver of Trust property is not supported by any evidence necessary to appoint a receiver.

Appellees sought the appointment of a receiver pursuant to Texas Civil Practice & Remedies Code § 64.001 and Texas Property Code § 114.008(a)(5). *See* CR 957-62, 1061-62. As requested by Appellees and Judge Stem, *see* 2 RR 101, the district court appointed the receiver "[p]ursuant to Texas Civil Practice & Remedies Code § 64.001, Texas Property Code §

26

114.008(a)(5), and/or the rules of equity." CR 1292. However, no evidence supports the district court's Order Appointing Receiver under these statutes or the common law.

## A. The Appointment of a Receiver Under Texas Civil Practice and Remedies Code § 64.001 Was an Abuse of Discretion Because the Decision Is Not Supported by Any Evidence.

Appellees alleged that Sections 64.001(a)(2), (3), and (6) authorized the district court to appoint Mr. Williams as the receiver for the Trust. *See* CR 959-60. Those sections provide that a "court of competent jurisdiction" may appoint a receiver "in an action by a creditor to subject any property or fund to his claim," "an action between partners or others jointly owning or interested in any property or fund," and "any other case in which a receiver may be appointed under the rules of equity." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(2), (3), (6).[8] Under Sections 64.001(a)(2) and 64.001(a)(3), the party seeking appointment of the receiver must also prove that the property or fund is "in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE § 64.001(b); *see Floyd v. MMWKM Advisors, LLC*, No. 05-23-00638-CV, 2024 WL 549036, at *2 (Tex. App.—Dallas Feb. 12, 2024, no

---

[8] In this section, Fran assumes for purposes of argument only that County Court at Law No. 1 was a court of competent jurisdiction. Of course, in light of the arguments presented above, the Court need not reach this argument.

pet.); *Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100, at \*4–\*5 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (appointment of a receiver under Section 64.001(a)(3) requires proof, not allegations and arguments in pleadings and motions).

### 1. *Section 64.001(a)(2) does not apply here.*

As noted above, Section 64.001(a)(2) permits a district court to appoint a receiver "in an action by a creditor to subject any property or fund to his claim" if the property is "in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(2), (b). A creditor seeking appointment of a receiver under this section must be a secured creditor, and a receivership may only be imposed with respect to the specific property or fund to which the lien is attached. *See Jay & VMK, Corp. v. Lopez*, 572 S.W.3d 698, 703-04 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Junkin v. Sterchi Furniture Co.*, 92 S.W.2d 1098, 1101 (Tex. Civ. App.—San Antonio 1936, no writ).

Appellees are not secured creditors of the front 45-acre tract or any Trust property. Appellees did not attach any evidence to the motion to appoint a receiver that supported a finding that any of them were secured creditors or that any Trust property or funds were subject to a lien. *See* CR

28

956-1018.  Likewise, at the hearing on the motions, Appellees did not present any evidence that they were secured creditors of, or had a lien against, any Trust funds or property.  *See* 2 RR 158; 3 RR 4-21.  Accordingly, Section 64.001(a)(2) did not apply, and the district court abused its discretion to the extent it relied on that section as a legal basis for appointing the receiver.

> 2.  *Section 64.001(a)(3) does not authorize the district court's appointment of the receiver.*

Section 64.001(a)(3) does not provide a basis for the district court's order either.  That section permits a court to appoint a receiver "in an action between partners or others jointly owning or interested in any property or fund" when "the property or fund [is] in danger of being lost, removed, or materially injured."  See TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3), (b).  Although Appellees have a joint interest in the Trust property, they wholly failed to present any evidence demonstrating that this property was in any danger of being lost or materially injured in any way.

Appellees did not attach any evidence to their motion or present any evidence at the hearing on their motion showing that the Trust property was in any danger of being lost or materially injured in any way.  To begin, the order is based on the county court's court orders and the "testimony of the Trust Advisor," Judge Stem.  CR 1292.  Although counsel for the Appellees

29

argued at the hearing that the "trust is always going to be losing money over time," it is well settled that argument of counsel is not evidence. 2 RR 139; *see Abila v. Miller*, 683 S.W.3d 842, 848 (Tex. App.—Austin 2023, no pet.); *Fallon v. MD Anderson Physicians Network*, 586 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). And Judge Stem did not testify that the Trust property was in any danger of being lost or materially injured in any way.

Rather, Judge Stem simply believed that a receiver was needed to end the dispute amongst the beneficiaries regarding the Trust property, based in large part on his personal frustration with Fran and the fact that he believed this dispute had gone on too long and should be resolved quickly:

> I have thought long and hard on this. The trust is exhausted. There's no money left. This is an extraordinary case. And it requires extraordinary measures. This is a time where we need to save these people from themselves. There will be nothing left. All these grandkids will be cheated out of their inheritance. This ongoing litigation will exhaust this trust. This is an extraordinary case that requires an extraordinary ruling.
>
> The only way to bring this to conclusion is not through a successor trustee, but it's through a receivership with some judicial protection to get this done. John Malone and I worked hours and hours and hours trying to get this done. And that man deserves a medal. He deserves a nod toward the Nobel Peace Prize, not a ridiculous, baseless, spiteful lawsuit. Shame on you guys. I'm sorry, Judge, but this is -- enough is enough. I've seen these in court.

The only route to get this done is a receivership, bring someone in with fresh eyes, not connected to anyone. I'll stay on, if the Court wants me to, just for background information, but let's get someone in here with fresh eyes, that has experience in receiverships and get this done. . . . Everyone deserves this to be final.

2 RR 101-03.

Although Judge Stem testified that the Trust "is exhausted" and that there was only $8,000 or so in cash left in the Trust bank accounts, he later admitted that he was totally unaware of the Trust's cash position. 2 RR 100, 119. In fact. when Fran's attorney attempted to show Judge Stem that the balance in one of the Trust's accounts was $615,000, the district court sustained Appellees' objection to the cross-examination because Judge Stem admitted that he was unaware of the cash position of the Trust. 2 RR 119-20.

Judge Stem also speculated that, as a result of the ongoing litigation, there would be nothing left in the Trust to distribute to the beneficiaries. *See* 2 RR 101. Such pure speculation is not evidence. *See, e.g., Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004)); *Welch v. Milton*, 185 S.W.3d 586, 599 (Tex. App.—Dallas 2006, pet. denied). Judge Stem's remarks also ignore the

undisputed fact that the Trust property includes real property valued at $1 million or more. There simply is no evidence to justify the district court's finding that the Trust assets were at risk of any harm, injury, damage, or loss. *See* CR 1292.

In theory, the potential, and very likely, harm to the Trust property would be a quick, forced sale of the front 45-acres to a non-family member. There is only one road on the Trust property that is used to access the entire 261-acre tract. If the front 45-acres were sold with easements of access for each of the Trust beneficiaries, without selling the remainder of the property, the front 45 acres would reap a far lesser sales price as a result of being burdened by easements to persons with a litigious history. Likewise, the value of the remainder of the tract, which would be virtually inaccessible absent the easements to facilitate building new roads or irrevocable covenants from the purchasers to keep the existing access road as is, would be substantially devalued as a result of the limited access.

At bottom, Appellees presented no evidence demonstrating that any Trust property had deteriorated in any way, had been stolen, had been vandalized, damaged, or destroyed, was subject to condemnation, was being misused, was under contract for sale, or was in danger of any "irreparable

damage" as found by the district court. *See* CR 1292. To the extent the district court determined that it was appropriate to appoint a receiver under Section 64.001(a)(3), it abused its discretion because there is no evidence to support its factual findings or its legal conclusions justifying its Order Appointing Receiver.

> 3. *Section 64.001(a)(6) does not authorize the district court's appointment of the receiver either.*

Section 64.001(a)(6) vests a court with the power to appoint a receiver "in any other case in which a receiver may be appointed under the rules of equity." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6). In effect, this section permits a court to appoint a receiver under the equitable common law in limited circumstances. This section, however, didn't vest the district court with authority to appoint the receiver in this case for several reasons.

First, in construing this statute, the Court must give effect to the intent of the Legislature. *See* TEX. GOV'T CODE § 312.005. To do so, the Court must give the words in the statute their plain and common meaning and give effect to all the statute's terms. *See* TEX. GOV'T CODE §§ 311.011(a), 311.021(2); *Interest of J.S.*, 670 S.W.3d 591, 599 (Tex. 2023). When Appellees moved for the appointment of a receiver, Section 64.001 authorized the appointment of a receiver in six types of cases. Section 64.001(a)(6), the last in the list,

33

authorized the appointment of a receiver "in ***any other case*** in which a receiver may be appointed under the rules of equity."  *See* TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6) (emphasis added).

The highlighted language only permits the appointment of a receiver in "instances beyond" the five situations listed earlier in Section 64.001(a)—*i.e.*, it does not permit the appointment of an equitable receiver in cases that would ordinarily be governed by one of the five preceding subsections.  *See Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 861 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *In re Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100, at *3-*4 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.).  To interpret this section otherwise would not only ignore the existence of Section 64.001(a)(3), but also fail to give effect to the common meaning of "any other case."  *See Mueller*, 994 S.W.2d at 861; *Estate of Martinez*, 2019 WL 1442100, at *4 ("[S]ection 64.001(a)(6) applies to instances beyond the specific circumstances in subsections (a)(1) through (a)(5). Thus, if subsection (a)(3) applies, then subsection (a)(6) does not.").

This case would ordinarily be controlled by Section 64.001(a)(3), given that Fran and Appellees have a joint interest in the Trust property, but the Appellees failed to present any evidence that any Trust property was in

danger of being lost, removed, or materially injured. *See* TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3), (b). Thus, a receivership under Section 64.001(a)(3) was improper, and the district court abused its discretion to the extent it appointed the receiver pursuant to Section 64.001(a)(6).

Second, Section 64.001(a)(6) is a so-called "equitable receivership." To plead and prove that such a receivership was required, Appellees had to produce evidence—not merely pleadings—supporting imposition of this harsh, drastic, and extraordinary remedy. *See Estate of Price*, 528 S.W.3d 591, 594 (Tex. App.—Texarkana 2017, no pet.); *Marriage of Pinkston and Smith*, 2024 WL 3858474, at *2 n.4 (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648 (Tex. 2007)).

Appellees did not present any evidence to the district court that the value of the front 45 acres had lost value or would suffer any potential devaluation absent an immediate sale. Judge Stem, the only witness allowed to testify at the hearing on the motion, did speak of unidentified breaches of trust by Fran as trustee. *See* 2 RR 82, 88, 98, 119. Such allegations, however, are the basis for Appellees' unsubstantiated claims in this suit, not evidence. Of course, Appellees' counsel repeatedly relied on these alleged breaches of trust at the hearing on the motion to appoint a receiver; however, arguments

35

of counsel are not evidence either. 2 RR 139, 140-41, 143; *see Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). Moreover, given the fact that Fran is no longer a trustee and has no superior access to Trust assets (under the County Court at Law No. 1's void orders), it is hard to imagine how Fran could breach any alleged duty of trust in the future, much less do so to a degree that would warrant the extraordinary remedy of the appointment of a receiver.

To the extent that Judge Stem alleged that Fran's failure to sell the front 45-acres was a past breach of trust, *see* 2 RR 82, 88, 98, 119, his accusation is quite rich. Judge Stem has been the trust advisor for years and has never sold the front 45 acres either. In fact, Judge Stem admitted that it would be best ***to keep the Trust property in the family*** and that Fran had offered to purchase the Trust property for more than market value. *See* 2 RR 122-23. (Mr. Malone inexplicably rejected her above-market offer to buy the land (which Fran understandably considers a breach of his trust)). There was simply no evidence that the rules of equity required the appointment of an equitable receiver to sell the front 45-acre tract.

Third, under Texas law, to appoint an equitable receivership, Appellees were required to prove that the Trust was insolvent. *See Hawkins*

*v. Twin Montana, Inc.*, 810 S.W.2d 441, 444 (Tex. App.—Fort Worth 1991, no writ) (citing *Gilmer v. Ferguson*, 148 S.W.2d 984, 987 (Tex. Civ. App.—El Paso 1941, no writ)). Appellees did not present any such evidence. Indeed, Judge Stem conceded that the Trust assets included real property worth at least $1 million.

Fourth, a court should not appoint an equitable receivership unless evidence reflects "a threat of serious injury to the applicant." *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see Matter of Bumstead Family Irrevocable Trust*, No. 13-20-00350-CV, 2022 WL 710159, at *17 (Tex. App.—Corpus Christi-Edinburg Mar. 10, 2022, pet. denied); *Pajooh v. Royal West Invs. LLC, Series E*, 518 S.W.3d 557, 567 (Tex. App.—Houston [1st Dist.] Mar. 30, 2017, no pet.). As discussed above, no such evidence exists.

This case is complex. The situation is difficult. The emotions of the parties run high. But the Trust must be administered properly—*i.e.*, per the terms of the Trust and per Texas law as interpreted by a court of competent jurisdiction. The appointment of the receiver is not based on any competent evidence and cannot be grounded on the unfounded conjecture of a former judge who has clearly lost his objectivity. To the extent the district court

appointed a receiver based on Section 64.001, the court abused its discretion because there was no evidence to support the appointment of the receiver under that statute.

## B. The Appointment of a Receiver Under Texas Property Code § 114.008 Was an Abuse of Discretion as Well.

The district court also stated that it was appointing the receiver based on Section 114.008(a)(5) of the Texas Property Code. CR 1292. But again, in so doing, the district court abused its discretion because there is no evidence to support its order.

Section 114.008(a)(5) authorizes a court to "appoint a receiver to take possession of the trust property and administer the trust" if the court finds it necessary to "remedy a breach of trust that has occurred or might occur." TEX. PROP. CODE § 114.008(a)(5); *see Moody Nat'l Bank v. Moody*, No. 14-21-00096-CV, 2022 WL 14205534, at *6 (Tex. App.—Houston [14th Dist.] Oct. 25, 2022, pet. denied); *Peek v. Mayfield*, No. 02-22-00492-CV, 2023 WL 5967886, at *9 (Tex. App.—Fort Worth Sept. 1411, 2023, pet. denied). As with Section 64.001(a), Appellees bore the burden to show the existence of circumstances justifying the appointment of the receiver. *See Estate of Hoskins*, 501 S.W.3d 295, 306 (Tex. App.—Corpus Christi-Edinburg 2016, orig. proceeding).

However, as noted above, there is no evidence that Fran ever breached her duty of trust or that her past alleged breaches of trust would be somehow remedied by the appointment of a receiver. Judge Stem removed Fran as Trustee pursuant to Section 4.07(c) of the Trust; however, Section 4.07(a) permitted Judge Stem to remove Fran "at any time, with or without cause," and Judge Stem did not identify any cause for removing Fran as Trustee in his notice of removal. CR 923. And although Judge Stem alleged that there were unidentified grounds for removing Fran for breach of trust at the hearing, 2 RR 92, his testimony was belied by his previous statements made to Fran, near the time of removal, that she was not being removed for cause. *See* Audio Exhibit (CR 1051-52). Judge Stem conceded that he informed Fran that he "did not remove [her] for cause." 2 RR 92. Any finding of cause was also belied by Judge Stem's decision to have Fran continue to "handle all the finances for the Trust" until a couple of months before the hearing—*i.e.*, for over one and half years after she was removed as Trustee. 2 RR 116-17.[9]

---

[9] Although Judge Stem discussed Fran's proposal to partition the Trust property, which he considered improper, Fran floated that proposal before she was removed as trustee—*i.e.*, more than two years before the hearing on the motion to appoint the receiver. *See* 2 RR 84-88. And once Fran was improperly removed as Trustee by Judge Stem, he killed the proposal.

Of course, a receiver could not have been necessary to prevent any future breaches of trust by Fran. Pursuant to the void county court at law orders, Fran is no longer a Trustee and would have no fiduciary duty of trust. As stated before, it is difficult to imagine why a receiver would have been necessary to prevent potential breaches of trust by Fran given the lack of her duty of trust as a beneficiary. Appellees did not present any evidence of a potential breach of trust.

To the extent that the district court appointed the receiver pursuant to Section 114.008 of the Texas Property Code, the court abused its discretion because there was no evidence to support the order.

## C. The "Rules of Equity" Did Not Justify the Appointment of the Receiver.

Lastly, the district court's Order Appointing Receiver stated that it was authorized by the "rules of equity." CR 1292. An equitable remedy is simply one that exists in equity. *See* BLACK'S LAW DICTIONARY *Equitable* (12th ed. 2024). Equity, in turn, is defined as "[f]airness; impartiality; evenhanded dealing." *Id. Equity*. Thus, the rules of equity permit a court to appoint a receiver whenever circumstances exist that are deemed by the court to require the appointment of a receiver to protect Trust assets or to prevent damage to the Trust or the interests of the Trust beneficiaries.

The district court could have concluded that there was an intractable controversy between these parties—although the court did not do so at the hearing or in its Order Appointing Receiver. *See* CR 1291-99. In similar situations, equity "'will take cognizance of a controversy to determine the rights of all the parties, and grant the relief required to meet the ends of justice in order to prevent a multiplicity of suits.'" *Tex. Unemployment Comp. Comm'n v. Metropolitan Bldg. & Loan Ass'n*, 139 S.W.2d 309, 311 (Tex. Civ. App.—Austin 1940, writ ref'd) (quoting *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 895 (Tex. 1937)).

In this case, however, the appointment of the receiver is based largely on the testimony of Judge Stem, who was improperly appointed trust advisor. This fact, coupled with his continued administration of the Trust and the court-ordered sale of the Trust property, will likely multiply future legal proceedings deemed necessary to prevent or remedy the illegal sale of the trust property, not deter them. Why? Because the district court's Order Appointing Receiver enforces the prior void orders of the county court at law by rubber-stamping the appointment of Judge Stem as trust advisor. CR 1292, 1295-96.

Although the Trust beneficiaries remain at odds, the appointment of a limited receivership to sell the front 45-acre tract of land will not ease this tension. More importantly, the rules of equity did not compel the district court to resort to this harsh and drastic remedy. The appointment of the receiver to take possession of, and sell, the front 45-acre tract is simply not supported by the facts, the law, or principles of equity.

## IV. THE ORDER APPOINTING RECEIVER REQUIRES FRAN TO PAY THE BILLS OF THE TRUST, WHICH VIOLATES TEXAS LAW AND RESULTS IN AN UNCONSTITUTIONAL TAKING OF FRAN'S PROPERTY.

The district court's Order Appointing Receiver orders Fran to pay the expenses of the Trust incurred in the ordinary course of Trust business:

> Mrs. Frances Shelton is ORDERED to continue to make regular and routine payments of any bills or invoices incurred by the Trust in the ordinary course of business with a copy of any such invoice or bill and payment thereof relating to or connected with the Front 45 Acres to be delivered to the Receiver and the parties.

CR 1295. Fran was improperly removed as Trustee by Judge Stem and removed as a signatory on the Trust's bank accounts. CR 923. Thus, to comply with this order, Fran would be required to use her personal funds to pay Trust expenses. Such would constitute an unconstitutional taking of her property. *See Thompson v. Winkelmann*, No. 01-06-00457-CV, 2008 WL 921041, at *4-*5 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.) (sustaining

42

challenge to trial court's order because it did "not comport with Texas law and result[ed] in an unconstitutional taking of said land"); *see also Thompson v. Consolidated Gas Util. Corp.*, 300 U.S. 55, 79-80 (1937) (upholding plaintiff's claim that the enforcement of a Railroad Commission order resulted in an unconstitutional taking of private property).

The Texas takings clause reflects that the right to own, use, and enjoy one's private property is a fundamental right and is "'among our most cherished liberties.'" *Commons of Lake Houston, Ltd. v. City of Houston*, 711 S.W.3d 666, 675 (Tex. 2025) (quoting *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014)); *see* TEX. CONST. art. 1, § 17(a). Property is "taken" when the State transfers property from one owner to another. *See Commons of Lake Houston*, 711 S.W.3d at 678 n.34. Requiring Fran to pay the expenses of the Trust out of her own pocket would result in an unconstitutional taking of her private property. The district court abused its discretion in issuing this order, this Court should, at a minimum, reverse this portion of the district court's Order Appointing Receiver.

### V. THE ORDER APPOINTING RECEIVER ALSO IMPROPERLY ENJOINS ANY BENEFICIARY FROM DIRECTLY OR INDIRECTLY TAKING ANY ACTION THAT WOULD HINDER THE RECEIVER.

The Order Appointing Receiver also provides that the beneficiaries of the Trust "are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would . . . [h]inder, obstruct or otherwise interfere with the Receiver in the performance of his duties." CR 1296. This order effectively prohibits any beneficiary, including Fran, from challenging the district court's order or any act taken by the receiver that would hinder the receiver from quickly selling the property. CR 1296.

The overly broad language of this injunction would theoretically keep Fran from filing her notice of interlocutory appeal and filing this brief, or taking any other legal action, even though she has legal and statutory rights to do so. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a). Although the court's order is not technically an anti-suit injunction because the injunction was not issued by a separate court, the effect is the same—*i.e.*, it would bar Fran's right to prosecute her appeal. As a consequence, the court's order is illegal and constitutes an abuse of discretion. *See Greiner v. Jameson*, 865 S.W.2d 493, 499 (Tex. App.—Dallas 1993, writ denied) (observing that a court's inherent

44

power is not without its limits); *see also Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd w.o.j.) (same).

## CONCLUSION AND PRAYER

For all of these reasons, the Court should reverse the district court's Order Appointing Receiver. Appellant respectfully seeks any and all further relief to which she may be justly and equitably entitled.

Respectfully submitted,

By: */s/ Rick Thompson*
Kirk L. Pittard
State Bar No. 24010313
Rick Thompson
State Bar No. 00788537
rthompson@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 (fax)

Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Ryan C. Johnson
State Bar No. 24048574
rjohnson@cjsjlaw.com
Scott H. James
State Bar No. 24037848
sjames@cjsjlaw.com
M. Katie Quillen
State Bar No. 24133047
kquillen@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
(254) 732-2242
(866) 627-3509 (fax)

**COUNSEL FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i)(2)(D) because it contains 10,210 words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Rick Thompson*
**Rick Thompson**

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2025, a true and correct copy of the foregoing brief was served on the following counsel of record via electronic service, pursuant to the Texas Rules of Appellate Procedure.

Jim Dunnam
jimdunnam@dunnamlaw.com
Andrea Mehta
andreamehta@dunnamlaw.com
Mason Vance Dunnam
masondunnam@dunnamlaw.com
DUNNAM & DUNNAM LLP
4125 West Waco Drive
Waco, Texas 76710

*Attorneys for Intervenors/Appellees Robert Spanos, Chrisopher Spanos, and Nicole Spanos*

Andy McSwain
mcswain@thetexasfirm.com
Mark E. Firmin
mfirmin@thetexasfirm.com
BEARD KULTGEN BROPHY BOSTWICK & DICKSON PLLC
220 South 4th Street
Waco, Texas 76701

*Attorneys for Intervenor/Appellee Vernon Leuschner*

*/s/ Rick Thompson*
Rick Thompson

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT AUSTIN

FRANCES SPANOS SHELTON,

*Appellant,*

v.

VERNON LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE
SPANOS, KATHRYN NICOLE LAWRIE, AND KATHERINE LEUSCHNER,
*Appellees.*

On Interlocutory Appeal from the 414th District Court
of McLennan County, Texas, Cause No. 2024-3035-5

**APPENDIX IN SUPPORT OF APPELLANT'S BRIEF**

| Tab | Document | Record Cite |
|-----|----------|-------------|
| A | March 31, 2025, Order Appointing Receiver | CR 1291-1299 |
| B | The Dorothy Spanos Living Trust | CR 460-551 |
| C | March 8, 2022, Order Appointing Temporary Administrator and Trust Advisor and Authorizing Issuance of Letters of Administration | CR 817-819 |
| D | May 18, 2022, Agreed Order Approving the Discharge of Temporary Administrator and Termination of Temporary Administration | CR 821-824 |
| E | September 1, 2022, Agreed Order to Extend the Appointment of the Trust Advisor of the Dorothy Spanos Living Trust | CR 827-828 |

| Tab | Document | Record Cite |
|-----|----------|-------------|
| F | Judge Stem's May 3, 2023, Letter Removing Frances Shelton as Trustee of the Dorothy Spanos Trust | CR 923 |
| G | Texas Government Code §25.0003 [Effective September 1, 2020] | |

# TAB A

| FRANCES SPANOS SHELTON, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | 414TH JUDICIAL DISTRICT |
| | § | |
| JOHN MALONE, AS TRUSTEE OF THE DOROTHY | § | |
| SPANOS LIVING TRUST, | § | |
| | § | |
| DEFENDANTS, | § | MCLENNAN COUNTY, TEXAS |
| | § | |
| V. | § | |
| | § | |
| VERNON LEUSCHNER, AS DURABLE POWER | § | |
| OF ATTORNEY FOR KATHERINE LEUSCHNER, | § | |
| ROBERT LEE SPANOS, CHRISTPHER BLAKE | § | |
| SPANOS, AND KATHRYN NICOLE LAWRIE, | § | |
| | § | |
| INTERVENORS. | § | |

## ORDER APPOINTING RECEIVER

CAME ON to be heard Intervenors, VERNON LEUSCHNER, as durable power of attorney for KATHERINE LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, AND KATHRYN NICOLE LAWRIE (collectively as "Intervenors"), Application to Appoint a Receiver. The Court, after careful consideration of the Motion, as well as the evidence and arguments of counsel, and the papers on file herein, determines the Motion should be GRANTED. Any relief not granted herein is DENIED.

The Receiver should (1) accordingly take possession of and sell the approximately 45 (+/-) acres of real property abutting FM 185 in Crawford, Texas owned (and defined) by the Dorothy Spanos Living Trust (the "Trust"), described as follows: the real property located at 228 Spanos Ranch Road and abutting FM 185 in Crawford, Texas, including the existing house, the RV Shed, Hanger, runway, front pasture, and pasture behind the existing house (the "Front 45 Acres") and related property/materials, and (2) distribute the proceeds from the sale of the Front 45 Acres in accordance with the terms of the Trust and its amendment.

Order Appointing Receiver                    Page 1 of 9

1291

# I
## FINDINGS AND CONCLUSIONS DEMONSTRATING THE NEED FOR RECEIVERSHIP

1. The Court takes judicial notice of its file and the underlying proceedings. Based on the pleadings, the arguments of counsel, the testimony, and the evidence before this Court, the Court finds:

   a. The Court has jurisdiction to make necessary order involving this Trust under Tex. Prop. Code Sec. 115 and personal jurisdiction over the parties to this case.

   b. The Trust owns approximately 261-acres of real property located at 228 Spanos Ranch Road, Crawford, Texas 76638, of which the Front 45 Acres abutting FM 185 is to be sold and the proceeds distributed under the express terms of the Trust;

   c. All parties have a probable right to or interest in Trust property and/or Trust Funds.

   d. Based on the evidence admitted, and testimony of the Trust Advisor, Judge Robert Stem, the main issue giving rise to this controversy is the sale of the Front 45 Acres.

   e. Due to the extraordinary controversy surrounding the sale of the Front 45 Acres, there is a material risk of harm, injury, damage and/or loss to the Property and/or Trust funds, as well as the various beneficiaries, if a Receiver is not appointed to carry out the terms of the Trust.

   f. To the extent necessary, all other legal and equitable remedies are inadequate under the circumstances to protect the property of the Trust and its beneficiaries.

   g. All other requirements of law have been complied with.

   h. Pursuant to Texas Civil Practice & Remedies Code § 64.001, Texas Property Code § 114.008(a)(5), and/or the rules of equity, a Receiver is necessary and appropriate for the purpose of securing and selling the Front 45 Acres, along with granting any easement(s) pertaining to the Front 45 Acres, so as to minimize harm to the Trust, Trust property, and beneficiaries of the Trust, and to effectuate the terms of the Trust in an efficient and expeditious manner, including through the prompt distribution of sales proceeds to the beneficiaries thereof.

   i. Irreparable damage will ensue to the beneficiaries of the Trust unless there is an immediate sale of the Front 45 Acres pursuant to the terms of the Trust.

   j. To achieve the purposes of the Receivership, the Receiver will need the authority set forth in this Order.

   k. Appointment of a Receiver over the Trust's assets will not disrupt the Trust's operations and is in the best interest of the Trust and its beneficiaries.

## II
## IDENTIFICATION OF THE RECEIVERSHIP ASSETS OF THE RECEIVERSHIP ESTATE

2.    The **Receivership Assets** of the **Receivership Estate** shall consist of the following:

      a.    The Front 45 Acres of the Trust located at 228 Spanos Ranch Road and abutting FM 185, Crawford, Texas, including the existing house, the RV Shed, Hanger, runway, front pasture, and pasture behind the existing house together with all property/materials located thereupon or relevant thereto; and

      b.    The proceeds from the sale of the Front 45 Acres.

      c.    **"Receivership Assets"** means the Front 45 Acres as defined herein, and any and all related rights or property, as well as the sales proceeds thereof.

## III
## APPOINTMENT OF RECEIVER

IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED by this Court that:

3.    The Court hereby takes exclusive jurisdiction and possession of the Receivership Assets, as defined herein.

4.    Until further order of the Court, Mr. Aubrey R. Williams, Attorney, Law Office of Aubrey R. Williams, P.O. Box 20156, Waco, Texas 76702 (254) 722-3331, is hereby appointed to serve as the Court's appointed Receiver over the Receivership Assets of the Trust (the **"Receivership Estate"**). Immediately with this Order, the Receiver shall hold the Receivership Estate assets *in custodia legis*. The Court finds that Mr. Williams is appropriate and qualified to serve as Receiver.

## IV
## ORDER FREEZING ALL RECEIVERSHIP ASSETS

5.    Except as otherwise specified herein, the **Receivership Assets** are frozen and may not be conveyed, assigned, transferred or in any way hypothecated (1) until further order of this Court, and only this Court, or (2) with or by the prior written authorization of the Receiver.

## V
## GENERAL POWERS AND DUTIES OF RECEIVER

6.    Except as limited herein, the Receiver shall have all powers, authorities, rights, and privileges necessary to manage the Receivership Assets under the supervision of the Court. This includes all powers to manage the Receivership Assets that were heretofore conveyed and possessed by the Trust, under any valid deeds and/or pursuant to the terms of the Trust and its amendments, and all powers and authority of a Receiver at equity, and all powers conferred upon a Receiver by the provisions of Texas law, and this Order.

7.    Subject to the specific provisions below, the Receiver shall immediately have the following general powers and duties:

a.  To use reasonable efforts to determine the boundaries, extent, and value of the Front 45 Acres as described in the Trust and its amendments, to grant easements as deemed appropriate or necessary in connection with the sale of the Front 45 Acres, and the preservation/grant of appropriate access as necessary for efficient and normal use of the remainder to the Trust property, and its ultimate beneficiaries, once distributed, and to distribute the proceeds from the sale of the Front 45 Acres in accordance with the terms of the Trust and its amendments.

b.  To take immediate possession, custody, and control of all Receivership Assets, and to manage, control, operate, and maintain the Receivership Assets, pending further Order of the Court.

c.  To take any action immediately that, prior to the entry of this Order, could have been taken by a Trustee with respect to managing, selling, or preserving the Receivership Assets, except as limited by this Order.

d.  To choose, engage and employ attorneys, accountants, appraisers, consultants, experts and any other independent contractors and technical specialists, immediately, including, but not limited to, real estate agents, property managers, and auctioneers (collectively, "**Retained Personnel**") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order.

e.  At his sole discretion, deposit all proceeds from the sale of the Receivership Assets (1) into the Receiver's IOLTA or other appropriate repository, (2) distribute the proceeds from the sale directly to the beneficiaries as provided under the terms of the Trust, or (3) deposit the sale proceeds in the registry of the Court.

f.  To use the Receivership Assets and proceeds from the sale thereof to pay proper debts and expenses of the Receivership Estate that (1) have accrued prior to or during the receivership and (2) in the sole discretion of the Receiver are essential or necessary to the operations of the Trust.

g.  Upon further Order, pursuant to such procedures as may be required by the Court, the Receiver is authorized to encumber, sell, and transfer title to, all real property in the Receivership Estate.

8.  The Receiver may delegate to his agents or attorneys any of the powers of the Receiver granted to Receiver by this Order.

9.  The Receiver may seek further Orders of the Court regarding standing powers of the Receiver and administration of Receivership Assets as the Receiver, in his sole discretion, deems necessary, to conserve the Receivership Assets, to protect the best interests of the beneficiaries of the Trust, and to protect the interests of the Receiver.

# VI
## TURNOVER OF DOCUMENTS AND INFORMATION

10. Within **ten (10) calendar days** of the entry of this Order, any former or future Trustee is **ORDERED** to identify and turn over to the Receiver all documents and materials representing all interests of the Trust in the Front 45 Acres.

11. Mrs. Frances Shelton is **ORDERED** to continue to make regular and routine payments of any bills or invoices incurred by the Trust in the ordinary course of business with a copy of any such invoice or bill and payment thereof relating to or connected with the Front 45 Acres to be delivered to the Receiver and the parties.

12. Any former or future Trustee, the Trust Advisor, and all beneficiaries of the Trust shall reasonably assist the Receiver in fulfilling his duties and obligations. As such, all former or future Trustee(s), the Trust Advisor, and all beneficiaries of the Trust must reasonably and expeditiously cooperate with all requests for information and documents from the Receiver regarding the Receivership Assets and administration thereof. This cooperation and assistance shall include, but not be limited to:

    (a) providing any information or documents that the Receiver deems necessary or appropriate to the exercise of the Receiver's powers;

    (b) providing any keys, including but not limited to physical and digital keys, codes, device PINs, and passwords, including but not limited to account, encryption, email account, website, and computer passwords required to access any website, electronic storage account application, or data in any medium that relates to or concerns the Receivership Assets, including but not limited to those that facilitate access and security to the Receivership Assets; and

    (c) providing full and unfettered access to all Receivership Assets.

## VII
## ACCESS TO AND TURN OVER REAL PROPERTY

13. Upon receiving actual notice of this Order by personal service or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from removing, destroying, or concealing anything from any building, residence or structure on the Front 45 Acres.

14. To execute the express and implied terms of this Order, the Receiver is authorized to change door locks to any premises or buildings on the Front 45 Acres. The parties to this suit, any beneficiaries, or any other person acting or purporting to act on their behalf, and any former or future Trustee, or their agents, are ordered not to change the locks in any manner, nor to have duplicate keys made.

## VIII
## NOTICE TO FUTURE AND FORMER TRUSTEES, BENEFICIARIES, AND THIRD PARTIES

15. The Receiver shall promptly give notice of his appointment to all known agents and attorneys of any former or future Trustee and any beneficiary of the Trust, or the Trust Advisor as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

16. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office, that he deems appropriate to inform them of the status of this matter. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver.

## IX
### INJUNCTION AGAINST INTERFERENCE WITH RECEIVER

17. Any former or future Trustee, any beneficiary of the Trust, and all persons receiving notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

   a. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

   b. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties;

   c. Dissipate or otherwise diminish the value of any Receivership Assets;

   d. Destroy, secret, deface, transfer, or otherwise alter or dispose of any documents of or pertaining to the Front 45 Acres, or property or structures located thereon;

   e. Fail to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Receivership Assets and the management of Receivership Assets;

18. Any former or future Trustee, any beneficiary, and the Trust Advisor shall cooperate with and assist the Receiver in the performance of the Receiver's duties.

## X
### BONDS AND OATH OF RECEIVER

19. Receiver is ordered to post bond, surety or otherwise, in the amount of $1,000.00 with the Clerk of the Court conditioned on faithful discharge of Receiver's duties and obedience to the Orders of the Court, and to file the required oath of service.

## XI
### RECEIVER IMMUNITY FROM LIABILITY

20. The Receiver and Retained Personnel are entitled to derived judicial immunity. The Receiver and Retained Personnel, acting within the scope of such agency, are entitled to rely on all outstanding rules of law and Orders of the Court and shall not be liable to anyone, in any country, for their own good-faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good-faith compliance with their duties and responsibilities

as Receiver or Retained Personnel, including compliance with applicable law governing the collection of debt, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by the Court that they acted or failed to act as a result of malfeasance, bad faith, or in reckless disregard of their duties. The Receiver and Retained Personnel shall be entitled to such derived judicial immunity even if this Receivership Order is subsequently stayed, reversed, vacated, modified, or amended, for any reason, by any court, including for lack of jurisdiction.

21. The Court shall retain exclusive jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions alleged to have been committed in their representative capacities relative to the carrying out of duties and responsibilities of the Receiver.

22. Under no circumstances shall any former or future Trustee, any beneficiary, or any other person or entity file any lawsuit, objection, discovery, intervention, or claim against Receiver, or any of his attorneys, except in this Court and no other. In the event such lawsuit, objection, discovery, intervention, or claim is filed, Receiver is instructed to seek dismissal of such suit and file appropriate motions in this Court to address the violation of this provision. In the event any attorney files such lawsuit, discovery, intervention, or claim against Receiver or his lawyers in any court except this Court, such attorney must type the following statement in 14-point font, bold, underlined at the top front page of each pleading or correspondence to such court: **"The McLennan County 414th District Court has Ordered That all Claims, Objections, Pleadings and Discovery Against Receiver, Mr. Williams and his Attorneys be Filed Only in Said McLennan County 414th District Court, cause number 2024-335-5."**

23. In the event the Receiver decides to resign, the Receiver shall give written notice to the Court and counsel for the parties herein of its intention, and the resignation shall be effective immediately.

24. The Receiver shall not be personally liable for any liabilities or costs that have accrued, or will accrue to the Trust, the Trustee, or any beneficiary of the Trust.

## XII
### RECOMMENDATIONS AND REPORTS

25. The Receiver, in accordance with the terms of the Trust and any amendments thereto, is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient preservation and/or disposition of the Receivership Assets as quickly as possible using his best judgment regarding the sale and/or distribution of the proceeds from the sale of the Front 45 Acres.

26. At Receiver's discretion, the Receiver shall file and serve a full report and accounting of the Receivership Estate, reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of the Front 45 Acres, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of or related to the Receivership Estate.

## XIII
### FEES, EXPENSES AND ACCOUNTINGS

27. The Receiver need not obtain approval prior to the disbursement of sale proceeds of the Front 45 Acres for reasonable and necessary expenses incurred in the ordinary course of the administration and operation of the Receivership. Further, prior approval is not required for payments of applicable federal, state, or local taxes pertaining to the Receivership Assets.

28. The Receiver's fee is $400.00 per billable hour incurred by the Receiver for his work on this matter. All Receiver's fees will be taxed as costs against the Trust, which means that the Receiver is authorized to seek and recover all Receivership fees, plus Receivership expenses. The Receiver may secure payment for the Receiver's fees and expenses in any manner the Receiver deems to be in the best interest of the Trust and its beneficiaries, including, but not limited to, taking a portion of the proceeds from the sale of any and all Receivership Assets.

29. The Court finds the foregoing to be a fair, reasonable, and necessary fee for the Receiver.

30. In concluding that this a fair, reasonable and necessary fee for the Receiver, the Court considered:

    a. The Court's file in this cause;

    b. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the receivership work properly;

    c. The range of reasonable and necessary hourly rates paid in this county and in other Texas counties;

    d. The importance of fulfilling the terms of the Trust and any amendments thereto in order to balance and safeguard the interests of the beneficiaries of the Trust and to maintain respect for the law;

    e. The circumstance surrounding the Trust and the Receivership Assets, therefore indicating that any unreasonable harm to the Trust and its beneficiaries by appointment of Receiver is comparatively low;

    f. The education, skill, experience, training, knowledge, reputation, ability, and seasoned judgment of the Receiver;

    g. The complexity and demands of this particular case;

    h. The value of property owned by the Trust and the work that will likely be required to carry out the terms of the Trust by Receiver; and

    i. The time limitations imposed by this Court and this case.

31. Each party shall bear its own costs and fees associated with the Intervenors' Motion to Appoint a Receiver and Plaintiff's Motion to Re-Affirm.

32. At the close of the Receivership, the Receiver shall submit a Final Accounting, which shall include a report of all sums paid to the Receiver and Retained Personnel pursuant to this Order, as well as receipt of funds and distribution to Trust beneficiaries.

33. All such fees and expenses of the Receiver, including all amounts due to the Receiver or Retained Personnel, shall be accorded priority to the maximum extent provided by applicable law.

34. Further, this Order shall constitute a subordinate lien upon the Receivership Assets, including, but not limited to, any real property owned by the Trust or Receiver and any amounts advanced by Receiver in accordance with this Order. Such lien shall be properly perfected upon filing of this Order, or an abstract thereof, in the Public Records of McLennan County.

SIGNED ____March 31, 2025__.

_____
JUDGE PRESIDING

# TAB B

# THE DOROTHY SPANOS LIVING TRUST

# December 19, 2017

PREPARED BY

## EVANS & DAVIS, PLLC

8117 PRESTON ROAD, SUITE 300
DALLAS, TEXAS 75225
(214) 368-2335

Copyright © 2017 Evans & Davis, PLLC

# The Dorothy Spanos Living Trust
## Table of Contents

**Article One**          **Establishing My Trust** ............................................. **1-1**
Section 1.01          Identifying My Trust.............................................. 1-1
Section 1.02          Reliance by Third Parties....................................... 1-1
Section 1.03          Transferring Property to My Trust ........................ 1-2
Section 1.04          Powers Reserved by Me as Grantor....................... 1-3
Section 1.05          Grantor Trust Status.............................................. 1-3

**Article Two**          **Family Information**.................................................. **2-1**

**Article Three**          **Trustee Succession Provisions**.............................. **3-1**
Section 3.01          Resignation of a Trustee ........................................ 3-1
Section 3.02          Trustee Succession during My Lifetime................. 3-1
Section 3.03          Trustee Succession after My Death ....................... 3-1
Section 3.04          Notice of Removal and Appointment..................... 3-2
Section 3.05          Appointment of a Co-Trustee................................ 3-2
Section 3.06          Corporate Fiduciaries............................................ 3-3
Section 3.07          Incapacity of a Trustee.......................................... 3-3
Section 3.08          Appointment of Independent Special Trustee ....... 3-3
Section 3.09          Rights and Obligations of Successor Trustees....... 3-3
Section 3.10          Successor Trustee Required to Provide An
                     Authorization to Release Medical Information ...... 3-4
Section 3.11          Obtain the Release of Medical Information........... 3-4

**Article Four**          **Trust Advisor Provisions** ....................................... **4-1**
Section 4.01          Provisions for Trust Advisor ................................ 4-1
Section 4.02          Designation of Trust Advisor ............................... 4-1
Section 4.03          Removal of a Trust Advisor .................................. 4-1
Section 4.04          Resignation of a Trust Advisor.............................. 4-1
Section 4.05          Incapacity of a Trust Advisor ............................... 4-2
Section 4.06          Authority of Successor Trust Advisors.................. 4-2
Section 4.07          Trust Advisor Powers ........................................... 4-2
Section 4.08          Limitation on Trust Advisor Powers ..................... 4-4
Section 4.09          Trust Advisor May Release Powers ...................... 4-4
Section 4.10          Trust Advisor Considered to Have Consented ...... 4-4
Section 4.11          Trust Advisor Compensation................................. 4-4
Section 4.12          Reimbursement To Trust Advisor ......................... 4-5
Section 4.13          Right to Examine Trust Records............................ 4-5
Section 4.14          Employment of Professionals................................ 4-5

| Article Five | Administration of My Trust during My Incapacity | 5-1 |
|---|---|---|
| Section 5.01 | Definition of My Incapacity | 5-1 |
| Section 5.02 | Determination of My Incapacity | 5-1 |
| Section 5.03 | Trust Distributions during My Incapacity | 5-1 |

| Article Six | Administration of My Trust upon My Death | 6-1 |
|---|---|---|
| Section 6.01 | My Trust Becomes Irrevocable | 6-1 |
| Section 6.02 | Administrative Trust | 6-1 |
| Section 6.03 | Payment of Expenses and Taxes | 6-1 |
| Section 6.04 | Restrictions on Certain Payments from Retirement Plans | 6-1 |
| Section 6.05 | Excluding Life Insurance Proceeds from Creditors | 6-2 |
| Section 6.06 | Payment of Death Taxes | 6-2 |
| Section 6.07 | Coordination with My Executor | 6-3 |
| Section 6.08 | Authority to Make Tax Elections | 6-3 |
| Section 6.09 | Payment of Charitable Bequests | 6-4 |

| Article Seven | Specific Distributions and Disposition of Tangible Personal Property | 7-1 |
|---|---|---|
| Section 7.01 | Specific Distribution to Robert Lee Spanos | 7-1 |
| Section 7.02 | Specific Distribution to Frances Shelton | 7-1 |
| Section 7.03 | Specific Distribution to Katherine Leuschner | 7-1 |
| Section 7.04 | Specific Distribution to Brandon Shelton | 7-1 |
| Section 7.05 | Specific Distribution to Brianna Shelton | 7-2 |
| Section 7.06 | Specific Distribution to Nicholas Shelton | 7-2 |
| Section 7.07 | Specific Distribution to Robert Lee Spanos | 7-2 |
| Section 7.08 | Specific Distribution to Kathryn Nicole Laurie | 7-2 |
| Section 7.09 | Specific Distribution to Christopher Blake Spanos | 7-2 |
| Section 7.10 | Distribution of Tangible Personal Property by Memorandum | 7-3 |
| Section 7.11 | Distribution of Remaining Tangible Personal Property | 7-3 |
| Section 7.12 | Definition of Tangible Personal Property | 7-4 |
| Section 7.13 | Incidental Expenses and Encumbrances | 7-4 |
| Section 7.14 | Residuary Distribution | 7-4 |

| Article Eight | Trusts for My Beneficiaries | 8-1 |
|---|---|---|
| Section 8.01 | Division of Remaining Trust Property | 8-1 |
| Section 8.02 | Distribution of the Share for Frances Shelton | 8-1 |
| Section 8.03 | Distribution of the Share for Katherine Leuschner | 8-2 |
| Section 8.04 | Distribution of the Share for Brandon Shelton | 8-3 |
| Section 8.05 | Distribution of the Share for Brianna Shelton | 8-4 |
| Section 8.06 | Distribution of the Share for Nicholas Shelton | 8-6 |

Dorothy Spanos Living Trust

ii

Section 8.07           Distribution of the Share for Robert Lee Spanos.................. 8-7
Section 8.08           Distribution of the Share for Kathryn Nicole Laurie............ 8-8
Section 8.09           Distribution of the Share for Christopher Blake Spanos....... 8-9
Section 8.10           Provisions Regarding Incapacitated Beneficiaries and
                                    Special Needs....................................................................... 8-10

**Article Nine**          **Remote Contingent Distribution.............................. 9-1**

**Article Ten**           **Distributions to Underage and Incapacitated**
                              **Beneficiaries ............................................................ 10-1**
Section 10.01          Supplemental Needs Trust..................................................... 10-1
Section 10.02          Underage and Incapacitated Beneficiaries........................... 10-5
Section 10.03          Methods of Distribution........................................................ 10-5
Section 10.04          Retention in Trust................................................................. 10-5
Section 10.05          Special Instructions for Disability Due to Addictive
                                    Situations or Criminal Behavior.......................................... 10-6
Section 10.06          Application of Article........................................................... 10-7

**Article Eleven**       **Retirement Plans and Life Insurance Policies ...... 11-1**
Section 11.01          Retirement Plans.................................................................. 11-1
Section 11.02          Life Insurance Policies ........................................................ 11-2
Section 11.03          Limitation on Liability of Payor.......................................... 11-3
Section 11.04          Collection Efforts................................................................. 11-3
Section 11.05          No Obligation to Purchase or Maintain Benefits................. 11-4

**Article Twelve**       **Trust Administration ................................................. 12-1**
Section 12.01          Distributions to Beneficiaries .............................................. 12-1
Section 12.02          Trust Decanting; Power to Appoint in Further Trust........... 12-1
Section 12.03          Beneficiary's Status............................................................. 12-2
Section 12.04          Mandatory Payments of a Pecuniary Amount..................... 12-2
Section 12.05          No Court Proceedings........................................................... 12-2
Section 12.06          No Bond................................................................................ 12-2
Section 12.07          Exoneration of My Trustee................................................... 12-3
Section 12.08          Limitations on Trustee Liability .......................................... 12-3
Section 12.09          Trustee Compensation ......................................................... 12-4
Section 12.10          Employment of Professionals............................................... 12-4
Section 12.11          Exercise of Testamentary Power of Appointment............... 12-4
Section 12.12          Determination of Principal and Income................................ 12-5
Section 12.13          Trust Accounting ................................................................. 12-5
Section 12.14          Action of Trustees and Delegation of Trustee Authority .... 12-6
Section 12.15          Trustee May Disclaim or Release Any Power..................... 12-6
Section 12.16          Trustee May Execute a Power of Attorney.......................... 12-6
Section 12.17          Additions to Separate Trusts................................................ 12-6

Dorothy Spanos Living Trust

iii

Section 12.18 Authority to Merge or Sever Trusts................................. 12-7

Section 12.19 Authority to Terminate Trusts ........................................ 12-7

Section 12.20 Discretionary Distribution to Fully Utilize Basis
Increase upon Death of Beneficiary ................................ 12-8

Section 12.21 Merger of Corporate Fiduciary......................................... 12-8

Section 12.22 Funeral and Other Expenses of Beneficiary ...................... 12-8

Section 12.23 Generation-Skipping Transfer Tax Provisions................... 12-9


**Article Thirteen**  **My Trustee's Powers**.................................................. **13-1**

Section 13.01 Introduction to Trustee's Powers...................................... 13-1

Section 13.02 Execution of Documents by My Trustee ........................... 13-1

Section 13.03 Investment Powers in General.......................................... 13-1

Section 13.04 Banking Powers ............................................................... 13-2

Section 13.05 Business Powers .............................................................. 13-2

Section 13.06 Contract Powers............................................................... 13-4

Section 13.07 Common Investments ....................................................... 13-4

Section 13.08 Environmental Powers...................................................... 13-5

Section 13.09 Farm, Ranch, and Other Agricultural Powers .................... 13-5

Section 13.10 Insurance Powers ............................................................. 13-6

Section 13.11 Loans and Borrowing Powers........................................... 13-6

Section 13.12 Nominee Powers ............................................................. 13-7

Section 13.13 Oil, Gas and Mineral Interests......................................... 13-7

Section 13.14 Payment of Property Taxes and Expenses........................ 13-7

Section 13.15 Purchase of Assets from and Loans to My Probate
Estate............................................................................... 13-7

Section 13.16 Qualified Real Property Valuation .................................... 13-8

Section 13.17 Qualified Tuition Programs .............................................. 13-8

Section 13.18 Real Estate Powers .......................................................... 13-8

Section 13.19 Residences and Tangible Personal Property...................... 13-9

Section 13.20 Digital Assets.................................................................. 13-9

Section 13.21 Retention and Abandonment of Trust Property................. 13-10

Section 13.22 Securities, Brokerage and Margin Powers........................ 13-10

Section 13.23 Settlement Powers ........................................................... 13-11

Section 13.24 Subchapter S Corporation Stock Provisions..................... 13-11

Section 13.25 Limitation on My Trustee's Powers .................................. 13-13


**Article Fourteen**  **General Provisions**...................................................... **14-1**

Section 14.01 Maximum Term for Trusts ............................................... 14-1

Section 14.02 Spendthrift Provision....................................................... 14-1

Section 14.03 Contest Provision............................................................. 14-1

Section 14.04 Survivorship Presumption ............................................... 14-2

Section 14.05 Changing the Governing Law and Situs of
Administration................................................................. 14-2

Section 14.06 Antilapse Statutes ........................................................... 14-2

Dorothy Spanos Living Trust

iv

Section 14.07          Definitions ......................................................... 14-3
Section 14.08          General Provisions and Rules of Construction ..................... 14-8

Dorothy Spanos Living Trust

v

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# The Dorothy Spanos Living Trust

## Article One
## Establishing My Trust

The date of this trust is December 19, 2017. The parties to this trust are Dorothy J. Spanos (the *Grantor*) and Dorothy J. Spanos (my *Trustee*).

Unless otherwise provided in my Trust Agreement, when one or more initial trustee(s) are serving as Trustee under my Trust, any one initial trustee may conduct business and act on behalf of my Trust without the consent of any other Trustee.

I intend to create a valid trust under the laws of Texas and under the laws of any state in which any trust created under this trust document is administered. The terms of this trust prevail over any provision of Texas law, except those provisions that are mandatory and may not be waived.

### Section 1.01    Identifying My Trust

For convenience, my trust may be referred to as:

"The Dorothy Spanos Living Trust dated December 19, 2017."

To the extent practicable, for the purpose of transferring property to my trust or identifying my trust in any beneficiary or pay-on-death designation, my trust should be identified as:

"Dorothy J. Spanos, Trustee, or her successors in interest, of the Dorothy Spanos Living Trust dated December 19, 2017, and any amendments thereto."

For all purposes concerning the identity of my trust or any property titled in or payable to my trust, any description referring to my trust will be effective if it reasonably identifies my trust and indicates that the trust property is held in a fiduciary capacity.

### Section 1.02    Reliance by Third Parties

Third parties may require documentation to verify the existence of this trust, or particular provisions of it, including the name of my Trustee or the powers held by my Trustee. To protect the confidentiality of this instrument, my Trustee may use an affidavit or a certification of trust that identifies my Trustee and sets forth the authority of my Trustee to transact business on behalf of my trust instead of providing a copy of this instrument. The affidavit or certification may include pertinent pages from this instrument, including title or signature pages.

A third party may rely upon an affidavit or certification of trust that is signed by my Trustee with respect to the representations contained in it. A third party relying upon an affidavit or certification of trust will be exonerated from any liability for actions the third party takes

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

or does not take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with my Trustee will not be required to inquire into this trust's terms or the authority of my Trustee, or to see to the application of funds or other property received by my Trustee. My Trustee's receipt of any money or property paid, transferred, or delivered to my Trustee will be a sufficient discharge to the third party from all liability in connection with its application. A written statement by my Trustee is conclusive evidence of my Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by my Trustee asserting my Trustee's authority or seeking to effect a transfer of property to or from the trust.

## Section 1.03    Transferring Property to My Trust

Any person or entity may transfer any property to my trust in any manner authorized by law.

### (a)    Funding of My Trust

By executing this instrument, I transfer, convey, and assign the property described in the attached Schedule A to my Trustee. I also transfer all my right, title, and interest in and to all of my property that may legally be held in trust and that may be transferred to my trust by this assignment. This assignment includes all of my real, personal, tangible, and intangible property located in the United States, whether separate property or community property, and whether acquired before or after the execution of this instrument, except for these assets that are expressly not transferred by this instrument:

> life insurance policies, unless the ownership of a policy is transferred to my trust by a separate instrument that specifically refers to the policy;

> corporate and self-employed (*Keogh*) pension, profit-sharing, and stock bonus plans;

> qualified retirement plans;

> commercial annuities;

> Section 1244 (small business) stock; and

> any property, the transfer of which would result in the immediate recognition of income subject to income or other taxes, would result in the loss of a homestead exemption, or would violate a restriction on transfer agreement.

### (b)    Acceptance by My Trustee

By executing this instrument, my Trustee accepts and agrees to hold the property transferred to the trust as trust property. All property transferred to my trust after the date of this trust must be acceptable to my Trustee. My

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee may refuse to accept any property. My Trustee shall hold, administer, and dispose of all accepted trust property for my benefit and for the benefit of my beneficiaries, in accordance with the terms of this trust.

## Section 1.04    Powers Reserved by Me as Grantor

As Grantor, I retain the powers set forth in this Section in addition to any powers that I reserve in other provisions of this instrument.

### (a)    Action on Behalf of My Trust

Whenever I am serving as Trustee, I may act for and conduct business on behalf of my trust without the consent of any other Trustee.

### (b)    Amendment, Restatement, or Revocation

I may amend, restate, or revoke this instrument, in whole or in part, for any purpose. Any amendment, restatement, or revocation must be made in writing and delivered to my then-serving Trustee.

### (c)    Addition or Removal of Trust Property

I may add property to my trust and may remove any property from my trust at any time.

### (d)    Control of Income and Principal Distributions

I retain the right to control the distribution of income and principal from my trust. I may direct my Trustee to distribute as much of the net income and principal of the trust property as I consider advisable to me or to other persons or entities. My Trustee may distribute the net income and principal to me or for my unrestricted use and benefit, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of my trust.

### (e)    Approval of Investment Decisions

I reserve the absolute right to review and change my Trustee's investment decisions. But my Trustee is not required to seek my approval before making investment decisions.

## Section 1.05    Grantor Trust Status

By reserving the broad rights and powers set forth in Section 1.04 of this Article, I intend to qualify my trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677. This means that, for federal income tax purposes, I will be treated as the owner of all the assets held in my trust during my lifetime, as if I held them in my individual capacity.

During any period that my trust is a Grantor Trust, the Taxpayer Identification Number of my trust will be my Social Security number, in accordance with Treasury Regulation Section 301.6109-1(a)(2).

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Two
# Family Information

I am unmarried.

I have two children. They are:

> Frances Shelton, born on July 24, 1960 and

> Katherine Leuschner, born on February 27, 1958.

All references in this document to *my children* are references to these children.

References to *my descendants* are to my children and their descendants, including any deceased child's descendants.

I have specifically intentionally excluded and disinherited unknown and unknowable claimants as blood relations.

# Article Three
# Trustee Succession Provisions

## Section 3.01 Resignation of a Trustee

A Trustee may resign by giving written notice to me. If I am incapacitated or deceased, a resigning Trustee must give written notice to the trust's Income Beneficiaries and to any other then-serving Trustee.

## Section 3.02 Trustee Succession during My Lifetime

During my lifetime, this Section governs the removal and replacement of my Trustees.

### (a) Removal and Replacement by Me

I may remove any Trustee with or without cause at any time. If a Trustee is removed, resigns, or cannot continue to serve for any reason, I may serve as sole Trustee, appoint a Trustee to serve with me, or appoint a successor Trustee.

### (b) During My Incapacity

During any time that I am incapacitated, the following will replace any then-serving Trustee in this order:

Frances Shelton then

Ricky Shelton.

If I am incapacitated, a Trustee may be removed only for cause, and only if a court of competent jurisdiction approves the removal upon the petition of an interested party. This does not limit the authority of a Trust Advisor to remove a Trustee under the provisions of Section 4.07(c).

My Legal Representative may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

All appointments, removals, and revocations must be by signed written instrument.

## Section 3.03 Trustee Succession after My Death

After my death, this Section will govern the removal and replacement of my Trustees.

### (a) Successor Trustee

I name the following, in this order, to serve as my successor Trustee after my death, replacing any then-serving Trustee:

Frances Shelton then

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Ricky Shelton.

## (b) Removal of a Trustee

A Trustee may be removed only for cause, and a petitioning beneficiary must obtain approval from a court of competent jurisdiction before the removal is effective. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to review the petition and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

Nothing in this Subsection limits the authority of a Trust Advisor to remove a Trustee under the provisions of Section 4.07(c).

## (c) Default of Designation

If the office of Trustee of a trust created under this instrument is vacant and no designated successor Trustee is able and willing to act as Trustee, my Trust Advisor may appoint a successor Trustee. If my Trust Advisor is unable or unwilling to act, the trust's Primary Beneficiary may appoint an attorney, certified public accountant or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

Any beneficiary may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

## Section 3.04    Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed and to any other then-serving Trustees. The removal becomes effective in accordance with its provisions.

Notice of appointment must be in writing and delivered to the successor Trustee and to any other then-serving Trustees. The appointment becomes effective at the time of acceptance by the successor Trustee. A copy of the notice may be attached to this instrument.

## Section 3.05    Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. This Co-Trustee serves only as long as the appointing Trustee serves, or as long as the last to serve if more than one Trustee appointed the Co-Trustee. This Co-Trustee will not

become a successor Trustee upon the death, resignation, or incapacity of the appointing Trustee, unless appointed under the terms of this instrument. Although this Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of this Co-Trustee and the appointing Trustee may not exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time, with or without cause.

## Section 3.06    Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal and state law and that is not related or subordinate to any beneficiary within the meaning of Internal Revenue Code Section 672(c).

## Section 3.07    Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign as Trustee. For Trustees other than me, a written declaration of incapacity by the Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee, made in good faith and supported by a written opinion of incapacity by a physician who has examined the incapacitated Trustee, will terminate the trusteeship. If the Trustee designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion of incapacity within 10 days, the trusteeship will be terminated.

## Section 3.08    Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, my Trust Advisor shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee as to this property or with respect to this provision. The Independent Special Trustee appointed may not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). My Trust Advisor may revoke any appointment of this kind at any time.

An Independent Special Trustee will exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by my Trust Advisor in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice of resignation to my Trust Advisor. Notice of resignation will be effective in accordance with the terms of the notice.

## Section 3.09    Rights and Obligations of Successor Trustees

Each successor Trustee serving under this instrument, whether corporate or individual, will have all of the title, rights, powers, and privileges granted to the initial Trustee named under this instrument. In addition, each successor Trustee will be subject to all of the restrictions imposed upon, as well as to all discretionary and ministerial obligations and duties given to the initial Trustee named under this instrument.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 3.10    Successor Trustee Required to Provide An Authorization to Release Medical Information

Each individual successor Trustee (or Co-Trustee) shall be required to execute and deliver to the co-Trustee (if any) or next successor Trustee an "Authorization for Release of Medical Information", pursuant to the Health Insurance and Portability and Accountability Act of 1996 ("HIPAA") and any other similarly applicable federal and state laws, authorizing the release of said successor's protected health and medical information to said successor's Co-Trustee (if any) and to all alternate successor Trustees (or Co-Trustees) named under this Trust Agreement, to be used only for the purpose of determining in the future whether said successor has become incapacitated (as defined in this Trust Agreement). If said successor is already acting in the capacity of Trustee (or Co-Trustee) and fails to so execute and deliver such Authorization within thirty (30) days of actual notice of said requirement, or if an event has occurred which triggers said successor's power to act but said successor has not yet begun to act in said capacity and fails to so execute and deliver such Authorization within thirty (30) days of actual notice of said requirement, then for purposes of the Trust Agreement, said successor shall be deemed incapacitated. "Actual notice" shall occur when a written notice, signed by the Co-Trustee (if any) or next successor Trustee, informing said successor of the need to timely execute and deliver an authorization as set forth above (and, in the case where said successor has not yet begun to act, informing him or her of the event that has triggered said successor's power to act), is (i) deposited in the United States mail, postage prepaid, addressed to the last address of said successor known to the Co-Trustee or next successor Trustee or (ii) hand delivered to said successor, provided such delivery is witnessed by a third party independent from the Co-Trustee or next successor Trustee within the meaning of Internal Revenue Code Section 674(c) and said witness signs a statement that he or she has witnessed such delivery.

## Section 3.11    Obtain the Release of Medical Information

The Trustee is empowered to request, receive and review any information, verbal or written, regarding Grantor' physical or mental health, including, but not limited to, protected health and medical information, and to consent to their release or disclosure. Grantor(s) have separately signed on this same date of on an earlier date an "Authorization For Release of Medical Information", in compliance with HIPAA, immediately authorizing the release of any and all health and medical information to the trustee (or next successor trustee, even if not yet acting) for the purposes of determining the Grantor's incapacity (or for other stated purposes therein). In the event said authorization cannot be located, is by its own terms no longer in force or is otherwise deemed invalid in whole or in part, Grantor(s) hereby grant(s) the trustee (or next successor trustee even if not yet acting) the power and authority, as Grantor's legal representative, to execute a new authorization on the Grantor's behalf, immediately authorizing the release of any and all health and medical information for the purpose of determining the Grantor's incapacity (and for the purpose of carrying out any of the trustee's powers, rights, duties and obligations under this trust agreement), naming the trustee (or next successor trustee even if not yet acting) as the

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335.

Grantor's "personal representative", "authorized representative" and "authorized recipient".

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Four
## Trust Advisor Provisions

### Section 4.01    Provisions for Trust Advisor

The Trust Advisor's purpose is to direct my Trustee in matters concerning the trust, and to assist in achieving my objectives as expressed by the other provisions of my estate plan if needed. Any Trust Advisor must be a corporate fiduciary or an individual who is not related or subordinate to me, while I am still living, or to any beneficiary within the meaning of Internal Revenue Code Section 672(c), and must not be an adverse party within the meaning of Internal Revenue Code Section 672(b). Neither I, nor any trust beneficiaries, nor any person who has contributed to the trust may serve as a Trust Advisor at any time under this instrument.

### Section 4.02    Designation of Trust Advisor

Any Trust Advisor authorized or required to act with respect to this instrument must be appointed by a court of competent jurisdiction on petition of a Trustee or beneficiary. The Trust Advisor must be a corporate fiduciary or individual of a type described in Section 4.01.

The court acting to appoint a Trust Advisor will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

### Section 4.03    Removal of a Trust Advisor

Any Trust Advisor may be removed for cause only as determined by a court of competent jurisdiction on the petition of any Trustee or beneficiary not acting under compulsion or any kind of duress. The court removing a Trust Advisor may appoint one or more successor Trust Advisors to immediately replace the removed Trust Advisor. The court acting to remove and replace a Trust Advisor will acquire jurisdiction or authority over the trust only to the extent necessary for the removal and replacement of the Trust Advisor.

### Section 4.04    Resignation of a Trust Advisor

A Trust Advisor may resign by giving written notice to me. If I am deceased, a Trust Advisor may resign by giving written notice to the Income Beneficiaries of the trust and to the then-serving Trustee.

Resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation, unless an earlier effective date is agreed to by me or by the trust's Primary Beneficiary. A resigning Trust Advisor is not liable or responsible for the act of any successor Trust Advisor.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 4.05　Incapacity of a Trust Advisor

If any individual Trust Advisor becomes incapacitated, the incapacitated Trust Advisor need not resign as Trust Advisor. Any then-serving Trust Advisor or the immediately eligible successor Trust Advisor may provide a written declaration that a Trust Advisor is incapacitated.

The written declaration of the Trust Advisor's incapacity, if supported by a written opinion of incapacity by a physician who has examined the incapacitated Trust Advisor, will terminate the Trust Advisor's service. If the Trust Advisor designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion within 10 days of a request to do so, the Trust Advisor's service will be terminated.

The provisions of Section 14.07(g) of this instrument govern the determination of a Trust Advisor's incapacity, except that a single physician may make the determination of incapacity instead of two physicians. Further, Section 14.07(g) governs the Trust Advisor's obligations to submit to examination and provide necessary releases.

## Section 4.06　Authority of Successor Trust Advisors

Any successor Trust Advisor has all the authority of any predecessor Trust Advisor, but is not responsible for the predecessor's acts, omissions, or forbearances.

## Section 4.07　Trust Advisor Powers

Any Trust Advisor named or appointed under the provisions of this instrument has the following powers and authorities.

### (a)　Power to Change the Governing Law and Situs of Administration

The Trust Advisor may change the governing law of the trust, remove all or any part of the property, or change the situs of administration of the trust from one jurisdiction to another as more specifically set forth in Section 14.05 of this instrument.

### (b)　Power to Decant a Trust

The Trust Advisor may appoint the property subject to my Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Advisor, and as more specifically set forth in Section 12.02 of this instrument.

### (c)　Power to Remove and Appoint Trustees

The Trust Advisor may remove any Trustee of any trust created under this instrument at any time, with or without cause. If the office of Trustee of a trust is vacant and no successor Trustee is effectively named, the Trust Advisor may appoint an individual or a corporate fiduciary to serve as

Trustee. A Trust Advisor may not appoint any then-serving Trust Advisor as a Trustee.

If the Trust Advisor removes a Trustee, notice of removal must be made in writing and delivered to my Trustee being removed and any other then-serving Trustees. The removal of my Trustee will be effective in accordance with the terms of the notice of removal.

If one or more beneficiaries also hold the power to remove, replace, or remove and replace Trustees, the Trust Advisor may veto any removal, appointment, or both made by any beneficiary.

### (d) Power to Compel, Approve, or Reject Trustee Accountings

The Trust Advisor may demand from time to time a written accounting from my Trustee, but not more often than quarter-annually. If my Trustee fails to account to the Trust Advisor within 30 days of a written demand, the Trust Advisor may institute appropriate legal actions on behalf of my beneficiaries to compel a full accounting and for other appropriate relief.

The Trust Advisor must either approve or reject any accountings provided by any Trustee within 60 days after the Trustee provides the accounting. Failure to act by the Trust Advisor within the 60-day period will be treated as approval of the accounting by the Trust Advisor. If the Trust Advisor approves an accounting, the approval will be binding on all other parties to the fullest extent allowable under the law. If the Trust Advisor rejects a Trustee's accounting, the Trust Advisor must provide the Trustee with an explanation that adequately enables the Trustee to revise its accounting. The Trustee will then present the revised accounting to the Trust Advisor for approval or further revision, as necessary.

### (e) Power to Construe the Terms of This Instrument

The Trust Advisor may settle any disputes concerning the interpretation of any provision contained in this instrument that arise as a result of any perceived ambiguity. In doing so, the role of the Trust Advisor is to ensure that the instrument is construed in a manner consistent with my estate planning objectives.

### (f) Executing Documents Denoting Authority

The Trust Advisor may execute and deliver, and may direct any Trustee to execute and deliver, any documents necessary to carry out any power granted to the Trust Advisor or my Trustee. All parties dealing with the Trust Advisor and my Trustee may rely on statements and documents made by the Trust Advisor and by any Trustee. No party is required to inquire into any statement or document's validity. If any conflict exists between assertions of authority made by the Trust Advisor and my Trustee,

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

assertions made by the Trust Advisor will control, and any assertion made by my Trustee will be disregarded to the extent of the conflict.

## Section 4.08    Limitation on Trust Advisor Powers

A Trust Advisor may not exercise any power or discretion in favor of the Trust Advisor, for the Trust Advisor's benefit, or for the benefit of any person to whom the Trust Advisor is related or subordinate within the meaning of Internal Revenue Code Section 672(c). My intent is that nothing in this instrument be construed in any manner that would cause the Trust Advisor to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. This provision, however, does not prohibit the Trust Advisor or any related party from receiving reasonable fees for services rendered to the Trust.

If my Trust Advisor exercises any one of the powers granted in Section 4.07(a) or Section 4.07(b), the Trust Advisor must direct that an amount of assets will be left with the Trustee, sufficient in the Trustee's discretion to cover an estimate of the reasonable claims, expenses and taxes that the Trustee may incur in defending any anticipated claims or winding up the trust.

In exercising and considering whether to exercise any power granted to a Trust Advisor under this agreement, the Trust Advisor should make reasonable inquiry into any matter or seek any information that reasonably bear upon the Trust Advisor's decision to exercise the power.

## Section 4.09    Trust Advisor May Release Powers

Acting on behalf of itself and all successor Trust Advisors, a Trust Advisor may irrevocably release, renounce, suspend, or limit any power or discretion held by the Trust Advisor at any time.

## Section 4.10    Trust Advisor Considered to Have Consented

If any provision of this Article requires the consent or approval of a Trust Advisor before a Trustee can act and the Trust Advisor does not affirmatively deny consent to the proposed action in writing within 10 days of being notified in writing that approval or consent is sought for the particular act, the Trust Advisor will be considered to have given consent or approval for the Trustee's proposed action.

## Section 4.11    Trust Advisor Compensation

Any Trust Advisor serving under this instrument is entitled to receive reasonable compensation for services rendered, taking into consideration:

> the market rate for similar services in the jurisdiction in which the Trust Advisor serves;

> the breadth and nature of the powers, authorities, and discretions granted to the Trust Advisor;

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

the amount of time the Trust Advisor will likely devote to overseeing the trust and my Trustee; and

the trust property's current value and the projected amount of appreciation.

The Trust Advisor is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Advisor, including reasonable travel expenses.

Serving in the capacity of Trust Advisor does not prevent the Trust Advisor from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Advisor is providing professional services, the Trust Advisor is entitled to charge its normal and customary fees for services provided or to be provided, in addition to the Trust Advisor's ordinary compensation as Trust Advisor. The Trust Advisor shall not receive any compensation for merely being named as a Trust advisor.

## Section 4.12    Reimbursement To Trust Advisor

Any Trust Advisor of any trust held hereunder shall be entitled to reimbursement for all ordinary and necessary out-of-pocket costs and expenses (including attorneys', accountants', consultants' and other expert fees and charges) incurred by such Advisor in the performance of his or her duties under this Trust Agreement.

Each of the Advisors shall be indemnified for his or her reasonable legal expenses incurred in defending himself or herself in any action or actions brought against him or her in which it is finally determined that his or her conduct did not constitute gross negligence, willful misconduct, or a crime, and, further, such reasonable legal expenses may be advanced to a Advisor provided that he or she executes an undertaking, with a supporting promissory note, to repay such advanced amounts in the event that the conduct of such Advisor is finally determined to have constituted gross negligence, willful misconduct, or a crime.

## Section 4.13    Right to Examine Trust Records

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by the Trust Advisor at all reasonable times.

## Section 4.14    Employment of Professionals

Any Trust Advisor may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trust Advisor's duties. The Trust Advisor may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trust Advisor may reasonably compensate an individual or entity employed to assist or advise the Trust Advisor, regardless of any other relationship existing between the individual or entity and the Trust Advisor.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

The Trust Advisor may direct and my Trustee will pay the usual compensation for services contracted for under this Section out of trust income or principal as the Trust Advisor deems advisable. The Trust Advisor may direct payment of compensation to an individual or entity employed to assist or advise the Trust Advisor without diminishing the compensation to which the Trust Advisor is entitled under this instrument. A Trust Advisor who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trust Advisor may nonetheless receive the Trust Advisor's share of the compensation paid to the entity.

# Article Five
# Administration of My Trust during My Incapacity

### Section 5.01    Definition of My Incapacity

I will be considered incapacitated during any time when I am unable to effectively manage my property or financial affairs because of age, illness, mental disorder, dependence on prescription medication or other substances, or any other cause.

### Section 5.02    Determination of My Incapacity

For purposes of this instrument, I am incapacitated if I am determined to be so under any one of the following Subsections.

#### (a)    Determination by Attending Physician

I will be considered incapacitated if my attending physician has determined my then-existing circumstances fall within the definition of incapacity as provided in Section 5.01.

I will be considered restored to capacity if my personal or attending physician signs a written opinion that I can effectively manage my property and financial affairs.

#### (b)    Court Determination

I will be considered incapacitated if a court of competent jurisdiction determines that I am legally incapacitated, incompetent, or otherwise unable to effectively manage my property or financial affairs.

#### (c)    Detention, Disappearance, or Absence

I will be considered incapacitated if I have an unexplained disappearance or absence for more than 30 days, or if I am detained under duress. My disappearance, absence, or detention under duress may be established by an affidavit of my Trustee, or, if no Trustee is then serving under this trust, by the affidavit of any beneficiary of any trust created under this instrument. The affidavit must describe the circumstances of my disappearance, absence, or detention under duress. A third party dealing with my Trustee in good faith may always rely on the representations contained in the affidavit.

I will be considered restored to capacity upon my written notice to the successor Trustee that I can manage my property and financial affairs.

### Section 5.03    Trust Distributions during My Incapacity

During any period of time when I am incapacitated, my Trustee shall administer my trust and distribute its net income and principal as provided in this Section.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (a) Distributions for My Benefit

My Trustee shall regularly and conscientiously make appropriate distributions of income and principal for my general welfare and comfort under the circumstances existing at the time each distribution is made.

Appropriate distributions under this Subsection include the payment of any of my enforceable legal obligations and premiums for insurance policies owned by me or by my trust, including life, medical, disability, property and casualty, errors and omissions, and longterm health care policies.

My Trustee is authorized to honor pledges and continue to make gifts to charitable organizations that I have regularly supported in the customarily given amounts.

The examples included in this Subsection are for purposes of illustration only and are not intended to limit the authority of my Trustee to make any distribution for my benefit that my Trustee determines appropriate.

## (b) Manner of Making Distributions

My Trustee may make distributions for my benefit in any one or more of the following ways:

to me, but only to the extent I am able to manage these distributions;

to other persons and entities for my use and benefit;

to an agent or attorney in fact authorized to act for me under a legally valid durable power of attorney executed by me before my incapacity; and

to my guardian or conservator who has assumed responsibility for me under any court order, decree, or judgment issued by a court of competent jurisdiction.

I wish to maintain the highest level of personal independence and comfort, and to live in the manner in which I have lived throughout my life. The authorized expenditures from the trust include all expenditures necessary for food, shelter, and maintenance of an independent lifestyle in my own home or apartment. The authorized expenditures include service, equipment or personal care necessary to allow me to remain in my own home or apartment, and to have a lifestyle which allows the highest degree of dignity and independence. It is my intent that I remain in my current home, for as long as possible, unless medical exigencies which may not be handled by purchase of additional home care make it necessary for me to move to another location.

Dorothy Spanos Living Trust

5-2

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My trustee shall give priority to these purposes over any consideration for any interest of any remainder beneficiary. It is understood that the use of funds in said trust may leave nothing to be distributed to remainder beneficiaries and it is my intention that my care be given priority.

### (c) Distributions for the Benefit of Persons Dependent on Me

My Trustee also may distribute as much of the net income and principal as my Trustee considers necessary for the health, education, maintenance or support of persons who my Trustee determines are dependent on me for support.

### (d) Guidance for My Trustee Regarding Distributions

When making distributions under Subsections (a) and (c), my Trustee shall give consideration first to my needs, and then to the needs of those persons dependent on me.

When making distributions under Subsection (c), I request that my Trustee, in its sole and absolute discretion, consider other income and resources available to the beneficiaries. My Trustee may make unequal distributions, distributions to some but not all beneficiaries, or no distributions.

A distribution made to a beneficiary under this Section will not be considered an advancement, and will not be charged against the share of the beneficiary that may be distributable under any other provision of this trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Six
# Administration of My Trust upon My Death

## Section 6.01    My Trust Becomes Irrevocable

After my death, my trust is irrevocable and my Social Security number may no longer be used to identify the trust. My Trustee may need to apply for a separate Taxpayer Identification Number for the trust.

## Section 6.02    Administrative Trust

After my death and before the distribution of trust property as provided in the subsequent Articles of this trust, the trust will be an *administrative trust*, but may continue to be known as the Dorothy Spanos Living Trust. The administrative trust will continue for a reasonable period of time necessary to complete the administrative tasks set forth in this Article.

## Section 6.03    Payment of Expenses and Taxes

My Trustee may pay from the trust property:

> expenses of my last illness, funeral, and burial or cremation, including expenses of memorials and memorial services;

> legally enforceable claims against me or my estate;

> expenses of administering the trust and my estate; and

> court-ordered allowances for those dependent upon me.

These payments are discretionary with my Trustee. My Trustee may make decisions on these payments without regard to any limitation on payment of the expenses and may make payments without any court's approval. No third party may enforce any claim or right to payment against the trust by virtue of this discretionary authority.

If payment would decrease the federal estate tax charitable deduction available to my estate, my Trustee may not pay any administrative expenses from assets passing to an organization that qualifies for the federal estate tax charitable deduction.

My Trustee shall pay death taxes out of the trust property's principal, as provided in Section 6.06. But if a probate estate is opened within six months after the date of my death, my Executor shall pay any outstanding claims and expenses as authorized by the Executor, as well as any death taxes from my probate estate to the extent that the cash and readily marketable assets in my probate estate are sufficient.

## Section 6.04    Restrictions on Certain Payments from Retirement Plans

The term *designation date* means September 30 of the calendar year following the year of my death, or another date as established by Treasury Regulations or other tax law authority as the final date for determining whether this trust meets the requirements for treatment of

the trust's oldest beneficiary as if the beneficiary was named individually as beneficiary of any qualified retirement plan payable to this trust.

Notwithstanding any other provision of this trust or state law to the contrary, my Trustee may not distribute any qualified retirement benefit payable to a trust created under this trust to or for the benefit of my estate, any charity, or any beneficiary other than an individual, on or after the *designation date*. My intent is that all qualified retirement benefits held by or payable to this trust on or after the designation date be distributed to or held only for individual beneficiaries, within the meaning of Internal Revenue Code Section 401(a)(9).

Qualified retirement benefits payable to the trust may not be used or applied on or after the designation date for payment of my debts, taxes, expenses of administration, or other claims against my estate, or for payment of estate, inheritance, or similar transfer taxes due because of my death, other than those directly attributable to and the legal obligation of a particular qualified retirement plan. This Section does not apply to any bequest or expense that is specifically directed to be funded with qualified retirement benefits.

## Section 6.05    Excluding Life Insurance Proceeds from Creditors

Despite anything to the contrary in this instrument, any life insurance proceeds payable to the Trustee under this instrument must never be or become part of my probate or testamentary estate. Nothing in this instrument directs that these life insurance proceeds be used to pay my debts or expenses.

## Section 6.06    Payment of Death Taxes

For the purposes of this Article, the term *death taxes* refers to any taxes imposed by reason of my death by federal, state, or local authorities, including estate, inheritance, gift, and direct-skip generation-skipping transfer taxes. For purposes of this Section, *death taxes* does not include any additional estate tax imposed by Internal Revenue Code Section 2031(c)(5)(C) or Section 2032A(c), or any other comparable recapture tax imposed by any taxing authority. Nor does the term include any generation-skipping transfer tax, other than a direct-skip generation-skipping transfer tax.

Except as otherwise provided in this Article or elsewhere in this trust, my Trustee shall provide for payment of all death taxes from the administrative trust without apportionment. My Trustee may not seek contribution toward or recovery of any payments of death taxes from any individual.

### (a)    Protection of Exempt Property

Death taxes may not be allocated to or paid from any assets that are not included in my gross estate for federal estate tax purposes. To the extent practicable, my Trustee may not pay any death taxes from assets that are exempt from generation-skipping transfer tax purposes.

### (b)    Protection of the Charitable Deduction

Death taxes may not be paid from or allocated to any assets passing to an organization that qualifies for the federal estate tax charitable deduction, or

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

from any assets passing to a split-interest charitable trust, unless the Trustee has first used all other assets available to pay the taxes.

### (c) Property Passing outside of My Trust

Except as to qualified retirement benefits, death taxes imposed with respect to property included in my gross estate for death tax purposes but passing outside of the trust are to be apportioned among the persons and entities benefited. The proportion attributed to each person or entity is the taxable value of each person or entity's beneficial interest over the total taxable value of all property and interests included in my gross estate for death tax purposes. The values used for the apportionment are to be the values as finally determined under federal, state, or local law.

## Section 6.07 Coordination with My Executor

The following provisions are intended to help facilitate the coordination between my Executor and my Trustee. These provisions apply even if the Executor and the Trustee are the same person or entity.

### (a) Reliance on Information from My Executor

My Trustee may rely upon the written request of my Executor for payments authorized under this Article and the amounts included in those payments without computing the sums involved. If a payment is made under this Article to my Executor, my Trustee will have no duty to inquire into the application of the payment.

### (b) Receipt of Probate Property

My Trustee may accept or decline any distributions of property tendered to my Trustee by my Executor. If my Trustee accepts the property, my Trustee may do so without audit, and will not be required to review the Executor's records.

### (c) Discretionary Distributions to My Executor

My Trustee may distribute cash, accrued income, or other trust property to my probate estate as a beneficiary of this trust, to the extent my Trustee determines that doing so is in the best interests of the trust beneficiaries.

## Section 6.08 Authority to Make Tax Elections

After my death, my Trustee may make tax elections as provided in this Section. But if an Executor is appointed for my probate estate, the discretionary authority granted to my Trustee as to any tax election will be subordinate to the Executor's statutorily delegated authority.

### (a) Tax Elections

My Trustee may make any tax elections necessary for the efficient administration of my estate, including:

valuing assets according to an alternate valuation date;

electing whether to take administration expenses as estate tax deductions or income tax deductions;

allocating my unused generation-skipping exemption to any portion of the trust property;

electing special-use valuation;

deferring payment of all or any portion of any taxes; and

treating any portion of my administrative trust as part of my estate for federal or state income tax purposes, or both.

My Trustee may make equitable adjustments between income and principal because of any tax elections made by my Trustee.

## (b)     Allocation of GST Exemption

My Trustee may elect to allocate or not allocate any portion of the Available GST Exemption under Internal Revenue Code Section 2631, or a counterpart exemption under any applicable state law to any property of which I am considered the transferor for generation-skipping transfer tax purposes. This includes any property transferred by me during my life for which I did not make an allocation prior to death. The exercise of my Trustee's discretion should be based on the transfers, gift tax returns, and other information known to my Trustee, with no requirement that allocations benefit the various transferees or beneficiaries in any particular manner.

## (c)     Qualified Conservation Easements

My Trustee may create a qualified conservation easement, as defined in Internal Revenue Code Section 2031(c)(8)(A), in any land held by the trust and may make the necessary election provided by Section 2031(c)(6).

## Section 6.09     Payment of Charitable Bequests

To the extent possible, my Trustee must make all charitable distributions from property that constitutes *income in respect of a decedent* (IRD) as that term is defined under the U.S. income tax laws. The distribution will qualify for the income tax charitable deduction under Internal Revenue Code Section 642(c)(2), as amended.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Seven
## Specific Distributions and Disposition of Tangible Personal Property

### Section 7.01 Specific Distribution to Robert Lee Spanos

As soon as practicable after my death, my Trustee shall distribute 44 acres of land with an address of 228 Spanos Ranch Road and with a legal description of being 266.482 acres of land out of the J.B. Capel Survey A-203 L.C. Woodruff Survey, Isaac Gifford and Wm. Parvin Surveys, McLennan County, Texas to Robert Lee Spanos.

If Robert Lee Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes. But property passing under this Section passes subject to all liens, security interests, and other encumbrances.

### Section 7.02 Specific Distribution to Frances Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Frances Shelton.

If Frances Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.03 Specific Distribution to Katherine Leuschner

As soon as practicable after my death, my Trustee shall distribute $100,000 to Katherine Leuschner.

If Katherine Leuschner is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.04 Specific Distribution to Brandon Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Brandon Shelton.

If Brandon Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 7.05     Specific Distribution to Brianna Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Brianna Shelton.

If Brianna Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.06     Specific Distribution to Nicholas Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Nicholas Shelton.

If Nicholas Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.07     Specific Distribution to Robert Lee Spanos

As soon as practicable after my death, my Trustee shall distribute $100,000 to Robert Lee Spanos.

If Robert Lee Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.08     Specific Distribution to Kathryn Nicole Laurie

As soon as practicable after my death, my Trustee shall distribute $100,000 to Kathryn Nicole Laurie.

If Kathryn Nicole Laurie is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.09     Specific Distribution to Christopher Blake Spanos

As soon as practicable after my death, my Trustee shall distribute $100,000 to Christopher Blake Spanos.

If Christopher Blake Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 7.10    Distribution of Tangible Personal Property by Memorandum

I may dispose of items of tangible personal property by a signed written memorandum executed after I sign this instrument. The memorandum must refer to my trust and must reasonably identify the items and the beneficiary designated to receive each item. If I execute a memorandum, my Trustee shall incorporate the memorandum by reference into this instrument to the extent permitted by law.

My Trustee shall distribute the items of tangible personal property listed in the memorandum as promptly as practicable after my death, together with any insurance policies covering the property and any claims under those policies, as provided in the memorandum. If I leave multiple written memoranda that conflict as to the disposition of any item of tangible personal property, the memorandum with the most recent date will control as to that item.

If the memorandum with the most recent date conflicts with a provision of this instrument as to the specific distribution of any item of tangible personal property, the provisions of this instrument will control as to those items that are in conflict.

If the law does not permit incorporation of the memorandum by reference, the memorandum will then serve as an amendment to my trust, but only to the extent this amendment solely disposes of tangible personal property. I request that my Trustee follow my wishes and distribute the items of tangible personal property listed in the memorandum according to its terms, except to the extent the memorandum conflicts with any other provision of this instrument as to the specific distribution of any item of tangible personal property.

## Section 7.11    Distribution of Remaining Tangible Personal Property

My Trustee shall distribute any remaining tangible personal property not disposed of by a written memorandum to my children in shares of substantially equal value, to be divided among my children as they agree. If any child should predecease me, my Trustee shall distribute that child's share to the child's then living descendants as those descendants agree. If any child is deceased having no then living descendants, the distribution to that child will lapse. If my Trustee determines that a child or any descendant of a deceased child is incapable of acting in his or her own best interest, my Trustee shall appoint a person to represent the child or descendant of the deceased child in the division of the property. If my children and the descendants of any deceased child or children are unable to agree upon the division of the property within six months after my death, my Trustee shall make the division according to my Trustee's discretion. My Trustee may use a lottery, rotation system, or any other method of allocation to determine the order of selection and distribution of the property. As an alternative, my Trustee may sell all or any portion of the property and distribute the net proceeds equally among my then-living children and any then-living descendants of any deceased child or children. My Trustee will not incur any liability to any party for decisions made by my Trustee with respect to the division or sale of tangible personal property. Any decision made by my Trustee will be final and binding on all beneficiaries.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 7.12  Definition of Tangible Personal Property

For purposes of this Article, the term *tangible personal property* includes household furnishings, appliances and fixtures, works of art, motor vehicles, pictures, collectibles, apparel and jewelry, books, sporting goods, and hobby paraphernalia. The term does not include any property that my Trustee, in its sole and absolute discretion, determines to be part of any business or business interest owned by me or my trust.

After my death, if my Trustee receives property to be distributed under this Article from my probate estate or in any other manner, my Trustee shall distribute the property in accordance with this Article's terms. The fact that an item of tangible personal property was not received by my trust until after my death does not diminish the validity of the gift. If property to be distributed under this Article is not part of the trust property upon my death and is not subsequently transferred to my Trustee from my probate estate or in any other manner, then the specific distribution of property made in this Article is null and void, without any legal or binding effect.

## Section 7.13  Incidental Expenses and Encumbrances

Until property distributed in accordance with this Article is delivered to the appropriate beneficiary or his or her Legal Representative, my Trustee shall pay the reasonable expenses of securing, storing, insuring, packing, transporting, and otherwise caring for the property as an administration expense. Except as otherwise provided in my trust, my Trustee shall distribute property under this Article subject to all liens, security interests, and other encumbrances on the property.

## Section 7.14  Residuary Distribution

Any property not distributed under this or prior Articles of this instrument will be distributed as provided in the following Articles.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Eight
# Trusts for My Beneficiaries

My Trustee shall administer and distribute my remaining trust property (not distributed under prior Articles of this instrument) under the terms of this Article.

## Section 8.01    Division of Remaining Trust Property

My Trustee shall divide my remaining trust property into shares as follows:

| Name | Relationship | Share |
|---|---|---|
| Frances Shelton | Daughter | 1/3 |
| Katherine Leuschner | Daughter | 1/3 |
| Brandon Shelton | Grandson | 1/18 |
| Brianna Shelton | Granddaughter | 1/18 |
| Nicholas Shelton | Grandson | 1/18 |
| Robert Lee Spanos | Grandson | 1/18 |
| Kathryn Nicole Laurie | Granddaughter | 1/18 |
| Christopher Blake Spanos | Grandson | 1/18 |

My Trustee shall administer the share of each beneficiary as provided in the Sections that follow.

## Section 8.02    Distribution of the Share for Frances Shelton

My Trustee shall administer the share set aside for Frances Shelton in trust as provided in this Section.

### (a)    Distributions of Income and Principal

My Independent Trustee may distribute to Frances Shelton as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Frances Shelton as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (b) Guidelines for Discretionary Distributions

In making discretionary distributions to Frances Shelton, I desire that Frances Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Frances Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Frances Shelton show genuine need before my Trustee makes any discretionary distribution.

### (c) Right to Withdraw Principal

Frances Shelton may withdraw any portion or all of the accumulated trust income and principal from her trust.

Frances Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Frances Shelton, free of trust. Frances Shelton's right of withdrawal is a privilege that may be exercised only by Frances Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Frances Shelton may have.

### (d) Distribution if Frances Shelton Is Deceased or upon Death

Upon Frances Shelton's death, or if Frances Shelton dies before the establishment of her trust, my Trustee shall distribute Frances Shelton's share *per stirpes* in trusts to the descendants of Frances Shelton. My Trustee shall administer the trusts under the same terms as Frances Shelton's trust. If Frances Shelton has no descendants, my Trustee shall distribute Frances Shelton's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Frances Shelton's share under the terms of Article Nine.

## Section 8.03    Distribution of the Share for Katherine Leuschner

My Trustee shall administer the share set aside for Katherine Leuschner in trust as provided in this Section.

### (a) Distributions of Income and Principal

My Independent Trustee may distribute to Katherine Leuschner as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Katherine Leuschner as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee shall add any undistributed net income to principal.

### (b)     Guidelines for Discretionary Distributions

In making discretionary distributions to Katherine Leuschner, I desire that Katherine Leuschner develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Katherine Leuschner before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Katherine Leuschner show genuine need before my Trustee makes any discretionary distribution.

### (c)     Right to Withdraw Principal

Katherine Leuschner may withdraw any portion or all of the accumulated trust income and principal from her trust.

Katherine Leuschner may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Katherine Leuschner, free of trust. Katherine Leuschner's right of withdrawal is a privilege that may be exercised only by Katherine Leuschner, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Katherine Leuschner may have.

### (d)     Distribution if Katherine Leuschner Is Deceased or upon Death

Upon Katherine Leuschner's death, or if Katherine Leuschner dies before the establishment of her trust, my Trustee shall distribute Katherine Leuschner's share *per stirpes* in trusts to the descendants of Katherine Leuschner. My Trustee shall administer the trusts under the same terms as Katherine Leuschner's trust. If Katherine Leuschner has no descendants, my Trustee shall distribute Katherine Leuschner's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Katherine Leuschner's share under the terms of Article Nine.

## Section 8.04     Distribution of the Share for Brandon Shelton

My Trustee shall administer the share set aside for Brandon Shelton in trust as provided in this Section.

### (a)     Distributions of Income and Principal

My Independent Trustee may distribute to Brandon Shelton as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee shall distribute to Brandon Shelton as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

## (b) Guidelines for Discretionary Distributions

In making discretionary distributions to Brandon Shelton, I desire that Brandon Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Brandon Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Brandon Shelton show genuine need before my Trustee makes any discretionary distribution.

## (c) Right to Withdraw Principal

Brandon Shelton may withdraw any portion or all of the accumulated trust income and principal from his trust.

Brandon Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Brandon Shelton, free of trust. Brandon Shelton's right of withdrawal is a privilege that may be exercised only by Brandon Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Brandon Shelton may have.

## (d) Distribution if Brandon Shelton Is Deceased or upon Death

Upon Brandon Shelton's death, or if Brandon Shelton dies before the establishment of his trust, my Trustee shall distribute Brandon Shelton's share *per stirpes* in trusts to the descendants of Brandon Shelton. My Trustee shall administer the trusts under the same terms as Brandon Shelton's trust. If Brandon Shelton has no descendants, my Trustee shall distribute Brandon Shelton's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Brandon Shelton's share under the terms of Article Nine.

## Section 8.05     Distribution of the Share for Brianna Shelton

My Trustee shall administer the share set aside for Brianna Shelton in trust as provided in this Section.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (a) Distributions of Income and Principal

My Independent Trustee may distribute to Brianna Shelton as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Brianna Shelton as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b) Guidelines for Discretionary Distributions

In making discretionary distributions to Brianna Shelton, I desire that Brianna Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Brianna Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Brianna Shelton show genuine need before my Trustee makes any discretionary distribution.

### (c) Right to Withdraw Principal

Brianna Shelton may withdraw any portion or all of the accumulated trust income and principal from her trust.

Brianna Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Brianna Shelton, free of trust. Brianna Shelton's right of withdrawal is a privilege that may be exercised only by Brianna Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Brianna Shelton may have.

### (d) Distribution if Brianna Shelton Is Deceased or upon Death

Upon Brianna Shelton's death, or if Brianna Shelton dies before the establishment of her trust, my Trustee shall distribute Brianna Shelton's share *per stirpes* in trusts to the descendants of Brianna Shelton. My Trustee shall administer the trusts under the same terms as Brianna Shelton's trust. If Brianna Shelton has no descendants, my Trustee shall distribute Brianna Shelton's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Brianna Shelton's share under the terms of Article Nine.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### Section 8.06    Distribution of the Share for Nicholas Shelton

My Trustee shall administer the share set aside for Nicholas Shelton in trust as provided in this Section.

#### (a)    Distributions of Income and Principal

My Independent Trustee may distribute to Nicholas Shelton as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Nicholas Shelton as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

#### (b)    Guidelines for Discretionary Distributions

In making discretionary distributions to Nicholas Shelton, I desire that Nicholas Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Nicholas Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Nicholas Shelton show genuine need before my Trustee makes any discretionary distribution.

#### (c)    Right to Withdraw Principal

Nicholas Shelton may withdraw any portion or all of the accumulated trust income and principal from his trust.

Nicholas Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Nicholas Shelton, free of trust. Nicholas Shelton's right of withdrawal is a privilege that may be exercised only by Nicholas Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Nicholas Shelton may have.

#### (d)    Distribution if Nicholas Shelton Is Deceased or upon Death

Upon Nicholas Shelton's death, or if Nicholas Shelton dies before the establishment of his trust, my Trustee shall distribute Nicholas Shelton's share *per stirpes* in trusts to the descendants of Nicholas Shelton. My Trustee shall administer the trusts under the same terms as Nicholas Shelton's trust. If Nicholas Shelton has no descendants, my Trustee shall distribute Nicholas Shelton's share *pro rata* to the other beneficiaries named

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

in this Article. If no other named beneficiaries exist, my Trustee shall distribute Nicholas Shelton's share under the terms of Article Nine.

## Section 8.07    Distribution of the Share for Robert Lee Spanos

My Trustee shall administer the share set aside for Robert Lee Spanos in trust as provided in this Section.

### (a)    Distributions of Income and Principal

My Independent Trustee may distribute to Robert Lee Spanos as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Robert Lee Spanos as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b)    Guidelines for Discretionary Distributions

In making discretionary distributions to Robert Lee Spanos, I desire that Robert Lee Spanos develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Robert Lee Spanos before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Robert Lee Spanos show genuine need before my Trustee makes any discretionary distribution.

### (c)    Right to Withdraw Principal

Robert Lee Spanos may withdraw any portion or all of the accumulated trust income and principal from his trust.

Robert Lee Spanos may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Robert Lee Spanos, free of trust. Robert Lee Spanos's right of withdrawal is a privilege that may be exercised only by Robert Lee Spanos, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Robert Lee Spanos may have.

### (d)    Distribution if Robert Lee Spanos Is Deceased or upon Death

Upon Robert Lee Spanos's death, or if Robert Lee Spanos dies before the establishment of his trust, my Trustee shall distribute Robert Lee Spanos's share *per stirpes* in trusts to the descendants of Robert Lee Spanos. My

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee shall administer the trusts under the same terms as Robert Lee Spanos's trust. If Robert Lee Spanos has no descendants, my Trustee shall distribute Robert Lee Spanos's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Robert Lee Spanos's share under the terms of Article Nine.

## Section 8.08    Distribution of the Share for Kathryn Nicole Laurie

My Trustee shall administer the share set aside for Kathryn Nicole Laurie in trust as provided in this Section.

### (a)    Distributions of Income and Principal

My Independent Trustee may distribute to Kathryn Nicole Laurie as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Kathryn Nicole Laurie as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b)    Guidelines for Discretionary Distributions

In making discretionary distributions to Kathryn Nicole Laurie, I desire that Kathryn Nicole Laurie develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Kathryn Nicole Laurie before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Kathryn Nicole Laurie show genuine need before my Trustee makes any discretionary distribution.

### (c)    Right to Withdraw Principal

Kathryn Nicole Laurie may withdraw any portion or all of the accumulated trust income and principal from her trust.

Kathryn Nicole Laurie may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Kathryn Nicole Laurie, free of trust. Kathryn Nicole Laurie's right of withdrawal is a privilege that may be exercised only by Kathryn Nicole Laurie, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Kathryn Nicole Laurie may have.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (d) Distribution if Kathryn Nicole Laurie Is Deceased or upon Death

Upon Kathryn Nicole Laurie's death, or if Kathryn Nicole Laurie dies before the establishment of her trust, my Trustee shall distribute Kathryn Nicole Laurie's share *per stirpes* in trusts to the descendants of Kathryn Nicole Laurie. My Trustee shall administer the trusts under the same terms as Kathryn Nicole Laurie's trust. If Kathryn Nicole Laurie has no descendants, my Trustee shall distribute Kathryn Nicole Laurie's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Kathryn Nicole Laurie's share under the terms of Article Nine.

## Section 8.09    Distribution of the Share for Christopher Blake Spanos

My Trustee shall administer the share set aside for Christopher Blake Spanos in trust as provided in this Section.

### (a) Distributions of Income and Principal

My Independent Trustee may distribute to Christopher Blake Spanos as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Christopher Blake Spanos as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b) Guidelines for Discretionary Distributions

In making discretionary distributions to Christopher Blake Spanos, I desire that Christopher Blake Spanos develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Christopher Blake Spanos before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Christopher Blake Spanos show genuine need before my Trustee makes any discretionary distribution.

### (c) Right to Withdraw Principal

Christopher Blake Spanos may withdraw any portion or all of the accumulated trust income and principal from his trust.

Christopher Blake Spanos may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Christopher Blake Spanos, free of trust. Christopher Blake Spanos's right of withdrawal is a privilege that may be exercised only by

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Christopher Blake Spanos, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Christopher Blake Spanos may have.

### (d) Distribution if Christopher Blake Spanos Is Deceased or upon Death

Upon Christopher Blake Spanos's death, or if Christopher Blake Spanos dies before the establishment of his trust, my Trustee shall distribute Christopher Blake Spanos's share *per stirpes* in trusts to the descendants of Christopher Blake Spanos. My Trustee shall administer the trusts under the same terms as Christopher Blake Spanos's trust. If Christopher Blake Spanos has no descendants, my Trustee shall distribute Christopher Blake Spanos's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Christopher Blake Spanos's share under the terms of Article Nine.

### Section 8.10 Provisions Regarding Incapacitated Beneficiaries and Special Needs

Any distributions to beneficiaries who are incapacitated or disabled due to addictive situations or criminal behavior as defined in my trust and to any beneficiaries who may be beneficiaries of a Special Needs Trust as defined in my trust shall only be made as provided for in the provisions covering incapacitated beneficiaries and special needs trust beneficiaries respectively.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Nine
## Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of my trust estate, this portion of my trust estate must be distributed to those persons who would inherit it had I then died intestate owning the property, as determined and in the proportions provided by the laws of Texas then in effect.

# Article Ten
## Distributions to Underage and Incapacitated Beneficiaries

### Section 10.01 Supplemental Needs Trust

If under any provision of this trust my Trustee is directed to distribute to or for the benefit of any beneficiary when that person is receiving or applying for needs-based government benefits, my Trustee shall retain and administer the trust property as follows:

#### (a) Not a Conduit Trust

The distributions from Retirement Plans (*conduit trust provisions*) set forth in Section 11.01 do not apply to the provisions of Section 10.01.

#### (b) Distributions for Supplemental Needs

In its sole, absolute, and unreviewable discretion, my Trustee may distribute discretionary amounts of net income and principal for supplemental needs of the beneficiary not otherwise provided by governmental financial assistance and benefits, or by the providers of services.

*Supplemental needs* refers to the basic requirements for maintaining the good health, safety, and welfare when, in the discretion of my Trustee, these basic requirements are not being provided by any public agency, office, or department of any state or of the United States.

*Supplemental needs* will also include medical and dental expenses; annual independent checkups; clothing and equipment; programs of training, education, treatment, and rehabilitation; private residential care; transportation, including vehicle purchases; maintenance; insurance; and essential dietary needs. *Supplemental needs* may include spending money; additional food; clothing; electronic equipment such as radio, recording and playback, television and computer equipment; camping; vacations; athletic contests; movies; trips; and money to purchase appropriate gifts for relatives and friends.

My Trustee will have no obligation to expend trust assets for these needs. But if my Trustee, in its sole, absolute and unreviewable discretion, decides to expend trust assets, under no circumstances should any amounts be paid to or reimbursed to the federal government, any state, or any governmental agency for any purpose, including for the care, support, and maintenance of the beneficiary.

#### (c) Objective to Promote Independence of the Beneficiary

While actions are in my Trustee's sole, absolute, and unreviewable discretion, all parties to this trust should be mindful that my wish is that the beneficiary live as independently, productively, and happily as possible.

Dorothy Spanos Living Trust

10-1

## (d) Trust Assets Not to be Considered Available Resource to the Beneficiary

The purpose of the provisions of this Section 10.01 is to supplement any benefits received, or for which the beneficiary may be eligible, from various governmental assistance programs, and not to supplant any benefits of this kind. All actions of my Trustee shall be directed toward carrying out this intent, and my Trustee's discretion granted under this instrument to carry out this intent is sole, absolute, and unreviewable.

For purposes of determining the beneficiary's eligibility for any of these benefits, no part of the trust estate's principal or undistributed income will be considered available to the beneficiary for public benefit purposes. The beneficiary must not be considered to have access to the trust's principal or income, or to have ownership, right, authority, or power to convert any asset into cash for his or her own use.

My Trustee shall hold, administer, and distribute all property allocated to this trust for the exclusive benefit of the beneficiary during his or her lifetime. All distributions from this trust share are in the sole, absolute, and unreviewable discretion of my Trustee, and the beneficiary is legally restricted from demanding trust assets for his or her support and maintenance.

In the event my Trustee is requested to release principal or income of the trust to or on behalf of the beneficiary to pay for equipment, medication, or services that any government agency is authorized to provide, or to petition a court or any other administrative agency for the release of trust principal or income for this purpose, my Trustee is authorized to deny this request and to take whatever administrative or judicial steps are necessary to continue the beneficiary's eligibility for benefits. This includes obtaining legal advice about the beneficiary's specific entitlement to public benefits and obtaining instructions from a court of competent jurisdiction ruling that neither the trust corpus nor the trust income is available to the beneficiary for eligibility purposes. Any expenses incurred by my Trustee in this regard, including reasonable attorney fees, will be a proper charge to the trust estate.

## (e) Distribution Guidelines

My Trustee shall be responsible for determining what discretionary distributions will be made from this trust. My Trustee may distribute discretionary amounts of income and principal to or for the benefit of the beneficiary for those supplemental needs not otherwise provided by governmental financial assistance and benefits, or by the providers of services. Any undistributed income will be added to principal. In making distributions, my Trustee must:

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

consider any other known income or resources of the beneficiary that are reasonably available;

consider all entitlement benefits from any government agency, including Social Security disability payments, Medicare, Medicaid (or any state Medicaid program equivalent), Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other supplemental purpose benefits for which the beneficiary is eligible;

consider resource and income limitations of any assistance program;

make expenditures so that the beneficiary's standard of living will be comfortable and enjoyable;

not be obligated or compelled to make specific payments;

not pay or reimburse any amounts to any governmental agency or department, unless proper demand is made by this governmental agency or reimbursement is required by the state; and

not be liable for any loss of benefits.

## (f)　No Seeking of Order to Distribute

For purposes of determining the beneficiary's state Medicaid program equivalent eligibility, no part of the trust estate's principal or undistributed income may be considered available to the beneficiary. My Trustee shall deny any request by the beneficiary to:

release trust principal or income to or on behalf of the beneficiary to pay for equipment, medication, or services that the state Medicaid program equivalent would provide if the trust did not exist; or

petition a court or any other administrative agency for the release of trust principal or income for this purpose.

In its sole, absolute, and unreviewable discretion, my Trustee may take necessary administrative or legal steps to protect the beneficiary's state Medicaid program equivalent eligibility. This includes obtaining a ruling from a court of competent jurisdiction that the trust principal is not available to the beneficiary for purposes of determining state Medicaid program equivalent eligibility. Expenses for this action, including reasonable attorney fees, will be a proper charge to the trust estate.

## (g)　Indemnification of Trustee When Acting in Good Faith

My Trustee will be indemnified from the trust property for any loss or reduction of public benefits sustained by the beneficiary as a result of my

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee exercising the authority granted to my Trustee under this Section in good faith.

## (h) Termination and Distribution of the Supplemental Needs Trust

If my Trustee, in its sole, absolute, and unreviewable discretion, determines that the beneficiary is no longer dependent on others and is able to independently support himself or herself, my Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this Section 10.01 had not been effective.

If the other provisions of this trust do not provide for the remaining property's distribution or retention, then my Trustee shall distribute the remaining property to the beneficiary outright and free of trust.

*Independently support* is satisfied when the beneficiary has been gainfully employed for 33 months of the 36-month period immediately preceding the decision to terminate the trust share.

The terms *gainful employment* and *gainfully employed* mean the full-time employment that produces sufficient net income to enable the beneficiary to contribute not less than 100% of the funds (exclusive of other revenue sources) that are necessary to provide for the beneficiary's independent care, support, maintenance, and education. In its sole, absolute, and unreviewable discretion, my Trustee shall determine whether or not the beneficiary has satisfied the condition of gainful employment.

## (i) Distribution upon the Death of the Beneficiary

Upon the beneficiary's death, my Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this Section 10.01 had not been effective. If the other provisions of this trust provide for the beneficiary's share to be held in trust, then those provisions will be interpreted as though the beneficiary died after the establishment of that trust.

If the other provisions of this trust do not provide for the distribution or retention of the remaining property, then the beneficiary will have the testamentary limited power to appoint all or any portion of the principal and undistributed income remaining in the beneficiary's trust at his or her death among one or more persons or entities. But the beneficiary may not exercise this limited power of appointment to appoint to himself or herself, his or her estate, his or her creditors or the creditors of his or her estate.

I intend to create a limited power of appointment and not a general power of appointment as defined in Internal Revenue Code Section 2041.

If any part of the beneficiary's trust is not effectively appointed, my Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

descendants, my Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *per stirpes* to my descendants.

If I have no then-living descendants, my Trustee shall distribute the balance of the trust property as provided in Article Nine.

## Section 10.02   Underage and Incapacitated Beneficiaries

If my Trustee is authorized or directed under any provision of this trust to distribute net income or principal to a person who has not yet reached 21 years of age or who is incapacitated as defined in Section 14.07(g), my Trustee may make the distribution by any one or more of the methods described in Section 10.03. Alternatively, my Trustee may retain the trust property in a separate trust to be administered by my Trustee under Section 10.04.

I request that before making a distribution to a beneficiary, my Trustee consider, to the extent reasonable, the ability the beneficiary has demonstrated in managing prior distributions of trust property.

## Section 10.03   Methods of Distribution

My Trustee may distribute trust property for any beneficiary's benefit, subject to the provisions of Section 10.02 in any one or more of the following methods:

My Trustee may distribute trust property directly to the beneficiary.

My Trustee may distribute trust property to the beneficiary's guardian, conservator, parent, other family member, or any person who has assumed the responsibility of caring for the beneficiary.

My Trustee may distribute trust property to any person or entity, including my Trustee, as custodian for the beneficiary under the Uniform Transfers to Minors Act or similar statute.

My Trustee may distribute trust property to other persons and entities for the beneficiary's use and benefit.

My Trustee may distribute trust property to an agent or attorney in fact authorized to act for the beneficiary under a valid durable power of attorney executed by the beneficiary before becoming incapacitated.

## Section 10.04   Retention in Trust

My Trustee may retain and administer trust property in a separate trust for any beneficiary's benefit, subject to the provisions of Section 10.02 as follows.

### (a)      Distribution of Net Income and Principal

My Independent Trustee may distribute to the beneficiary as much of the net income and principal of any trust created under this Section as my

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Independent Trustee may determine advisable for any purpose. If there is no then-serving Independent Trustee, my Trustee shall distribute to the beneficiary as much of the net income and principal of the trust created under this Section as my Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance or support. Any undistributed net income will be accumulated and added to principal.

### (b)     Right of Withdrawal

When the beneficiary whose trust is created under this Section either reaches 21 years of age or is no longer incapacitated, the beneficiary may withdraw all or any portion of the accumulated net income and principal from the trust.

### (c)     Distribution upon the Death of the Beneficiary

Subject to the terms of the next paragraph, the beneficiary whose trust is created under this Section may appoint all or any portion of the principal and undistributed net income remaining in the beneficiary's trust at the beneficiary's death among one or more persons or entities, and the creditors of the beneficiary's estate. The beneficiary has the exclusive right to exercise this general power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, the beneficiary's creditors, or creditors of the beneficiary's estate from the *limited share* of the beneficiary's trust. For purposes of this power of appointment, the *limited share* of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero or that without the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share will be the beneficiary's entire trust.

If any part of the beneficiary's trust is not effectively appointed, my Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living descendants, my Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *per stirpes* to my descendants.

If I have no then-living descendants, my Trustee shall distribute the balance of the trust property as provided in Article Nine.

## Section 10.05     Special Instructions for Disability Due to Addictive Situations or Criminal Behavior

Prior to making an initial distribution of income or principal authorized under this Article to any beneficiary, my Trustee shall conduct a diligent and reasonable investigation to determine

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

that for the thirty-six (36) months immediately preceding any proposed distribution, the requesting beneficiary has not been incarcerated for any reason, has not been arrested for any felony or drug-related violation, infraction, misdemeanor or felony (whether or not such arrest resulted in conviction or incarceration), and has not been disabled due to a drug, alcohol, gambling, eating, chemical or other dependency disorder. As a condition for subsequent distributions to a beneficiary, my Trustee may, in its sole discretion, conduct additional investigations if my Trustee has reason to believe that the requesting beneficiary has become involved in any of the above situations.

In helping to determine whether or not a beneficiary has been arrested or incarcerated, has a substance abuse or some other dependency disorder, my Trustee may find it helpful to consult with the beneficiary's employer, physician, family members and others who have a personal relationship with the beneficiary. If the beneficiary wishes to receive a trust distribution, he or she must consent to any of these contacts. If the beneficiary refuses to cooperate, then the distribution guidelines shall be deemed to have not been met and the distribution will not be made.

Prior to making any distribution authorized under this Section, or as a condition for further distributions, my Trustee shall require that any beneficiary disabled due to a drug, alcohol, gambling, eating, chemical or other dependency disorder, participate in and successfully complete a rehabilitation program aimed at combating the problem involved.

My Trustee, in its sole and absolute discretion, may determine the nature and extent of the rehabilitative program, including follow up requirements. I direct that my Trustee consult with counselors from local rehabilitative programs or similar institutions, in order to best design an individualized program for the affected beneficiary.

I specifically authorize and direct my Trustee to pay the expenses of rehabilitation for the affected beneficiary from that beneficiary's trust property.

If a beneficiary is disabled under this Section, my Trustee shall withhold distributions (other than those distributions for medical care and reasonable living expenses) to that beneficiary for one year after the beneficiary has successfully completed the requisite rehabilitation program. During that year, my Trustee shall require the beneficiary to submit to random drug testing (using currently accepted methods), up to a maximum of four times during the year, and, in my Trustee's sole discretion, up to four times per year every year subsequent, as a condition for further distributions. All such tests shall be performed by a certified laboratory specializing in these procedures. A positive result may be challenged and shall be confirmed by an alternate testing facility using a different testing method. No distributions shall be made (other than those necessary for medical care and living expenses) if any test registers positive for alcohol or other addictive drugs, chemicals or controlled substances. A refusal or failure to provide a sample for testing shall be deemed a positive test and no distributions shall be made.

### Section 10.06   Application of Article

Any decision made by my Trustee under this Article is final, controlling, and binding upon all beneficiaries subject to the provisions of this Article.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

The provisions of this Article do not apply to distributions to me.

Except as provided in Section 10.01, the provisions of this Article do not apply to distributions that are required to be made to a beneficiary under the provisions of Section 11.01.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Eleven
# Retirement Plans and Life Insurance Policies

The provisions of this Article apply to qualified retirement plans and insurance policies owned by or made payable to my trust.

## Section 11.01 Retirement Plans

Notwithstanding any contrary provision of this trust, the provisions of this Section apply to qualified retirement plans.

### (a) Rights of My Trustee

Subject to the provisions below pertaining to distributions from qualified retirement plans, my Trustee may exercise the right to determine the manner and timing of qualified retirement plan benefit payments permitted under these plans and consistent with the federal income tax rules regarding required minimum distributions under Internal Revenue Code Section 401(a)(9).

My Trustee may make a qualified disclaimer of any qualified retirement benefits or non-qualified annuity benefits payable to my trust.

My Trustee may not be held liable to any beneficiary for any decision regarding the death benefit election or the disclaimer of any qualified retirement benefits payable to my trust.

My Trustee may not change or designate beneficiaries under any retirement plan. Any power extended to my Trustee under the terms of a retirement plan that gives or appears to give my Trustee the power to change the identity or rights of any beneficiaries under the plan is void *ab initio*.

### (b) Distributions from Qualified Retirement Plans to Trusts

Unless specifically stated otherwise beginning with the year of my death, if any trust created under this trust, including any administrative trust created under Article Six, becomes the beneficiary of death benefits under any qualified retirement plan, my Trustee shall annually withdraw from the trust's share of the plan the minimum distribution required under Internal Revenue Code Section 401(a)(9). My Trustee may withdraw additional amounts from the trust's share of the plan as my Trustee deems advisable, but only if the dispositive terms of the trust authorize my Trustee to immediately distribute the withdrawn amount as provided below. My Trustee shall immediately distribute all amounts withdrawn to:

> to my descendants, *per stirpes*, who are beneficiaries of this trust; and

Evans & Davis, PLLC, 8117 Preston Road, Suite 300, Dallas, Texas 75225 | (214) 368-2335

if no descendant of mine is a trust beneficiary, then to the trust's Income Beneficiaries in equal shares.

Amounts required to be withdrawn and distributed under this Section will reduce mandatory distribution amounts under other provisions of this trust that otherwise require distribution of all the trust's income.

This Section's purpose is to ensure that the life expectancy of the trust beneficiaries may be used to calculate the minimum distributions required by the Internal Revenue Code. This Section is to be interpreted consistent with my intent, despite any direction to the contrary in this trust.

## (c) Minimum Required Distribution

In administering my trust, the minimum required distribution for each qualified retirement plan for any year is the greater of:

> the value of the qualified retirement plan determined as of the preceding year end, divided by the applicable distribution period; and

> the amount that my Trustee is required to withdraw under the laws then applicable to the trust to avoid penalty.

If I die before my required beginning date for a qualified retirement plan, the applicable distribution period means the beneficiary's life expectancy. If I die on or after my required beginning date for a qualified retirement plan, the applicable distribution period means the beneficiary's life expectancy, or my remaining life expectancy, if longer.

Notwithstanding the foregoing, if I die on or after my required beginning date for a qualified retirement plan, the minimum required distribution for the year of my death means:

> the amount that was required to be distributed to me with respect to the qualified retirement plan during the year; minus

> amounts actually distributed to me with respect to the qualified retirement plan during the year.

*Life expectancy, required beginning date*, and other similar terms used in this Subsection are to be determined under Internal Revenue Code Section 401(a)(9).

## Section 11.02 Life Insurance Policies

The following provisions apply to life insurance policies owned by or made payable to my trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (a) Provisions during My Life

During my life, I reserve all of the rights, powers, privileges, and options, with respect to any insurance policy, annuity, or any other third-party beneficiary contract owned by or made payable to my trust. This includes the rights to designate and change beneficiaries, to borrow money, to surrender the policy, to receive any payments as owner, and to make any available elections.

My Trustee will have no duty to exercise or not exercise any rights, powers, privileges, or options with respect to any insurance policy, annuity contract, or other third-party beneficiary contract. My Trustee will have no obligation to pay premiums or other contractual amounts that may be payable under any policy.

### (b) Provisions after My Death

After my death, my Trustee may make all appropriate elections with respect to these policies and may collect all sums made payable to my trust or my Trustee under all these policies or contracts.

My Trustee may exercise any settlement options or other options or rights that may be available under the terms of any policy or contract. My Trustee may not be held liable to any beneficiary on account of any election my Trustee made with respect to any policy or contract.

## Section 11.03 Limitation on Liability of Payor

Persons or entities dealing in good faith with my Trustee are not required to see to the proper application of proceeds delivered to my Trustee, or to inquire into any provision of this trust.

A receipt signed by my Trustee for any proceeds or benefits paid will be a sufficient discharge to the person or entity making the payment.

## Section 11.04 Collection Efforts

My Trustee shall make reasonable efforts to collect all life insurance policy proceeds and qualified retirement benefits payable to my trust.

My Trustee may commence legal or administrative proceedings to collect any life insurance policy proceeds or qualified retirement benefits to which the trust is entitled. My Trustee need not commence any proceedings until my Trustee is satisfactorily indemnified for any expenses and liabilities my Trustee may incur in connection with the proceeding.

My Trustee may settle any claims with respect to the collection of any life insurance proceeds or qualified retirement benefits to which my trust may be entitled. A settlement made by my Trustee will be binding on all beneficiaries.

## Section 11.05   No Obligation to Purchase or Maintain Benefits

Nothing in this trust is to be interpreted as imposing any obligation on me or on my Trustee to purchase, invest, or maintain any qualified retirement plan or life insurance policy.

# Article Twelve
# Trust Administration

## Section 12.01　Distributions to Beneficiaries

Whenever this trust authorizes or directs my Trustee to make a net income or principal distribution to a beneficiary, my Trustee may apply any property that otherwise could be distributed directly to the beneficiary for his or her benefit. My Trustee is not required to inquire into the beneficiary's ultimate disposition of the distributed property unless specifically directed otherwise by this trust.

My Trustee may make cash distributions, in-kind distributions, or distributions partly in each, in proportions and at values determined by my Trustee. My Trustee may allocate undivided interests in specific assets to a beneficiary or trust in any proportion or manner that my Trustee determines, even though the property allocated to one beneficiary may be different from that allocated to another beneficiary.

My Trustee may make these determinations without regard to the income tax attributes of the property and without the consent of any beneficiary.

## Section 12.02　Trust Decanting; Power to Appoint in Further Trust

My Trust Advisor may appoint the property subject to my Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Advisor. Any trust established by the Trust Advisor and funded by the exercise of the power granted under this Section must meet these requirements:

> the trust must not reduce any fixed income, annuity, or unitrust right provided by this trust instrument to any beneficiary;

> the trust must provide for one or more of the beneficiaries of a trust created under this instrument; and

> the interests of remainder beneficiaries of the trust created under this instrument must not be accelerated under the terms of the new trust.

I request the Trust Advisor consider including a provision in the new trust that permits my Trustee to distribute as much of the trust principal to the beneficiary of the trust as an Independent Trustee advises so that the beneficiary's estate can utilize the basis increase allowed under Internal Revenue Code Section 1014 after the beneficiary's death without causing an increase in the federal estate tax.

A Trust Advisor may not use the powers granted under this Section to extend the term of the new trust beyond the period of perpetuities provided under the governing law of this instrument.

Any trust created under this provision must not contain any provision that, if applicable, would cause the trust to fail to qualify for the marital deduction or charitable deduction,

Evans & Davis, PLLC, 8117 Preston Road, Suite 300, Dallas, Texas 75225 | (214) 368-2335

fail to qualify any gift to the trust for any gift, estate, or generation-skipping transfer annual exclusion, or disqualify the trust as a qualified subchapter S corporation shareholder.

If any beneficiary holds a presently exercisable right to withdraw property from this trust, that right may not be defeated by the exercise of the Trust Advisor's powers granted under this Section.

### Section 12.03    Beneficiary's Status

Until my Trustee receives notice of the incapacity, birth, marriage, death, or other event upon which a beneficiary's right to receive payments may depend, my Trustee will not be held liable for acting or not acting with respect to the event, or for disbursements made in good faith to persons whose interest may have been affected by the event. Unless otherwise provided in this trust, a parent or Legal Representative may act on behalf of a minor or incapacitated beneficiary.

My Trustee may rely on any information provided by a beneficiary with respect to the beneficiary's assets and income. My Trustee will have no independent duty to investigate the status of any beneficiary and will not incur any liability for not doing so.

### Section 12.04    Mandatory Payments of a Pecuniary Amount

If any person holds the right to receive a pecuniary amount from my trust upon my death, my Trustee must either:

> satisfy the entire pecuniary amount or irrevocably set aside property to satisfy the entire pecuniary amount within 15 months of my death; or
>
> pay appropriate interest, as defined in Treasury Regulations Section 26.2642-2(b)(4)(ii)(B), to the person.

If my Trustee satisfies the pecuniary amount with an in-kind distribution, my Trustee will allocate assets to satisfy the pecuniary amount in a manner that fairly reflects net appreciation or depreciation in the value of the available assets, as measured from the valuation date to the payment date.

### Section 12.05    No Court Proceedings

My Trustee shall administer this trust with efficiency, with attention to the provisions of this trust, and with freedom from judicial intervention. If my Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceeding to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination is not to be construed as subjecting this trust to the court's continuing jurisdiction.

### Section 12.06    No Bond

My Trustee is not required to furnish any bond for the faithful performance of the Trustee's duties unless required by a court of competent jurisdiction, and only if the court finds that

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

a bond is needed to protect the beneficiaries' interests. No surety will be required on any bond required by any law or court rule, unless the court specifies its necessity.

## Section 12.07   Exoneration of My Trustee

No successor Trustee is obligated to examine the accounts, records, or actions of any previous Trustee or the Executor of my estate. No successor Trustee may be held responsible for any act, omission, or forbearance by any previous Trustee or of the Executor of my estate. Absent clear and convincing evidence of willful bad faith on the part of my Trustee, my Trustee is exonerated from any liability for the acts, omissions, or forbearances of any Trust Advisor and from any liability for my Trustee's own acts, omissions, or forbearances directed by the Trust Advisor.

Any Trustee may obtain written agreements from the beneficiaries or their Legal Representatives releasing and indemnifying the Trustee from any liability that may have arisen from the Trustee's acts, omissions, or forbearances. If acquired from all the trust's living beneficiaries or their Legal Representatives, any agreement is conclusive and binding on all parties, born or unborn, who may have or who may later acquire an interest in the trust.

My Trustee may require a refunding agreement before making any distribution or allocation of trust income or principal, and may withhold distribution or allocation pending determination or release of a tax or other lien. This refunding agreement provision will not apply to any distribution that qualifies for the federal estate tax charitable deduction.

## Section 12.08   Limitations on Trustee Liability

I direct that any individual or corporate fiduciary that serves as my Trustee will not incur any liability for any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Advisor, except for cases of willful misconduct or gross negligence on the Trustee's part.

Any individual or corporate fiduciary currently serving as a Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee as a result of his or her good faith reliance on any information, consent, or directions received from a Trust Advisor, even if my Trustee's defense costs would exhaust the trust's value. Any individual or corporate fiduciary that formerly served as a Trustee is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and litigation costs reasonably incurred as a result of the Trustee's good faith reliance on information, consent, or directions received from a Trust Advisor.

Except for cases of willful misconduct or gross negligence on the Trustee's part, any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Advisor will be considered to have been made in good faith for this Section's purposes.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 12.09　Trustee Compensation

An individual serving as Trustee is entitled to fair and reasonable compensation for the services provided as a fiduciary. A corporate fiduciary serving as Trustee will be compensated by agreement between an individual serving as Trustee and the corporate fiduciary. In the absence of an individual Trustee or an agreement, a corporate fiduciary will be compensated in accordance with the corporate fiduciary's current published fee schedule.

A Trustee may charge additional fees for services provided that are beyond the ordinary scope of duties, such as fees for legal services, tax return preparation, and corporate finance or investment banking services.

In addition to receiving compensation, a Trustee may be reimbursed for reasonable costs and expenses incurred in carrying out the Trustee's duties under this trust.

## Section 12.10　Employment of Professionals

My Trustee may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of my Trustee's duties. My Trustee may act on the recommendations of the persons or entities employed, with or without independent investigation.

My Trustee may reasonably compensate an individual or entity employed to assist or advise my Trustee, regardless of any other relationship existing between the individual or entity and my Trustee.

My Trustee may compensate providers of contracted services at the usual rate out of the trust's income or principal, as my Trustee deems advisable. My Trustee may compensate an individual or entity employed to assist or advise my Trustee without diminishing the compensation the Trustee is entitled to under this trust. A Trustee who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise my Trustee may still receive the Trustee's share of the compensation paid to the entity.

## Section 12.11　Exercise of Testamentary Power of Appointment

A testamentary power of appointment granted under this trust may be exercised by a will, living trust or other written instrument specifically referring to the power of appointment. The holder of a testamentary power of appointment may exercise the power to appoint property among the permissible appointees in equal or unequal proportions, and may designate the terms and conditions, whether outright or in trust. The holder of a testamentary power of appointment may grant further powers of appointment to any person to whom principal may be appointed, including a presently exercisable limited or general power of appointment.

My Trustee may conclusively presume that any power of appointment granted to any beneficiary of a trust created under this trust has not been exercised by the beneficiary if

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

my Trustee has no knowledge of the existence of a will, living trust or other written instrument exercising the power within three months after the beneficiary's death.

## Section 12.12   Determination of Principal and Income

The rights among beneficiaries in matters concerning principal and income are to be determined in accordance with the Uniform Principal and Income Act, Texas Property Code Chapter 116 . If the Uniform Principal and Income Act, Texas Property Code Chapter 116 does not contain a provision concerning a particular item, my Trustee shall determine what will be credited, charged, and apportioned between principal and income in a fair, equitable, and practical manner with respect to that item.

## Section 12.13   Trust Accounting

Except to the extent required by law, my Trustee is not required to file accountings in any jurisdiction. After my death, my Trustee must provide an annual accounting to the Income Beneficiaries of any trust created under this trust unless waived by the Income Beneficiaries.

The annual accounting must include the receipts, expenditures, and distributions of income and principal and the assets on hand for the accounting period. A copy of the federal fiduciary tax return filed for a trust during the accounting will satisfy this reporting requirement.

In the absence of fraud or obvious error, assent by all Income Beneficiaries to a Trustee's accounting will make the matters disclosed in the accounting binding and conclusive upon all persons, including those living on this date and those born in the future who have or will have a vested or contingent interest in the trust property. In the case of an Income Beneficiary who is a minor or incapacitated, the beneficiary's natural guardian or Legal Representative may give the assent required under this Section.

A beneficiary may object to an accounting provided by my Trustee only by giving written notice to my Trustee within 60 days after my Trustee provides the accounting. Any beneficiary who does not submit a timely written objection is considered to assent to the accounting.

My Trustee must make the trust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection. My Trustee is not required to furnish any information regarding my trust to anyone other than a beneficiary. My Trustee may exclude any information my Trustee determines is not directly applicable to the beneficiary receiving the information. This in no way limits the right of the Trust Advisor to compel an accounting.

In all events, a beneficiary's Legal Representative may receive any notices and take any action on behalf of the beneficiary as to an accounting. If any beneficiary's Legal Representative fails to object to any accounting in writing within 60 days after my Trustee provides the accounting, the beneficiary's Legal Representative will be considered to assent to the accounting.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 12.14 Action of Trustees and Delegation of Trustee Authority

When I am not serving as a Trustee, if two Trustees are eligible to act with respect to a given matter, they must agree unanimously for action to be taken unless the express terms of the Trustees' appointment provide otherwise. If more than two Trustees are eligible to act with respect to a given matter, the Trustees must agree by majority for action to be taken.

A nonconcurring Trustee may dissent or abstain from a decision of the majority. A Trustee will be absolved from personal liability by registering the dissent or abstention in the trust records. After doing so, the dissenting Trustee must then act with my other Trustees in any way necessary or appropriate to effect the majority decision.

Notwithstanding the limitations set forth in this Section, unless a Trustee elects otherwise in a written instrument delivered to the other Trustees, whenever I am not serving as a Trustee, if two or more Trustees are then serving, any one Trustee may sign any checks, agreements, or other documents on behalf of the trust with the same effect as if all Trustees had signed. Persons dealing with the signing Trustee in good faith may rely upon the signing Trustee's authority to act on behalf of the trust without inquiry as to the other Trustees' agreement.

Subject to the limitations set forth in Section 13.25, any Trustee may, by written instrument, delegate to any other Trustee the right to exercise any power, including a discretionary power, granted to my Trustee in this trust. During the time a delegation under this Section is in effect, the Trustee to whom the delegation is made may exercise the power to the same extent as if the delegating Trustee has personally joined in the exercise of the power. The delegating Trustee may revoke the delegation at any time by giving written notice to the Trustee to whom the power was delegated.

## Section 12.15 Trustee May Disclaim or Release Any Power

Notwithstanding any provision of this trust to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period of time, by a written instrument. The Trustee may relinquish a power personally or may relinquish the power for all subsequent Trustees.

## Section 12.16 Trustee May Execute a Power of Attorney

My Trustee may appoint any individual or entity to serve as my Trustee's agent under a power of attorney to transact any business on behalf of my trust or any other trust created under this trust.

## Section 12.17 Additions to Separate Trusts

If upon my death, or upon the termination of any trust created under this trust, a final distribution is to be made to a person who is the Primary Beneficiary of another trust established under this trust, and there is no specific indication whether the distribution is to be made in trust or outright, my Trustee shall make the distribution to the second trust instead of distributing the property to the beneficiary outright. For purposes of

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

administration, the distribution will be treated as though it had been an original part of the second trust.

## Section 12.18  Authority to Merge or Sever Trusts

My Trustee may merge a trust created under this trust with any other trust, if the two trusts contain substantially the same terms for the same beneficiaries and have at least one Trustee in common. My Trustee may administer the merged trust under the provisions of the instrument governing the other trust, and this trust will no longer exist if it merges into another trust. Accordingly, in the event another trust is merged into this trust or a trust created under the provisions of this trust document, my Trustee may shorten the period during which this trust subsists to comply with Section 14.01, if necessary, to effect the merger. But if a merger does not appear feasible, my Trustee may consolidate the trusts' assets for purposes of investment and trust administration while retaining separate records and accounts for each respective trust.

My Trustee may sever any trust on a fractional basis into two or more separate and identical trusts, or may segregate a specific amount or asset from the trust property by allocating it to a separate account or trust. The separate trusts may be funded on a *non pro rata* basis, but the funding must be based on the assets' total fair market value on the funding date. After the segregation, income earned on a segregated amount or specific asset passes with the amount or asset segregated. My Trustee shall hold and administer each severed trust upon terms and conditions identical to those of the original trust.

Subject to the trust's terms, my Trustee may consider differences in federal tax attributes and other pertinent factors in administering the trust property of any separate account or trust, in making applicable tax elections and in making distributions. A separate trust created by severance must be treated as a separate trust for all purposes from the effective severance date; however, the effective severance date may be retroactive to a date before my Trustee exercises the power.

## Section 12.19  Authority to Terminate Trusts

My Trust Advisor may terminate any trust created under this trust at any time, if my Trust Advisor determines that administering a trust created under this trust is no longer economical. Once distributed, my Trustee will have no further responsibility with respect to that trust property. My Trustee will distribute the trust property from a terminated trust in this order:

> to me, if I am then living;

> to the beneficiaries then entitled to mandatory distributions of the trust's net income, in the same proportions; and then

> if none of the beneficiaries are entitled to mandatory distributions of net income, to the beneficiaries then eligible to receive discretionary distributions of the trust's net income, in the amounts and shares my Trust Advisor determines.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225. | (214) 368-2335

But if a Trust Advisor is not then serving, only an Independent Trustee will possess the power to terminate any trust created under this trust, and the Independent Trustee can act only as authorized and with the specific powers and discretions permitted under this Section.

## Section 12.20 Discretionary Distribution to Fully Utilize Basis Increase upon Death of Beneficiary

To the extent I have permitted my Trustee to make distributions of principal to a trust beneficiary, my Independent Trustee may distribute as much of the trust's principal to the beneficiary as my Independent Trustee determines advisable so that, upon the beneficiary's death, his or her estate may utilize the basis increase allowed under Internal Revenue Code Section 1014 without causing an increase in the federal estate tax.

Before making a distribution of property under this Section, I request that my Trustee determine whether or not a good reason exists to retain the property in trust, such as whether my Trustee or the beneficiary might sell the property in the near future, as well as protection of the beneficiary from creditors, protection of the beneficiary from failed marriages, and protection of the asset for future generations. My Trustee has no liability to any beneficiary for any action or inaction by my Trustee under this Section, if made in good faith.

Alternatively, I recommend my Independent Trustee consider appointing the assets to a trust established for the beneficiary under the provisions of Section 12.02.

## Section 12.21 Merger of Corporate Fiduciary

If any corporate fiduciary acting as the Trustee under this trust is merged with or transfers substantially all of its trust assets to another corporation, or if a corporate fiduciary changes its name, the successor will automatically succeed to the trusteeship as if that successor had been originally named a Trustee. No document of acceptance of trusteeship will be required.

## Section 12.22 Funeral and Other Expenses of Beneficiary

Upon the death of an Income Beneficiary, my Trustee may pay the funeral expenses, burial or cremation expenses, enforceable debts, or other expenses incurred due to the death of the beneficiary from trust property. This Section only applies to the extent the Income Beneficiary has not exercised any testamentary power of appointment granted to the beneficiary under this trust.

My Trustee may rely upon any request by the deceased beneficiary's Legal Representative or family members for payment without verifying the validity or the amounts and without being required to see to the application of the payment. My Trustee may make decisions under this Section without regard to any limitation on payment of expenses imposed by statute or court rule and without obtaining the approval of any court having jurisdiction over the administration of the deceased beneficiary's estate.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 12.23 Generation-Skipping Transfer Tax Provisions

If any trust created under this trust would be partially exempt from generation-skipping transfer tax after the intended allocation of Available GST Exemption to the trust, then my Trustee may divide the partially exempt trust so that the allocation of Available GST Exemption can be made to a trust that will be entirely exempt from generation-skipping transfer tax. If my Trustee chooses to divide a trust that would otherwise be a partially exempt trust, my Trustee must create and administer the separate trusts as provided in this Section.

### (a) Division into Exempt and Non-Exempt Trusts

My Trustee shall divide the property of the otherwise partially-exempt trust into two separate trusts, the *exempt trust* and the *nonexempt trust*. The exempt trust will consist of the largest fractional share of the otherwise partially exempt trust's total assets that will permit the exempt trust to be entirely exempt from generation-skipping transfer tax. The *nonexempt trust* will consist of the balance of the otherwise partially exempt trust's total assets.

To compute the fractional share, my Trustee will use asset values as finally determined for transfer tax purposes. My Trustee must then apply the fraction to the assets at their actual value on the effective date or dates of distribution so that the actual value of the fractional share resulting from the application of the fraction will include fluctuations in the trust property's value. I request that my Trustee allocate the value of any Roth IRAs payable to my trust to the exempt trust to the extent possible.

### (b) Administration of the Trusts

My Trustee shall administer the exempt and nonexempt trusts created under this Section as separate and independent trusts, but under the same terms as the original trust. To the extent possible, my Trustee should make distributions to a non-skip person as defined by Internal Revenue Code Section 2613 from the nonexempt trust and distributions to a skip person as defined by Section 2613 from an exempt trust. My Trustee may designate names for the exempt and nonexempt trusts.

If an exempt trust and a nonexempt trust are further divided under the terms of this trust, my Trustee may allocate property from the exempt trust first to the trust from which a generation-skipping transfer is more likely to occur.

### (c) Expression of My Intent

My intent is to minimize the application of the generation-skipping transfer tax to the trust property, but not to affect the total amount of trust property to which any beneficiary may be entitled under this trust. This trust must be construed and interpreted to give effect to this intent.

Dorothy Spanos Living Trust

12-9

## (d)    Additions of Property to Exempt and Non-Exempt Trusts

If at any time any property that has an inclusion ratio greater than zero for generation-skipping transfer tax purposes would be added to a trust with property that has an inclusion ratio of zero, then my Trustee will instead hold the property in a separate trust on the same terms and conditions as the original trust.

## (e)    Re-Allocation

If my Trustee's determination of whether a trust in this trust is partially, entirely, or not exempt from GST taxes is later incorrect (for example, if the Congress by law or the Service by regulation or ruling applies the generation-skipping transfer tax retroactively to the trust), my Trustee may re-allocate the assets as of the initial division date, as provided in this Section.

# Article Thirteen
# My Trustee's Powers

## Section 13.01  Introduction to Trustee's Powers

Except as otherwise specifically provided in this trust, my Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of Texas or any other jurisdiction whose law applies to this trust. The powers set forth in the Texas Trust Code, Texas Property Code Title 9, Subtitle B are specifically incorporated into this trust.

My Trustee shall exercise the Trustee powers in the manner my Trustee determines to be in the beneficiaries' best interests. My Trustee must not exercise any power inconsistent with the beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law.

My Trustee may have duties and responsibilities in addition to those described in this trust. I encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if my Trustee has any questions concerning the duties and responsibilities as Trustee.

## Section 13.02  Execution of Documents by My Trustee

My Trustee may execute and deliver any written instruments that my Trustee considers necessary to carry out any powers granted in this trust.

## Section 13.03  Investment Powers in General

My Trustee may invest in any type of investment that my Trustee determines is consistent with the investment goals of the trust, whether inside or outside the geographic borders of the United States of America and its possessions or territories, taking into account the overall investment portfolio of the trust.

Without limiting my Trustee's investment authority in any way, I request that my Trustee exercise reasonable care and skill in selecting and retaining trust investments. I also request that my Trustee take into account the following factors in choosing investments:

> the potential return from the investment, both in income and appreciation;
>
> the potential income tax consequences of the investment;
>
> the investment's potential for volatility; and
>
> the role the investment will play in the trust's portfolio.

I request that my Trustee also consider the possible effects of inflation or deflation, changes in global and US economic conditions, transaction expenses, and the trust's need for liquidity while arranging the trust's investment portfolio.

My Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 13.04    Banking Powers

My Trustee may establish any type of bank account in any banking institutions that my Trustee chooses. If my Trustee makes frequent disbursements from an account, the account does not need to be interest bearing. My Trustee may authorize withdrawals from an account in any manner.

My Trustee may open accounts in the name of my Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust. When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

## Section 13.05    Business Powers

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, my Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to my Trustee in this trust.

### (a)    No Duty to Diversify

Notwithstanding any duty to diversify imposed by state law or any other provision of this trust, my Trustee may acquire or indefinitely retain any ownership interest in or indebtedness of any closely held or nonpublicly traded entity in which the trust, myself, my descendants, and the spouses of my descendants have an ownership interest (the *business interests*), and even though any business interest may constitute all or a substantial portion of the trust property. I specifically authorize my Trustee to invest or indefinitely retain all or any part of the trust property in these business interests, regardless of any resulting risk, lack of income, diversification, or marketability. I waive any applicable prudent investor rule, as well as the Trustee's standard of care and duty to diversify with respect to the acquisition or retention of these business interests.

I recognize that the value of a noncontrolling interest in a business entity may be less than the underlying value of the entity's net assets. Nevertheless, I authorize my Trustee to acquire or retain any noncontrolling business interests.

### (b)    Specific Management Powers

My Trustee has all power and authority necessary to manage and operate any business owned by the trust, whether directly or indirectly, including the express powers set forth in this Subsection. My Trustee may participate directly in the conduct of the business, by serving as a general partner of a limited partnership, a member, manager or managing member of a limited liability company, or a shareholder of a corporation, or may employ others to serve in that capacity.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may participate in the management of the business and delegate management duties and powers to any employee, manager, partner, or associate of the business, without incurring any liability for the delegation. To the extent that the business interest held by the trust is not one that includes management powers (such as a minority stock interest, limited partnership interest, or a membership interest in a limited liability company), my Trustee has no obligation to supervise the management of the underlying assets, and no liability for the actions of those who do manage the business.

My Trustee may enter into management trusts and nominee trusts in which my Trustee and the trust may serve as the exclusive manager or nominee of property or property interests on behalf of any limited partnership, limited liability company, or corporation.

My Trustee, individually, or if my Trustee is a corporate fiduciary, then an employee of my Trustee, may act as a director, general or limited partner, associate, or officer of the business.

My Trustee may participate with any other person or entity in the formation or continuation of a partnership either as a general or limited partner, or in any joint venture. My Trustee may exercise all the powers of management necessary and incidental to a membership in the partnership, limited partnership, or joint venture, including making charitable contributions.

My Trustee may reduce, expand, limit, or otherwise adjust the operation or policy of the business. My Trustee may subject the trust's principal and income to the risks of the business for any term or period, as my Trustee determines.

For any business in which the trust has an interest, my Trustee may advance money or other property, make loans (subordinated or otherwise) of cash or securities, and guarantee the loans of others made to the business. My Trustee may borrow money for the business, either alone or with other persons interested in the business, and may secure the loan or loans by a pledge or mortgage of any part of any trust property.

My Trustee may select and vote for directors, partners, associates, and officers of the business. My Trustee may enter into owners' agreements with a business in which the trust has an interest or with the other owners of the business.

My Trustee may execute agreements and amendments to agreements as may be necessary to the operation of the business, including stockholder agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies.

My Trustee may generally exercise any powers necessary for the continuation, management, sale, or dissolution of the business.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may participate in the sale, reorganization, merger, consolidation, recapitalization, or liquidation of the business. My Trustee may sell or liquidate the business or business interest on terms my Trustee deems advisable and in the best interests of the trust and the beneficiaries. My Trustee may sell any business interest held by the trust to one or more of the beneficiaries of this trust or to any trust in which a majority of the beneficiaries are beneficiaries of this trust. My Trustee may make the sale in exchange for cash, a private annuity, an installment note, or any combination of those.

My Trustee may exercise all of the business powers granted in this trust even though my Trustee may be personally invested in or otherwise involved with the business.

### (c)    Business Liabilities

If any tort or contract liability arises in connection with the business, and if the trust is liable, my Trustee will first satisfy the liability from the assets of the business, and only then from other trust property as determined by my Trustee.

### (d)    Trustee Compensation

In addition to the compensation set forth in Section 12.09, my Trustee may receive additional reasonable compensation for services in connection with the operation of the business. My Trustee may receive this compensation directly from the business, the trust or both.

### (e)    Conflicts of Interest

My Trustee may exercise all of the powers granted in this trust even though my Trustee may be involved with or have a personal interest in the business.

## Section 13.06    Contract Powers

My Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that my Trustee deems advisable. My Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

My Trustee may enter into contracts, and may deliver deeds or other instruments, that my Trustee considers appropriate.

## Section 13.07    Common Investments

For purposes of convenience with regard to the trust property's administration and investment, my Trustee may invest part or all of the trust property jointly with property of other trusts for which my Trustee is also serving as a Trustee. A corporate fiduciary acting as my Trustee may use common funds for investment. When trust property is managed and invested in this manner, my Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

## Section 13.08  Environmental Powers

My Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property. For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

My Trustee may refuse to accept property if my Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

My Trustee may use trust property to:

> conduct environmental assessments, audits, or site monitoring;

> take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;

> institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;

> comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and

> employ agents, consultants, and legal counsel to assist my Trustee in these actions.

My Trustee is not liable for any loss or reduction in value sustained by the trust as a result of my Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless my Trustee contributed to that loss through willful misconduct or gross negligence.

My Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of my Trustee's actions to comply with any environmental law, including any reporting requirement.

My Trustee may release, relinquish, or disclaim any power held by my Trustee that my Trustee determines may cause my Trustee to incur individual liability under any environmental law.

## Section 13.09  Farm, Ranch, and Other Agricultural Powers

My Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

My Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

My Trustee may engage and participate in any government farm program, whether state or federally sponsored.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

My Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

My Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

## Section 13.10   Insurance Powers

My Trustee may purchase, accept, hold, and deal with as owner, insurance policies on my life, any beneficiary's life, or any person's life in whom any beneficiary has an insurable interest.

My Trustee may purchase disability, medical, liability, longterm health care and other insurance on behalf of and for the benefit of any beneficiary. My Trustee may purchase annuities and similar investments for any beneficiary.

My Trustee may execute or cancel any automatic premium loan agreement with respect to any policy, and may elect or cancel any automatic premium loan provision in a life insurance policy. My Trustee may borrow money to pay premiums due on any policy, either by borrowing from the company issuing the policy or from another source. My Trustee may assign the policy as security for the loan.

My Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy to reduce the amount of a policy, to convert or exchange the policy, or to surrender a policy at any time for its cash value.

My Trustee may elect any paid-up insurance or extended-term insurance nonforfeiture option contained in a policy.

My Trustee may sell any policy at its fair market value to anyone having an insurable interest in the policy, including the insured.

My Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

Upon termination of the trust, my Trustee may transfer and assign the policies held by the trust as a distribution of trust property.

## Section 13.11   Loans and Borrowing Powers

My Trustee may make loans to any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured.

My Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor. The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may enter into, negotiate, or modify the terms of any mortgage or any other secured or unsecured agreement granted in connection with any loan entered into by me individually or by any Trustee, and may release or foreclose on any mortgage or security interest payable to me or to the trust.

My Trustee may borrow money at interest rates and on other terms that my Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

My Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. My Trustee may accept deeds instead of foreclosing.

## Section 13.12   Nominee Powers

My Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

## Section 13.13   Oil, Gas and Mineral Interests

My Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

My Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that my Trustee deems advisable.

My Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

My Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

My Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

## Section 13.14   Payment of Property Taxes and Expenses

Except as otherwise provided in this trust, my Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by my Trustee out of income. If the income is insufficient, then my Trustee may make any payments of property taxes or expenses out of the trust property's principal. My Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

## Section 13.15   Purchase of Assets from and Loans to My Probate Estate

Upon my death, my Trustee may purchase at fair market value and retain in the form received any property that is a part of my probate or trust estate as an addition to the trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

In addition, my Trustee may make secured and unsecured loans to my probate or trust estate. My Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

My Trustee may not use any trust property for the benefit of my estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in my gross estate for federal estate tax purposes.

## Section 13.16   Qualified Real Property Valuation

My Independent Trustee has the power to amend the terms of a trust holding *qualified real property* as defined in Internal Revenue Code Section 2032A, in order to permit the qualified real property to qualify for special use valuation permitted under Section 2032A, even if the amendment changes beneficial interests and that directs the segregation of trust property into more than one trust.

## Section 13.17   Qualified Tuition Programs

My Trustee may purchase tuition credits or certificates or make contributions to an account in one or more qualified tuition programs as defined under Internal Revenue Code Section 529 on a beneficiary's behalf for the purpose of meeting the beneficiary's qualified higher education expenses. With respect to an interest in any qualified tuition program, my Trustee may act as contributor, administering the interest by actions including:

> designating and changing the designated beneficiary of the interest in the qualified tuition program;
>
> requesting both qualified and nonqualified withdrawals;
>
> selecting among investment options and reallocating funds among different investment options;
>
> making rollovers to another qualified tuition program; and
>
> allocating any tax benefits or penalties to the beneficiaries of the trust.

Notwithstanding anything in this provision to the contrary, the designated beneficiary must always be a beneficiary of the trust from which the funds were distributed to establish the interest in the qualified tuition program. Investment in a qualified tuition program will not be considered a delegation of investment responsibility under any applicable statute or other law.

## Section 13.18   Real Estate Powers

My Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as my Trustee deems appropriate.

My Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

My Trustee may enter into contracts to sell real estate. My Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. My Trustee may enter into any contracts, covenants, and warranty agreements that my Trustee deems appropriate.

## Section 13.19   Residences and Tangible Personal Property

My Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. My Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

My Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. My Trustee may pay for the repair and maintenance of the property.

My Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

My Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that my Trustee determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

My Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

## Section 13.20   Digital Assets

My Trustee has the authority to access, modify, control, archive, transfer, and delete my digital assets.

Digital assets include my sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

My digital assets may be stored in the cloud or on my own digital devices. My Trustee may access, use, and control my digital devices in order to access, modify, control, archive, transfer, and delete my digital assets—this power is essential for access to my digital assets

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

that are only accessible through my digital devices. Digital devices include desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

## Section 13.21    Retention and Abandonment of Trust Property

My Trustee may retain any property constituting the trust at the time of its creation, at the time of my death, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. My Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.

My Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of my Trustee. On the other hand, my Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

My Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

My Trustee may abandon any property that my Trustee considers of insignificant value.

## Section 13.22    Securities, Brokerage and Margin Powers

My Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. My Trustee may write and purchase call or put options, and other derivative securities. My Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to my Trustee or to or for a beneficiary's benefit.

My Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. My Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. My Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

My Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. My Trustee may hold securities in bearer or uncertificated form, and may use a central depository, clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. My Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. My Trustee may give proxies or powers of attorney that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

## Section 13.23   Settlement Powers

My Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. My Trustee may release or abandon any claim in favor of the trust.

## Section 13.24   Subchapter S Corporation Stock Provisions

During any period the trust is not treated as a grantor trust for tax purposes under Internal Revenue Code Section 671, this trust or any trust created under this trust may hold any S corporation stock held as a separate *Electing Small Business Trust*, or as a separate *Qualified Subchapter S Trust*, as provided in this Section.

For purposes of this Section, *S corporation stock* means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated or is intended to be treated under Section 1361(a) as an *S corporation* for federal income tax purposes.

### (a)    Electing Treatment as an Electing Small Business Trust

If my Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify any portion of the trust as an *Electing Small Business Trust*, my Trustee shall:

> apportion a reasonable share of the unallocated expenses of all trusts created under this trust to the Electing Small Business Trust under the applicable provisions of the Internal Revenue Code and Treasury Regulations; and

> administer the trust as an Electing Small Business Trust, under Internal Revenue Code Section 1361(e).

### (b)    Electing Treatment as a Qualified Subchapter S Trust

If the current Income Beneficiary of the trust makes an election under Section 1361(d)(2) to qualify the trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3), my Trustee shall:

> refer to the Qualified Subchapter S Trust using the same name as the trust to which the stock was originally allocated, plus the name of the current Income Beneficiary of the trust, followed by the letters QSST;

> administer the Qualified Subchapter S Trust in accordance with the same provisions contained in the trust to which the

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee allocated the S corporation stock, as long as the provisions of this Subsection control the trust administration to the extent that they are inconsistent with the provisions of the original trust; and

maintain the Qualified Subchapter S Trust as a separate trust held for the benefit of only one beneficiary as required in Section 1361(d)(3).

My Trustee shall recommend that the current Income Beneficiary of the trust make a timely election to cause federal tax treatment of the trust as a Qualified Subchapter S Trust.

### (1) Current Income Beneficiary

The *current Income Beneficiary* of a Qualified Subchapter S Trust is the person who has a present right to receive income distributions from the trust to which the Trustee has allocated the S corporation stock. A Qualified Subchapter S Trust may have only one current Income Beneficiary.

If, under the terms of the trust, more than one person has a present right to receive income distributions from the trust originally holding the S corporation stock, my Trustee shall segregate the S corporation stock into separate Qualified Subchapter S Trusts for each of these people.

### (2) Distributions

Until the earlier of the death of the current Income Beneficiary or the date on which the trust no longer holds any S corporation stock (the *QSST termination date*), my Trustee shall distribute at least annually all of the trust's *net income*, as defined in Internal Revenue Code Section 643(b) to the current Income Beneficiary.

The terms of the trust to which the S corporation stock was originally allocated govern distributions of principal from the Qualified Subchapter S Trust. But until the QSST termination date, my Trustee may distribute principal only to the current Income Beneficiary of the Qualified Subchapter S Trust and not to any other person or entity.

If the Qualified Subchapter S Trust terminates during the lifetime of the current Income Beneficiary, my Trustee shall distribute all assets of the Qualified Subchapter S Trust to the current Income Beneficiary outright and free of the trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (3) Allocation of Income and Expenses

My Trustee shall characterize receipts and expenses of any Qualified Subchapter S Trust in a manner consistent with Internal Revenue Code Section 643(b).

### (4) Trust Merger or Consolidation

Notwithstanding any other provision of this trust that may seem to the contrary, my Trustee may not merge any Qualified Subchapter S Trust with another trust's assets if doing so would jeopardize the qualification of either trust as a Qualified Subchapter S Trust.

## (c) Governance of the Trusts

The following additional provisions apply to any separate trust created under this Section.

### (1) Protection of S Corporation Status

My Trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, my Trustee must construe the terms and provisions of this trust in a manner that is consistent with the trust qualifying as an Electing Small Business Trust or as a Qualified Subchapter S Trust. My Trustee must disregard any provision of this trust that cannot be so construed or applied.

### (2) Methods of Distribution

My Trustee may not make distributions in a manner that would jeopardize the trust's qualification as an Electing Small Business Trust or as a Qualified Subchapter S Trust.

### (3) Disposition of S Corporation Stock

If my Trustee believes the continuation of any trust would result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, my Trustee, other than an Interested Trustee, in addition to the power to sell or otherwise dispose of the stock, has the power to distribute the stock to the person who is then entitled to receive the income from the trust.

## Section 13.25    Limitation on My Trustee's Powers

All powers granted to Trustees under this trust or by applicable law are limited as set forth in this Section, unless explicitly excluded by reference to this Section.

### (a) An Interested Trustee Limited to Ascertainable Standards

An Interested Trustee may only make discretionary decisions when they pertain to a beneficiary's health, education, maintenance, or support as described under Internal Revenue Code Sections 2041 and 2514.

### (b) Interested Trustee Prohibited from Acting

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as my Trustee is prohibited from participating in the exercise of that discretion or performance of that act. If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the discretion or perform the act.

### (c) Exclusive Powers of My Independent Trustee

Whenever a power or discretion is granted exclusively to my Independent Trustee, then any Interested Trustee who is then serving as my Trustee is prohibited from participating in the exercise of the power or discretion. If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the power or discretion that is exercisable only by my Independent Trustee.

### (d) No Distributions in Discharge of Certain Legal Obligations

My Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of my Trustee, including the obligation of support.

If a beneficiary or any other person has the power to remove a Trustee, that Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the person having the power to remove the Trustee, including that person's obligation of support.

### (e) Insurance Policy on the Life of My Trustee

If the trust holds a policy that insures the life of a Trustee, that Trustee may not exercise any powers or rights with respect to the policy. Instead, a Co-Trustee or an Independent Special Trustee must exercise the powers and rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured Trustee to name an Independent Special Trustee as an incident of ownership of the policy, then a majority of the then current Income Beneficiaries

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

(excluding the insured Trustee if he or she is a beneficiary) will select the Independent Special Trustee.

## (f)    Insurance Policy on a Beneficiary's Life

If the trust holds a policy that insures a beneficiary's life, the beneficiary, individually or as Trustee, may not exercise any power over the policy, its cash value, or its proceeds. This denial of power is intended to prevent an insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

In addition, no distribution of income or principal to the insured beneficiary may be satisfied out of the policy's proceeds, cash value, or other economic benefit of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

Dorothy Spanos Living Trust
13-15

# Article Fourteen
## General Provisions

### Section 14.01 Maximum Term for Trusts

Notwithstanding any contrary provisions or unless terminated earlier under other provisions of this trust, each trust created under this trust document will terminate 21 years after the death of the last to die of the descendants of my paternal and maternal grandparents who are living at the time of my death.

At that time, the remaining trust property will vest in and be distributed to the persons entitled to receive mandatory distributions of the trust's net income, in the same proportions. If no beneficiary is entitled to mandatory distributions of net income, the remaining trust property will vest in and be distributed to the beneficiaries entitled to receive discretionary distributions of the trust's net income, in equal shares *per stirpes*.

### Section 14.02 Spendthrift Provision

No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

This Section does not restrict a beneficiary's right to disclaim any interest or exercise of any power of appointment granted in this trust. In addition, this Section does not limit the ability of an Independent Trustee to appoint property in further trust for any beneficiary as provided in Section 12.02.

### Section 14.03 Contest Provision

The right of a beneficiary to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the beneficiary predeceased me without leaving any surviving descendants if that beneficiary, alone or in conjunction with any other person, engages in any of these actions:

> contests by a claim of undue influence, fraud, menace, duress, or lack of testamentary capacity, or otherwise objects in any court to the validity of this trust, any trust created under the terms of this instrument, my Will, or any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension, profit-sharing plan, or insurance policy signed by me, (collectively referred to in this Section as *Document* or *Documents*) or any amendments or codicils to any Document;

> seeks to obtain adjudication in any court proceeding that a Document or any of its provisions is void, or otherwise seeks to void, nullify, or set aside a Document or any of its provisions;

Dorothy Spanos Living Trust
14-1

files suit on a creditor's claim filed in a probate of my estate, against the trust estate, or any other Document, after rejection or lack of action by the respective fiduciary;

files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership, real or personal, tangible or intangible) of property already characterized by a Document;

files a petition to impose a constructive trust or resulting trust on any assets of the trust estate; or

participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of these actions.

My Trustee may defend any violation of this Section at the expense of the trust estate. A *contest* includes any action described above in an arbitration proceeding, but does not include any action described above solely in a mediation not preceded by a filing of a contest with a court.

## Section 14.04 Survivorship Presumption

If any beneficiary is living at my death, but dies within 30 days after my death, then the beneficiary will be considered to have predeceased me for this trust's purposes.

## Section 14.05 Changing the Governing Law and Situs of Administration

At any time, my Trust Advisor may change the governing law of the trust; change the situs of the administration of the trust; and remove all or any part of the property from one jurisdiction to another. My Trust Advisor may elect, by filing an instrument with the trust records, that the trust will then be construed, regulated, and governed by the new jurisdiction's laws. My Trust Advisor may take action under this Section for any purpose my Trust Advisor considers appropriate, including the minimization of any taxes in respect of the trust or any trust beneficiary.

If considered necessary or advisable by my Trust Advisor, my Trust Advisor may appoint an Independent Trustee to serve as Trustee in the new situs.

If necessary and if my Trust Advisor does not appoint an Independent Trustee within 30 days of my Trust Advisor's action to change the governing law or situs of the trust, the beneficiaries entitled to receive distributions of the trust's net income may appoint a corporate fiduciary in the new situs by majority consent. If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative may act on the beneficiary's behalf.

## Section 14.06 Antilapse Statutes

Whether existing now or enacted later, no *antilapse* statute of Texas or any other jurisdiction will be applied in construing any provision of this trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 14.07  Definitions

For purposes of this trust, the following terms have these meanings:

### (a)  Adopted and Afterborn Persons

A person in any generation who is legally adopted before reaching 14 years of age and his or her descendants, including adopted descendants, have the same rights and will be treated in the same manner under this trust as natural children of the adopting parent.  A person is considered legally adopted if the adoption was legal at the time when and in the jurisdiction in which it occurred.

A fetus *in utero* later born alive will be considered a person in being during the period of gestation.

### (b)  Available GST Exemption

My *Available GST Exemption* means the GST exemption provided in Internal Revenue Code Section 2631 in effect at my death; reduced by the aggregate of:

> any amount of GST exemption allocated to my lifetime transfers, including those allocations made at the time of my death by my Personal Representative, by my Trustee, or by operation of law; and

> any amount allocated to direct-skip persons as defined in Internal Revenue Code Section 2612(c)(1) that does not qualify for an exclusion from the generation-skipping transfer tax occurring at my death to or for the benefit of my descendants.

At the time of my death, if I have made a lifetime transfer to a trust with an inclusion ratio of greater than zero but have not filed a gift tax return and the due date for the gift tax return has not yet passed, my Available GST Exemption will also be reduced so that the trust inclusion ratio is zero, in order to exempt the transfer from generation-skipping transfer tax.

### (c)  Descendants

The term *descendants* means persons who directly descend from a person, such as children, grandchildren, or great-grandchildren.  The term *descendants* does not include collateral descendants, such as nieces and nephews.

### (d)  Education

The term *education* is intended to be an ascertainable standard under Internal Revenue Code Sections 2041 and 2514 and includes:

> enrollment at private elementary, junior, and senior high school, including boarding school;

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

undergraduate and graduate study in any field at a college or university;

specialized, vocational, or professional training or instruction at any institution, as well as private instruction; and

any other curriculum or activity that my Trustee considers useful for developing a beneficiary's abilities and interests including athletic training, musical instruction, theatrical training, the arts, and travel.

The term *education* also includes expenses such as tuition, room and board, fees, books, supplies, computers and other equipment, tutoring, transportation, and a reasonable allowance for living expenses.

## (e)    Good Faith

For the purposes of this trust, a Trustee has acted in good faith if:

an action or inaction is not a result of intentional wrongdoing;

the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and

an action or inaction does not result in an improper personal benefit to the Trustee.

Further, all parties subject to the provisions of this trust will treat any action or inaction made in reliance on information, consent, or directions received from the Personal Representative of my estate as made in good faith for the purposes of this Section, except for cases of willful misconduct or malfeasance on the Trustee's part.

## (f)    Grantor

*Grantor* has the same legal meaning as *Settlor*, *Trustor* or any other term referring to the maker of a trust.

## (g)    Incapacity

Except as otherwise provided in this trust, a person is considered incapacitated in any of the following circumstances.

### (1)    The Opinion of Two Licensed Physicians

An individual is considered to be incapacitated whenever two licensed physicians give the opinion that the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age; illness; use of prescription medications, drugs, or other substances; or any other cause. If an individual whose capacity is in question

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

refuses to provide necessary documentation or otherwise submit to examination by licensed physicians, that individual will be considered incapacitated.

An individual is considered restored to capacity whenever the individual's personal or attending physician provides a written opinion that the individual is able to effectively manage his or her property and financial affairs.

### (2) Court Determination

An individual is considered incapacitated if a court of competent jurisdiction has declared the individual to be disabled, incompetent, or legally incapacitated.

### (3) Detention, Disappearance, or Absence

An individual is considered to be incapacitated whenever he or she cannot effectively manage his or her property or financial affairs due to the individual's unexplained disappearance or absence for more than 30 days, or whenever he or she is detained under duress.

An individual's disappearance, absence, or detention under duress may be established by an affidavit of my Trustee, or by the affidavit of any beneficiary if no Trustee is then serving. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention, and may be relied upon by any third party dealing in good faith with my Trustee.

## (h) Include, Includes, Including

In this document, the words include, includes, and including mean include without limitation, includes without limitation and including without limitation, respectively. Include, includes, and including are words of illustration and enlargement, not words of limitation or exclusivity.

## (i) Income Beneficiary

The term *Income Beneficiary* means any beneficiary who is then entitled to receive distributions of the trust's net income, whether mandatory or discretionary.

Unless otherwise provided in this trust, the phrase *majority of the Income Beneficiaries* means any combination of Income Beneficiaries who would receive more than 50% of the accrued net income if that income were distributed on the day of a vote. For purposes of this calculation, beneficiaries who are eligible to receive discretionary distributions of net income receive the imputed income in equal shares.

Dorothy Spanos Living Trust

14-5

References to a *majority* refer to a majority of the entire trust collectively until my Trustee allocates property to separate trusts or trust shares. After my Trustee allocates property to separate trusts or trust shares, references to a *majority* refer to a majority of each separate trust or trust share.

### (j)    Income in Respect of a Decedent (IRD)

The term *income in respect of a decedent* (IRD) means income received after a decedent's death that would have been taxable to the decedent if the income had been received by the decedent during the decedent's lifetime. For example, payments under qualified retirement plans and other deferred compensation arrangements are IRD. For purposes of this trust, IRD means any income that would be classified as IRD under Internal Revenue Code Section 691(a).

### (k)    Independent Trustee

The term *Independent Trustee* means any Trustee who is not an Interested Trustee as defined in Subsection (m) and includes an Independent Special Trustee appointed under the provisions of Section 3.08.

### (l)    Instrument

The term *this instrument* means this trust, and includes all trusts created under the terms of this trust.

### (m)    Interested Trustee

The term *Interested Trustee* means a Trustee who:

> is a transferor or beneficiary;
>
> is related or subordinate to a transferor or beneficiary;
>
> can be removed and replaced by a transferor with either the transferor or a party who is related or subordinate to the transferor; or
>
> can be removed and replaced by a beneficiary with either the beneficiary or a party who is related or subordinate to the beneficiary.

For purposes of this Subsection, *transferor* means a person who transferred property to the trust during that person's lifetime, including a person whose disclaimer resulted in property passing to the trust. A person is only a transferor during his or her lifetime. *Beneficiary* means a person who is or may become eligible to receive income or principal from the trust under the terms of the trust, even if this person has only a remote contingent remainder interest in the trust, but not if the person's only interest is as a potential appointee under a power of appointment. *Related or subordinate* is used as defined in Internal Revenue Code Section 672(c).

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (n) Internal Revenue Code and Treasury Regulations

References to the *Internal Revenue Code* or to its provisions are to the Internal Revenue Code of 1986, as amended, and any corresponding Treasury Regulations. References to the *Treasury Regulations*, are to the Treasury Regulations under the Internal Revenue Code in effect. If a particular provision of the Internal Revenue Code is renumbered or the Internal Revenue Code is superseded by a subsequent federal tax law, any reference is considered to be made to the renumbered provision or to the corresponding provision of the subsequent law, unless to do so would clearly be contrary to my intent as expressed in this trust. The same rule applies to references to the Treasury Regulations.

## (o) Legal Representative or Personal Representative

As used in this trust document, the term *Legal Representative* or *Personal Representative* means a person's guardian, conservator, executor, administrator, Trustee, attorney in fact under a Durable Power of Attorney, or any other person or entity representing a person or the person's estate. In the case of a minor beneficiary, the beneficiary's parent or another adult with custody of the beneficiary, except for any transferor to a trust created under this instrument, will be considered the beneficiary's Legal Representative for purposes of this trust.

## (p) Per Stirpes

Whenever a distribution is to be made to a person's descendants *per stirpes*, the distribution will be divided into as many equal shares as there are then-living children and deceased children who left then-living descendants. Each then-living child will receive one share, and the share of each deceased child will be divided among the deceased child's then-living descendants in the same manner.

## (q) Primary Beneficiary

The *Primary Beneficiary* of a trust created under this trust is that trust's oldest Income Beneficiary, unless some other individual is specifically designated as the Primary Beneficiary of that separate trust.

## (r) Qualified Retirement Benefits

The term *qualified retirement plan* means a plan qualified under Internal Revenue Code Section 401, an individual retirement arrangement under Section 408 or Section 408A, or a tax-sheltered annuity under Section 403. The term *qualified retirement benefits* means the amounts held in or distributed pursuant to a plan qualified under Section 401, an individual retirement arrangement under Section 408 or Section 408A, a tax-sheltered annuity under Section 403, or any other benefit subject to the distribution rules of Section 401(a)(9).

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (s)    Shall and May

Unless otherwise specifically provided in this trust or by the context in which used, I use the word *shall* in this trust to impose a duty, command, direct, or require, and the word *may* to allow or permit, but not require. In the context of my Trustee, when I use the word *shall* I intend to impose a fiduciary duty on my Trustee. When I use the word *may* I intend to empower my Trustee to act with the Trustee's sole and absolute discretion unless otherwise stated in this trust. When I use the words *may not* in reference to my Trustee, I specifically mean my Trustee *is not permitted to*.

## (t)    Trust

The terms *this trust, this document, instrument,* and *this trust document* refer to this trust and all trusts created under the terms of this trust.

## (u)    Trustee

The terms *my Trustee* and *Trustee* refer to the Initial Trustee named in Article One and to any successor, substitute, replacement, or additional person, corporation, or other entity that ever acts as the Trustee of any trust created under the terms of this trust. The term *Trustee* refers to singular or plural as the context may require.

## (v)    Trust Property

The term *trust property* means all property acquired from any source and held by a Trustee under this trust.

## Section 14.08    General Provisions and Rules of Construction

The following general provisions and rules of construction apply to this trust.

### (a)    Multiple Originals; Validity of Paper or Electronic Copies

This trust may be executed in any number of counterparts, each of which will be considered an original.

Any person may rely on a paper or electronic copy of this trust that the Trustee certifies to be a true copy as if it were an original.

### (b)    Singular and Plural; Gender

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or,* when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (c)    Headings of Articles, Sections, and Subsections

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

## (d)    Governing State Law

This trust is governed, construed, and administered according to the laws of Texas, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 14.05.

## (e)    Notices

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

## (f)    Severability

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

I have executed this trust on December 19, 2017. This trust instrument is effective when signed by me, whether or not now signed by a Trustee.

I certify that I have read and understand this trust instrument, and that it correctly states the provisions under which my trust property is to be administered and distributed by my Trustee.

_____
Dorothy J. Spanos, Grantor and Trustee

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

STATE OF TEXAS
COUNTY OF MCLENNAN

Before me, Landon C. Long, Notary Public, on this day personally appeared Dorothy J. Spanos, as Grantor and as Trustee, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this day, December 19, 2017.

LANDON CHRISTOPHER LONG
Notary Public, State of Texas
My Commission Expires
August 04, 2019

Notary Public, State of Texas
My commission expires: 8/4/2019

Dorothy Spanos Living Trust
14-10

STATE OF TEXAS                          )
                                        ) ss.
COUNTY OF MCLENNAN                       )

I, Dorothy J. Spanos, declare to the officer taking my acknowledgment of this instrument and to the subscribing witnesses that I signed this instrument as my trust.

_____
Dorothy J. Spanos, Grantor

We, Taylor N. Kincanon and _Billy Borunda_, have been sworn by the officer signing below, and declare to that officer on our oaths that the Grantor declared the instrument to be the Grantor's trust and signed it in our presence. We each signed the instrument as a witness in the presence of the Grantor and of each other.

_____
Taylor N. Kincanon, Witness

_____, Witness


STATE OF TEXAS
COUNTY OF MCLENNAN

Before me, Landon C. Long, Notary Public, on this day personally appeared Taylor N. Kincanon, as Witness, and _Billy Borunda_, as Witness, known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this day, December 19, 2017.

LANDON CHRISTOPHER LONG
Notary Public, State of Texas
My Commission Expires
August 04, 2019

_____
Notary Public, State of Texas
My commission expires: 8/4/2019


Dorothy Spanos Living Trust
14-11

# Schedule A

American Bank Account No. ███ 8181

American Bank 3 CD's Nos. █72, █73 & █74

First National Bank Account No. ██ 0997

Independent Bank Account No. ███ 588

Security Bank of Crawford 2 CD's - Nos. ██ 20 & ██ 903

Community Bank & Trust CD's - Nos. █ 09, █ 92 & █ 92

Escondido Golf Club Membership

Ridgewood Country Club Membership

Raymond James Stock Accounts

Residence - Ranch - 228 Spanos Ranch Rd, Crawford TX

House - Horseshoe Bay, TX

Lot in Llano County

# TAB C

CAUSE NO. 20220135PR1

| IN THE ESTATE OF | § | IN THE COUNTY COURT AT LAW |
|---|---|---|
| DOROTHY J. SPANOS, | § | NUMBER 1 OF |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## ORDER APPOINTING TEMPORARY ADMINISTRATOR AND TRUST ADVISOR AND AUTHORIZING ISSUANCE OF LETTERS OF ADMINISTRATION

On this day the Court heard and considered the Application for Appointment of a Temporary Administrator and of a Trust Advisor filed by Katherine Leuschner ("Applicant"). After hearing the evidence in support of the application, the Court finds that Dorothy J. Spanos ("the Decedent") is dead and that four years have not elapsed since the date of Decedent's death on September 18, 2021; that this Court has jurisdiction and venue over this estate, and the interest of this estate and trust requires the immediate appointment of a Temporary Administrator and Trust Advisor; that the Application should be granted, including the issuance of Letters of Temporary Administration, and that the Honorable Robert Stem, would be a suitable temporary administrator and trust advisor, is not disqualified from acting as such, and should be temporary administrator of this estate and trust advisor of the Dorothy Spanos Living Trust.

It is ORDERED that the Honorable Robert Stem is hereby appointed temporary administrator of this estate to serve until _September 5, 2022_, which is not longer than 180 days from the date hereto, and who shall give bond in the sum of $_10,000 —_ condition as required by law; that unless this appointment is contested after service of citation, it shall be continued in force until _September 5, 2022_ or for such period of time as the Court shall deem in the interest of this estate, or it shall be made permanent if found by law and shall issue

letters of temporary administration within three days after the temporary administrator has qualified according to law; and that the temporary administrator shall have the following powers:

a. To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

b. To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

c. To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits, pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

d. To insure the Estate and its assets against liability in appropriate cases;

e. To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

f. To pay taxes, court costs, and bond premiums, as necessary;

g. To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h. To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i. To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j. To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor;

k. To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment; and

l. To consent and obtain all estate planning documents of the Decedent, including but not limited to, any wills, codicils, memorandums, trusts, powers of attorney, directives, drafts, notes, and recordings.

IT IS FURTHER ORDERED that the Honorable Robert Stem is hereby appointed as Trust Advisor of the Dorothy Spanos Living Trust to serve until ___September 5, 2022___, which is not longer than 180 days from the date hereto, this his appointment as Trust Advisor does not require a bond, and that his appointment unless this appointment is contested after service of citation, it shall be continued in force for such period of time as the Court shall deem in the interest of the Trust and its beneficiaries, or it shall be made permanent if found by law and shall issue; that Judge Stem shall have the following powers in his capacity of the Trust Advisor as detailed in the Trust:

a. to demand a written accounting from the Trustee, review the accounting, and approve or reject the accounting;

b. to construe the terms of the Trust to settle any interpretation disputes;

c. to execute documents and direct the Trustee to execute and deliver documents;

d. to examine the trust records, including all documentation, inventories, and accountings; and

e. to employ professionals to advise or assist the Trust Advisor perform his duties.

SIGNED this __8__ day of March, 2022.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM:**

**BEARD KULTGEN BROPHY BOSTWICK &
DICKSON, PLLC**
220 South Fourth Street
Waco, Texas 76701
(254) 776-5500
(254) 776-3591/Facsimile

BY:  /s/ Mark E. Firmin
     Mark E. Firmin
     State Bar No. 24099614

# TAB D

| IN THE ESTATE OF | § | IN THE COUNTY COURT OF |
| | § | |
| DOROTHY J. SPANOS, | § | |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## AGREED ORDER APPROVING THE DISCHARGE OF TEMPORARY ADMINISTRATOR AND TERMINATION OF TEMPORARY ADMINISTRATION

Before this Court is the Agreed Order Approving the Discharge of Temporary Administrator, the Honorable Judge Robert Stem ("Judge Stem" or "Temporary Administrator"), and Termination of Temporary Administration, on behalf of the Estate of Dorothy J. Spanos, Deceased ("the Estate"). The parties to this Agreed Order have represented to the Court the following:

After diligently investigating the assets of the Estate and Dorothy Spanos Living Trust ("the Trust") in cooperation with Frances Shelton, an heir of the Estate and Trustee of the Trust, and Katherine Leuschner, the other heir of the Estate and a beneficiary of the Trust, the parties have been unable to discover debts owed by or to the Estate, or any assets remaining in the Estate beyond a few vehicles and watercraft, whose titles were not changed to the Trust prior to Decedent's passing.

The parties represent that Shelton and Leuschner are the only heirs of the Decedent and primary beneficiaries of the personal property under the terms the Trust and its amendment.

The parties further represent that based on their investigation to date it appears there is no necessity of administration at this time and that Shelton and Leuschner, in their respective capacities, should be authorized to transfer title to any titled assets via an Affidavit of Heirship or other legal means.

The parties further represent that Shelton and Leuschner have agreed that in the event assets or debts of the Estate requiring administration are discovered Shelton, as the Independent Executor named in the Pour-Over Will of Dorothy J. Spanos ("the Will"), will either offer the Will for probate,

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased          Page 1 of 4
821

probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective.

The parties further agree that because there is no necessity of administration at this time and no need for an inventory, that Judge Stem shall be discharged as Temporary Administrator, his bond released, and the Temporary Administration terminated.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Temporary Administrator of the Estate of Dorothy J. Spanos and as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served in the role of Temporary Administrator and Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. Judge Stem has made a diligent search to determine the assets of the Estate and Trust and debts owed to or by the Estate.

4. Judge Stem has determined, to the best of his knowledge, that the only assets that were not transferred to the Trust were a few vehicles and watercrafts that can be dealt with through an Affidavit of Heirship or other legal means.

5. Judge Stem has determined that there is no necessity for an administration of this Estate at this time.

6. Judge Stem has managed the Estate in compliance with the standards set forth for a temporary administrator in the Texas Estates Code.

7. Judge Stem has not paid any fees or expenses from the assets of the Estate.

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased          Page 2 of 4
822

8. Judge Stem is entitled to be paid compensation for his services as Temporary Administrator pursuant to Texas Estates Code § 352.002 and shall be paid for such services from assets in the Trust.

9. Judge Stem shall be discharged as Temporary Administrator and the Temporary Administration terminated.

10. Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1. Judge Stem shall be paid for reasonable and necessary services rendered as Temporary Administrator from the assets of the Trust and the parties agree that Judge Stem shall carry his fees forward until his service as the Trust Advisor is complete at which such time he shall submit an invoice to the Trustee;

2. No necessity of administration exists at this time and that Leuschner and Shelton may execute any documents necessary to transfer title to any personal property or real property in their respective capacities;

3. That in the event an administration becomes necessary or other assts discovered, Shelton shall timely offer the Will for probate, probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective; and

4. That Judge Stem is discharged as temporary administrator of the Estate and the Temporary Administration is terminated.

SIGNED, ENTERED, and ORDERED on this _____ day of May 2022.

_____
JUDGE PRESIDING

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased          Page 3 of 4
823

APPROVED AS TO FORM AND SUBSTANCE:


/s/ Robert Stem
Judge Robert Stem, Temporary Administrator


/s/ Mark E. Firmin
Attorney for Katherine Leuschner


/s/ Daniel A. Palmer
Attorney for Frances Shelton

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased                    Page 4 of 4
824

# TAB E

IN THE ESTATE OF §

DOROTHY J. SPANOS, §

§

DECEASED §

§ IN THE COUNTY COURT

§

§

§ McLENNAN COUNTY, TEXAS

## AGREED ORDER TO EXTEND THE APPOINTMENT OF THE TRUST ADVISOR OF THE DOROTHY SPANOS LIVING TRUST

Before this Court is the Agreed Order Extending the Appointment of the Honorable Judge Robert Stem ("Judge Stem" or "Trust Advisor"), as Trust Advisor to the Trustee of the Dorothy Spanos Living Trust. The parties to this Agreed Order have represented to the Court the following:

The Parties represent that on March 8, 2022, the Court signed an Order appointing Judge Stem as Trust Advisor to the Trustee of the Dorothy Spanos Living Trust through September 5, 2022.

There still exists a necessity for the Trust Advisor to assist in resolving a dispute amongst the Parties involving a perceived ambiguity in the Trust involving the distribution of certain real property, as well as assisting with the division and distribution of some of the personal property.

The Parties request that Judge Stem's appointment as Trust Advisor be extended indefinitely to help facilitate an agreement amongst the Parties for the distribution of real property and to resolve any other disagreements amongst the Parties relating to the Trust that may exist as a result of any perceived ambiguity.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served as Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. A necessity stills exists for a Trust Advisor to facilitate in resolving a dispute amongst the Parties arising from a perceived ambiguity in the Trust.

4. Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1. Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust until such time that the Trust Advisor either determines that there no longer exists a necessity for a Trust Advisor, by agreement of the Parties, or if the Court, in the best interest of the Trust, determines cause exists for the removal of the Trust Advisor.

SIGNED, ENTERED, and ORDERED on this ___1st___ day of ___September___ 2022.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

_/s/ Robert Stem_
Judge Robert Stem, Trust Advisor to the Trustee
Of the Dorothy Spanos Living Trust

_/s/ Mark E. Firmin_
Attorney for Katherine Leuschner

_/s/ Danny A. Palmer_
Attorney for Frances Shelton, Trustee of the
Dorothy Spanos Living Trust

_/s/ Jim Dunnam_
Attorney for Bobby Spanos, Chris Spanos and
Nicole Spanos

# TAB F



# Robert Stem

Senior District Judge
State of Texas
Mediator

103 Bridge St.
Marlin, Texas 76661

(254) 214-4401

rstemfalls@gmail.com
judgerobertstem.com

May 3, 2023

Mr. Danny Palmer
Haley & Olson
100 Ritchie Road #200
Waco, Texas 76712
Via email: dpalmer@haleyolson.com

Re: Dorothy Spanos Trust

Dear Danny:

I have reviewed the request from Counsel for Kathy Leuschner, Bobby Spanos, Nicole Lawrie, and Chris Spanos to remove Frances Shelton as Trustee. I have also reviewed and taken into consideration your response, as well as all the facts and circumstances that have transpired since my appointment as trust advisor over a year ago.

The Dorothy Spanos Trust is in need of a truly neutral, detached and independent trustee.

As trust advisor, I am exercising the power set forth in Section 4.07(c), and removing Frances Shelton as Trustee. This emailed letter, sent simultaneously to all Counsel, will serve as written notice to Frances Shelton of her removal through her Attorney of Record. Rick Shelton, as Successor Trustee is not an appropriate substitute trustee, and this letter will serve as written notice to him. In the event you are unable to accept notice on behalf of Rick Shelton, please let me know and I'll proceed to send the appropriate notice.

I have contacted Attorney John Malone, and he has agreed to accept the appointment as Successor Trustee. Under Sections 3.08 and 4.07 of the Trust, John Malone will be appointed as the Special Independent Trustee of the Dorothy Spanos Trust. John Malone is copied on this group email which will serve as written notice of his appointment.

Please contact John Malone in order to provide the necessary initial documents to begin the transition. I am also available to set up a time to have a joint visit with John Malone to speed up the process.

Sincerely,

Robert Stem
Trust Advisor
Dorothy Spanos Trust

# TAB G

# Texas Statutes Annotated - 2022

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle A. Courts
        Chapter 25. Statutory County Courts (Refs & Annos)
          Subchapter A. General Provisions

V.T.C.A., Government Code § **25.0003**

§ **25.0003**. Jurisdiction

Currentness

(a) A statutory county court has jurisdiction over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for county courts.

(b) A statutory county court does not have jurisdiction over causes and proceedings concerning roads, bridges, and public highways and the general administration of county business that is within the jurisdiction of the commissioners court of each county.

(c) In addition to other jurisdiction provided by law, a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in:

  (1) civil cases in which the matter in controversy exceeds $500 but does not exceed $250,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition; and

  (2) appeals of final rulings and decisions of the division of workers' compensation of the Texas Department of Insurance regarding workers' compensation claims, regardless of the amount in controversy.

(d) Except as provided by Subsection (e), a statutory county court has, concurrent with the county court, the probate jurisdiction provided by general law for county courts.

(e) In a county that has a statutory probate court, a statutory probate court is the only county court created by statute with

probate jurisdiction.

(f) A statutory county court does not have the jurisdiction of a statutory probate court granted statutory probate courts by the Estates Code.

**Credits**

Added by Acts 1987, 70th Leg., ch. 148, § 4.01, eff. Sept. 1, 1987. Amended by Acts 1991, 72nd Leg., ch. 746, §§ 2, 3, eff. Oct. 1, 1991; Acts 1999, 76th Leg., ch. 431, § 2, eff. Sept. 1, 1999; Acts 2005, 79th Leg., ch. 265, § 6.002, eff. Sept. 1, 2005; Acts 2011, 82nd Leg., 1st C.S., ch. 3 (H.B. 79), § 4.02, eff. Jan. 1, 2012; Acts 2017, 85th Leg., ch. 324 (S.B. 1488), § 22.022, eff. Sept. 1, 2017; Acts 2019, 86th Leg., ch. 696 (S.B. 2342), § 2, eff. Sept. 1, 2020.

HISTORICAL AND STATUTORY NOTES

2019 Main Volume

Acts 1991, 72nd Leg., ch. 746 rewrote subsec. (c) and added subsecs. (d) and (e). Prior thereto subsec. (c) read:

"A statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in civil cases in which the matter in controversy exceeds $500 but does not exceed $5,000, excluding interest."

Acts 1999, 76th Leg., ch. 431, added subsec. (f).

2005 Legislation

Acts 2005, 79th Leg., ch. 265 rewrote subsec. (c)(2) which formerly read:

"(2) appeals of final rulings and decisions of the Texas Workers' Compensation Commission, regardless of the amount in controversy."

2011 Legislation

Acts 2011, 82nd Leg., 1st C.S., ch. 3 (H.B. 79) in subsec. (c)(1), substituted "$200,000" for "$100,000".

2017 Legislation

Acts 2017, 85th Leg., ch. 324 (S.B. 1488) in (f) made a cite reference change.
 2025 Electronic Update
2019 Legislation

Acts 2019, 86th Leg., ch. 696 (S.B. 2342) in (c)(1) substituted "$250,000" for "$200,000".

Section 36 of Acts 2019, 86th Leg., ch. 696 (S.B. 2342) provides:

"This Act applies only to a cause of action filed on or after the effective date [Sept. 1, 2020] of this Act. A cause of action filed before that date is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose."

2019 Main Volume

Prior Laws:

Acts 1971, 62nd Leg., p. 2814, ch. 915, § 1.


Vernon's Ann.Civ.St. art. 1970a.


## CONSTITUTIONAL PROVISIONS

### 2019 Main Volume


Article 5, § 1 provides, in part:


"The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."


CROSS REFERENCES
Commissioners courts, jurisdiction, see V.T.C.A., Government Code § 27.051.
Commitment and admission of mentally ill and mentally retarded persons to community centers, see V.T.C.A., Health & Safety Code § 534.001.
County court, jurisdiction, see V.T.C.A., Government Code § 26.041 et seq.
Denton County Court, jurisdiction, see V.T.C.A., Government Code § 25.0633.
District court, jurisdiction, see V.T.C.A., Government Code § 24.007.
Harris County civil court at law provisions, see V.T.C.A., Government Code § 25.1032.
Hopkins County court at law, jurisdiction provided by this section, see V.T.C.A., Government Code § 25.1142.

LAW REVIEW COMMENTARIES
A custom fit: Tailoring Texas civil jury selection procedures to case tiers. Jarod S. Gonzalez, 43 St. Mary's L.J. 495 (2012).
Jarod S. Gonzalez, 43 St. Mary's L.J. 495 (2012).


RESEARCH REFERENCES
2025 Electronic Update
ALR Library
134 American Law Reports 1244, Jurisdiction in Proceedings for Administration of Estate of Decedent or Guardianship of Infant or Incompetent as Exclusive of Jurisdiction of Other Courts of Proceedings by Surviving Partner of Decedent, Infant, or Incompetent, or Vice Versa.
167 American Law Reports 1243, Interest and Attorneys' Fees as Factors in Determining Jurisdictional Amount.

Encyclopedias
27A Texas Jurisprudence, Third Edition Criminal Procedure: Post-Trial Proceedings § 1077, Appellate Jurisdiction of County Courts.
22 Texas Jurisprudence, Third Edition Criminal Procedure: Pretrial Proceedings § 128, Statutory and Constitutional County Court Jurisdiction.

16 TX Jur. 3d Courts § 71, Amount in Controversy; Generally.

16 TX Jur. 3d Courts § 74, Intervention and Interpleader.

16 TX Jur. 3d Courts § 76, Counterclaims and Cross-Actions; Below Jurisdictional Amount.

16 TX Jur. 3d Courts § 78, Effect of Pleadings.

16 TX Jur. 3d Courts § 89, Generally; Original Jurisdiction.

16 TX Jur. 3d Courts § 93, "Statutory" County Courts.

16 TX Jur. 3d Courts § 94, Suits for Recovery of Land.

29 TX Jur. 3d Decedents' Estates § 797, Original Jurisdiction of County Courts, Statutory Probate Courts, and District Courts.

29 TX Jur. 3d Decedents' Estates § 798, Jurisdiction of Statutory Probate Courts, Generally.

29 TX Jur. 3d Decedents' Estates § 800, Distinction Between Statutory County Courts and Statutory Probate Courts; Conflicts Between Statutes.

38 TX Jur. 3d Extraordinary Writs § 79, County Courts Power to Issue Writ of Habeas Corpus.

76 TX. Jur. 3d Workers' Compensation § 520, Right to Judicial Review, Generally.


Forms

4A Texas Jurisprudence Pleading and Practice Forms 2d Edition § 80:2 (2d ed.), Constitutional and Statutory Provisions Governing Subject-Matter Jurisdiction.

4A Texas Jurisprudence Pleading and Practice Forms 2d Edition § 80:4 (2d ed.), Amount in Controversy.

4 Texas Jurisprudence Pleading and Practice Forms 2d Edition § 73:5 (2d ed.), Procedural Guide.

9B Texas Jurisprudence Pleading and Practice Forms 2d Edition § 193:4 (2d ed.), Action to Recover Personal Property.

9 Texas Jurisprudence Pleading and Practice Forms 2d Edition § 178:21 (2d ed.), Jurisdiction and Venue.

9 Texas Jurisprudence Pleading and Practice Forms 2d Edition § 181:8 (2d ed.), Procedural Guide: Jurisdiction and Venue.

10A Texas Jurisprudence Pleading and Practice Forms 2d Edition § 200B:13 (2d ed.), To County Court at Law.

10A Texas Jurisprudence Pleading and Practice Forms 2d Edition § 200B:47 (2d ed.), In General.

10A Texas Jurisprudence Pleading and Practice Forms 2d Edition § 200B:48 (2d ed.), Exceptions to Jurisdiction.

10A Texas Jurisprudence Pleading and Practice Forms 2d Edition § 200B:52 (2d ed.), Civil Jurisdiction.

3 West's Texas Forms Ch. 1 1.3 Intro., Introduction.

3 West's Texas Forms § 1.1.3, Plaintiff's Original Petition--General Form--County (Civil) Court-At-Law.

3 West's Texas Forms § 1.3.1.1, Jurisdictional and Venue Allegations--Subject-Matter Jurisdiction--District Court.

3 West's Texas Forms § 1.3.1.3, Jurisdictional Allegations--Subject-Matter Jurisdiction--County (Civil) Court-At-Law.


Treatises and Practice Aids

1 McDonald & Carlson Texas Civil Practice § 3:5 (2d. ed.), Alteration of Number or Jurisdiction of Constitutional Courts.

1 McDonald & Carlson Texas Civil Practice § 3:25 (2d. ed.), Overview.

1 McDonald & Carlson Texas Civil Practice § 3:27 (2d. ed.), Interest.

1 McDonald & Carlson Texas Civil Practice § 3:31 (2d. ed.), Exclusive Original Jurisdiction.

1 McDonald & Carlson Texas Civil Practice § 3:32 (2d. ed.), Concurrent Original Jurisdiction.

1 McDonald & Carlson Texas Civil Practice § 3:33 (2d. ed.), Land Titles.

1 McDonald & Carlson Texas Civil Practice § 3:34 (2d. ed.), Liens on Land.

1 McDonald & Carlson Texas Civil Practice § 3:37 (2d. ed.), Divorce.

1 McDonald & Carlson Texas Civil Practice § 3:38 (2d. ed.), Defamation.

1 McDonald & Carlson Texas Civil Practice § 3:39 (2d. ed.), Trial of Right of Property.

1 McDonald & Carlson Texas Civil Practice § 3:40 (2d. ed.), Penalties, Forfeitures, and Escheats.

1 McDonald & Carlson Texas Civil Practice § 3:42 (2d. ed.), Overview.

1 McDonald & Carlson Texas Civil Practice § 3:46 (2d. ed.), Statutory County Courts.

4 Texas Practice Guide, Business and Commercial Litigation § 21:37, General Constitutional and Statutory Jurisdiction of Texas Trial Courts--County Courts--Statutory County Courts.

1 Texas Practice Guide, Criminal Practice & Procedure § 1:28, Jurisdiction of Statutory County Court.

Elliott & Saint-Paul, 14 Texas Practice Series § 63:65, County Courts.

Elliott & Saint-Paul, 14 Texas Practice Series § 64:3, Jurisdiction--Trial Courts.

Elliott & Saint-Paul, 14 Texas Practice Series § 69:7, Jurisdiction and Venue.

Woodward, Smith & Beyer, 17 Texas Practice Series § 1, Probate Courts.

Woodward, Smith & Beyer, 17 Texas Practice Series § 2, Constitutional and Statutory Provisions.

Woodward, Smith & Beyer, 17 Texas Practice Series § 10, Jurisdiction of Probate Court in Non-Probate Matters--Constitutionality of Statute.

Brooks, 36 Texas Practice Series § 22.7, County Court.

Brooks, 36 Texas Practice Series § 22.11, District Courts--District Court Jurisdiction.

Brooks, 36 Texas Practice Series § 22.13, Such Other Courts.

Dix & Schmolesky, 40 Texas Practice Series § 4:41, Statutory County Courts.

Baker & Simpson, 50 Texas Practice Series § 12:7, Jurisdiction--County Courts.

Baker & Finley, 52 Texas Practice Series § 2:11, Grounds for Plea--Amount in Controversy Not Within Jurisdiction Limits of Court.

Baker & Finley, 52 Texas Practice Series § 2:12, Grounds for Plea--Subject Matter of Suit Not Within Court's Jurisdiction.

NOTES OF DECISIONS

Action on account [10]

Administration of county business [8]

Amendment of pleadings, amount in controversy [20]

Amount in controversy [18-27]

    Amount in controversy - In general [18]

    Amount in controversy - Amendment of pleadings [20]

    Amount in controversy - Attorney fees [26]

    Amount in controversy - Counterclaims [21]

    Amount in controversy - Crossclaims [22]

    Amount in controversy - Judgments [27]

    Amount in controversy - Pleadings generally [19]

    Amount in controversy - Separate causes of action [23]

    Amount in controversy - Subsequent events [24]

    Amount in controversy - Treble damages [25]

Attorney fees, amount in controversy [26]

Claims against state [9]

Concurrent jurisdiction [29-32]

    Concurrent jurisdiction - In general [29]

    Concurrent jurisdiction - Injunctions [31]

    Concurrent jurisdiction - Transfers within county [30]

    Concurrent jurisdiction - Workers compensation [32]

Constitutional county courts [5]

Construction and application [2]

Counterclaims, amount in controversy [21]

Crossclaims, amount in controversy [22]

Deceptive trade practices [7]

Divorce proceedings [11]

Duty of court [3]

Eminent domain proceedings [13]

Forcible entry and detainer proceedings [14]

Injunctions [33]

Injunctions, concurrent jurisdiction [31]

Judgments, amount in controversy [27]

Law or equity [6]

Liens [17]

Misdemeanors [16]

Partition actions [15]

Pleadings generally, amount in controversy [19]

Probate [12]

Separate causes of action, amount in controversy [23]

Subject matter jurisdiction [28]

Subsequent events, amount in controversy [24]

Transfers to county courts at law [4]

Transfers within county, concurrent jurisdiction [30]

Treble damages, amount in controversy [25]

Validity [1]

Workers compensation, concurrent jurisdiction [32]

**[1] Validity**

County court's jurisdiction to enter divorce decree under authority granted legislature under Const. Art. 5, § 1, to establish nondistrict courts with authority over divorce cases concurrent with that of district courts did not violate Const. Art. 3, § 56, stating that legislature could not pass any local or special law granting divorces. Rutledge v. Rutledge (App. 2 Dist. 1986) 711 S.W.2d 437. Courts ☞ 472.1; Statutes ☞ 1656

## ² Construction and application

Fort Bend county court at law did not lack jurisdiction over misdemeanor charge for official oppression, under provision of Texas Constitution stating that, although district courts had exclusive, original, and appellate jurisdiction over such charge by default, "the Constitution or other law can confer any of those on another court," provision of Government Code stated that county court at law had jurisdiction "over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for county courts," criminal article provided that county courts at law had "original jurisdiction of all misdemeanors" of which exclusive jurisdiction was not given to justice court and for cases in which potential fine was low, including "official misconduct" misdemeanor charge, and although other statute provided that county court "has exclusive original jurisdiction of misdemeanors other than misdemeanors involving official misconduct" that statute did not exempt official-misconduct misdemeanors from county court's jurisdiction, but exempted them only from its exclusive original jurisdiction. Roland v. State (Tex.Crim.App. 2021) 2021 WL 4448559. Criminal Law ☞ 87

Statutes that explicitly deprived county courts at law in certain counties of jurisdiction over misdemeanor charge for official misconduct, or which conferred upon county courts at law with concurrent jurisdiction with district court in certain counties except for official-misconduct misdemeanors, did not include Fort Bend county court at law. Roland v. State (Tex.Crim.App. 2021) 2021 WL 4448559. Criminal Law ☞ 87

The term "county courts," as used in statute setting forth jurisdiction of statutory county courts, refers to the constitutional county courts. Dailing v. State (App. 14 Dist. 2018) 546 S.W.3d 438. Courts ☞ 183

Harris County civil courts at law have jurisdiction to decide issues of title to real or personal property in addition to their general concurrent jurisdiction with districts court to decide civil cases in which the matter in controversy exceeds $500 but does not exceed $200,000 and is not dependent upon the amount in controversy. Sohani v. Sunesara (App. 1 Dist. 2018) 546 S.W.3d 393, rule 53.7(f) motion granted. Courts ☞ 183; Courts ☞ 472.3

Statutory amendment increasing county court's amount-in-controversy jurisdictional limit from $100,000 to $200,000 applied to two bus passengers' negligence action against transit authority for injuries sustained when bus collided with another vehicle, alleging damages in the amount of $100,000 for each passenger, and application would not amount to an unconstitutional ex-post facto application of law, even though amendment occurred between filing of petition and beginning of trial on the merits; thus, passengers' action, which alleged an aggregate of $200,000 in damages, was within county court's monetary jurisdiction. VIA Metropolitan Transit Authority v. Barraza (App. 4 Dist. 2013) 2013 WL 6255761, Unreported, review denied. Constitutional Law ☞ 2825; Courts ☞ 160; Courts ☞ 169(3)

## ³ Duty of court

Supreme Court is obligated to review sua sponte issues affecting jurisdiction. In re City of Dallas (Sup. 2016) 501 S.W.3d 71. Appeal and Error ☞ 23

Court is duty-bound to determine its jurisdiction regardless of whether the parties have questioned it. In re City of Dallas (Sup. 2016) 501 S.W.3d 71. Courts ☞ 39

## [4] Transfers to county courts at law

Insertion by interlineation, without judge's knowledge, of "No. 2" following "County Court at Law" in transfer order previously signed by district judge was unauthorized rendering void order transferring cause to County Court at Law No. 2 of Travis County. Hullum v. State (Cr.App. 1966) 415 S.W.2d 192. Criminal Law 🗝 101(4)

Judge of District Court in which an indictment is returned charging a misdemeanor offense over which such court has no jurisdiction has the duty of deciding the court or courts having jurisdiction of the offense charged, and judge alone has duty of deciding to what court he will transfer the cause. Hullum v. State (Cr.App. 1966) 415 S.W.2d 192. Criminal Law 🗝 101(4)

## [5] Constitutional county courts

The term "county courts," as used in statute setting forth jurisdiction of statutory county courts, refers to the constitutional county courts. Tiscareno v. State (Tex.App.-Hous. (1 Dist.) 2020) 2020 WL 4689211. Courts 🗝 183

County court of Texas had subject matter jurisdiction over former wife's action seeking recognition of foreign judgment based upon former husband's failure to pay alimony to wife, regardless of amount in controversy. Bergman v. Bergman (App. 8 Dist. 1994) 888 S.W.2d 580, rehearing denied. Divorce 🗝 1454(1)

Vernon's Ann.Civ.St. art. 1970a (repealed; now this section) which conferred jurisdiction on statutory county courts at law and county civil courts concurrent with that of district court if matter in controversy is between $500 and $5,000, exclusive of interest, did not change jurisdiction of constitutional county courts. Amigo Helicopters, Inc. v. Jones (Civ.App. 1972) 488 S.W.2d 473. Courts 🗝 160

Condominium developer's claim for reimbursement from city after other properties connected to wastewater line developer constructed for project was within the jurisdictional limits of the county court; although developer asserted that it paid $224,991.02 to construct the new line, it did not seek this amount as its alleged damages and only sought reimbursement of $48,664 and other unspecified amounts. Midtown Edge, L.P. v. City of Houston (App. 1 Dist. 2014) 2014 WL 586232, Unreported. Courts 🗝 169(1)

## [6] Law or equity

Where grantors' cause of action against grantee was predicated upon obligation in contract to sell wherein grantee agreed to pay debt of grantors, there was no necessity to reform deed, which had been fully executed as a conveyance, suit was not in equity but was in law for damages as necessary alternative to an enforcement of grantee's promise to pay obligation, and county court at law had jurisdiction. Ewing v. McGee (Civ.App. 1958) 314 S.W.2d 158, error dismissed. Courts 🗝 183

## [7] Deceptive trade practices

Amount in contention in action brought under the Deceptive Trade Practices-Consumer Protection Act (V.T.C.A. Bus. & C. § 17.41 et seq.) exceeded $5,000 and thus county court did not have jurisdiction over action in light of allegations that because of certain violations of the Act plaintiff suffered actual damages of $1,087.15 and was entitled to recover as a matter

of law three times the actual damages, that plaintiff was entitled to recover and to recovery of attorney fees in the sum of $1,500 for preparation and trial in trial court, additional $1,500 in event of appeal to Court of Civil Appeals, and additional $1,500 in event of appeal to Supreme Court. Long v. Fox (App. 4 Dist. 1981) 625 S.W.2d 376, ref. n.r.e.. Courts ☞ 169(6); Courts ☞ 170

#### 8 Administration of county business

The judge of the county court at law of Orange County may not adopt a sick leave policy for the judge's employees which differs from the policy adopted by the commissioners court. Tex. Atty. Gen. Op., No. MW-0268 (1980).

#### 9 Claims against state

Trial court had subject matter jurisdiction to decide whether city violated governing statute when city failed to use one of two methods set forth for determining general prevailing rate of per diem wages for workers on public building and highway construction for city, although trial court did not have power to direct specific method for making determination. Associated General Contractors of Texas, Inc. v. City of El Paso (App. 8 Dist. 1994) 879 S.W.2d 318, rehearing overruled. Labor And Employment ☞ 2367

#### 10 Action on account

County court at law in Travis County had jurisdiction (as distinguished from venue) of action on verified account notwithstanding fact that parties were residents of and domiciled in Bexar County and the cause of action accrued in Bexar County. Nipper v. U-Haul Co. of San Antonio, Division of Amerco Marketing Co. of San Antonio (Civ.App. 1974) 516 S.W.2d 467. Courts ☞ 183

#### 11 Divorce proceedings

County court did not have jurisdiction over ex-wife's suit against former husband alleging breach of property agreement as well as fraud and conversion; suit was not a family law case or proceeding and there was no indication that amount in controversy did not exceed maximum limit of court's jurisdiction. Nix v. Nix (App. 13 Dist. 1990) 797 S.W.2d 64. Courts ☞ 169(1); Courts ☞ 183

The court which granted the divorce does not have exclusive jurisdiction to hear a suit brought to enforce the property settlement agreement entered into upon divorce. Underhill v. Underhill (Civ.App. 1981) 614 S.W.2d 178, ref. n.r.e.. Courts ☞ 475(15)

Independent suit to enforce contract to make monthly payments provided for in a property settlement agreement did not involve matters incident to underlying divorce and, as such, was not within exclusive jurisdiction of the family district court as the court which granted the divorce, but was within the concurrent jurisdiction of either the family district court or the county civil court at law. Underhill v. Underhill (Civ.App. 1981) 614 S.W.2d 178, ref. n.r.e.. Courts ☞ 475(15)

#### 12 Probate

County court at law's subject matter jurisdiction over matters incident to an estate did not give it jurisdiction over the survival

and wrongful death claims asserted by family of bicyclist who was struck and killed by an intoxicated driver, even though bicyclist's probate proceedings were pending in the county court; controlling issue with respect to the wrongful death and survival claims was not the settlement, partition, or distribution of the estate, and amendment to the former Probate Code that expressly granted jurisdiction over such claims to probate courts did not include statutory county courts exercising probate jurisdiction within that grant. Dowell v. Quiroz (App. 13 Dist. 2015) 462 S.W.3d 578. Courts ⚷ 472.4(2.1)

County court of law, in county that had no statutory probate court and in which administration of testator's estate was pending, had exclusive jurisdiction over independent executor's action against sister seeking to recover funds that testator transferred to executor's sister before testator's death, and thus district court judgment for executor on such claim was void, even though executor's sister never challenged the district court's jurisdiction. Hailey v. Siglar (App. 6 Dist. 2006) 194 S.W.3d 74, rehearing overruled, review denied. Courts ⚷ 472.3; Judgment ⚷ 7

County court at law, in county that had no statutory probate court, had jurisdiction over independent executor's claim against sister seeking to recover funds that testator transferred to executor's sister before testator's death, as the county court had original jurisdiction over the administration of testator's estate, and any court exercising original probate jurisdiction also had jurisdiction to hear matter incident to the estate. Hailey v. Siglar (App. 6 Dist. 2006) 194 S.W.3d 74, rehearing overruled, review denied. Courts ⚷ 183

Statutory county courts exercising probate jurisdiction are not statutory probate courts unless their statutorily designated name includes the term "probate." Schuele v. Schuele (App. 4 Dist. 2003) 119 S.W.3d 822. Courts ⚷ 198

Constitutional county court that probated will did not have jurisdiction to construe will to divest any party of any title interest, and thus order granting testator's nephew title to property had to be read as either one not construing will to resolve title matter with respect to contingent beneficiaries, who claimed title to property after nephew died without lawful issue of his body, or to extent that order was read as divesting any party of any title interest, order was void and subject to collateral attack, given that probate court historically did not have power to construe provisions of will or to decide matters of title, and probate courts only acquired jurisdiction to consider such matters after underlying order was entered. Garza v. Rodriguez (App. 4 Dist. 2002) 87 S.W.3d 628, rehearing overruled, review denied, on remand 2005 WL 4889996. Wills ⚷ 698

Probate Code rests probate jurisdiction on county courts and, thus, there is no default jurisdiction in district court through State Constitution. Miller v. Woods (App. 9 Dist. 1994) 872 S.W.2d 343. Courts ⚷ 198; Courts ⚷ 472.3

Exclusive original jurisdiction to determine heirship is conferred upon county court sitting in probate, and district court has no such original jurisdiction. Estate of Torrance v. State (App. 8 Dist. 1991) 812 S.W.2d 393. Courts ⚷ 472.3

There is no concurrent jurisdiction between county courts and district courts for matters dealing with probate. Estate of Torrance v. State (App. 8 Dist. 1991) 812 S.W.2d 393. Courts ⚷ 472.4(1)

Suit by independent executor of estate brought against sister of decedent alleging conversion of proceeds of savings account was an action "incident to an estate" such as would fall within county court's probate jurisdiction notwithstanding claim that suit was an ordinary suit for conversion, a civil action arising out of an allegedly wrongful retention of money. English v. Cobb (Sup. 1979) 593 S.W.2d 674. Courts ⚷ 198

### [13] Eminent domain proceedings

County court at law had jurisdiction over pipeline builder's action seeking to condemn portion of landowner's property and landowner's asserted counterclaims totaling over $13 million, though counterclaims exceeded court's statutory jurisdictional limit; counterclaims were part of eminent domain case as gravamen of landowner's counterclaims was challenge to pipeline builder's eminent domain authority, and concurrent jurisdiction statute granted court jurisdiction over eminent domain cases which was not subject to an amount-in-controversy limitation. In re Breviloba, LLC (Tex. 2022) 2022 WL 2282598. Courts ⚖ 472.3

The statutory amount-in-controversy limitation placed on specific additional grant of jurisdiction does not apply to concurrent jurisdiction statute's self-contained grant of jurisdiction over eminent domain cases. In re Breviloba, LLC (Tex. 2022) 2022 WL 2282598. Courts ⚖ 472.1

Challenges to a condemnor's eminent domain authority fall within concurrent jurisdiction statute's grant of jurisdiction over eminent domain cases. In re Breviloba, LLC (Tex. 2022) 2022 WL 2282598. Courts ⚖ 472.1

County was not required to allege an amount in controversy in order to obtain injunctive relief in eminent domain case. In re Burlington Northern and Santa Fe Ry. Co. (App. 14 Dist. 2000) 12 S.W.3d 891, mandamus denied. Eminent Domain ⚖ 191(1)

Although a controversy in eminent domain is within scope of judicial power which is given by statute to a county civil court at law, judicial power may not be exercised by such a court until its jurisdiction is invoked in manner required by law. City of Houston v. Plantation Land Co. (Civ.App. 1969) 440 S.W.2d 691, ref. n.r.e.. Eminent Domain ⚖ 172

County court at law had full and exclusive jurisdiction to determine all issues involved in controversy between oil corporation and drainage district arising from award of commissioners for easement for constructing boxed culvert upon corporation's property, including basic right of drainage district to condemn corporation's property. Jefferson County Drainage Dist. No. 6 v. Gulf Oil Corp. (Civ.App. 1969) 437 S.W.2d 415. Courts ⚖ 472.3

Condemnation is matter for county court and district court cannot enjoin county court from trying any case over which county court has jurisdiction. Jefferson County Drainage Dist. No. 6 v. Gulf Oil Corp. (Civ.App. 1969) 437 S.W.2d 415. Courts ⚖ 480(1); Eminent Domain ⚖ 172

County court for Cameron county had jurisdiction, under Vermon's Ann.Civ.St. art. 1970-305 (repealed; see, now, § 25.0332), to appoint commissioners to act in condemnation proceedings by navigation district against owner of leasehold estate, as against contention that power to appoint commissioners was reserved to county judge of Cameron county. National Ass'n of Audubon Societies v. Arroyo Colorado Nav. Dist. of Cameron and Willacy Counties (Civ.App. 1937) 110 S.W.2d 150. Eminent Domain ⚖ 228

### [14] Forcible entry and detainer proceedings

Statutory probate court did not have exclusive jurisdiction to hear forcible entry and detainer action brought against estate and county court at law had subject matter jurisdiction of such proceeding. Chapman v. Southern Hospitalities, Inc. (App. 12 Dist. 1981) 624 S.W.2d 320. Forcible Entry And Detainer ⚖ 16(2)

### [15] Partition actions

Because the Property Code grants district courts jurisdiction over partition actions, Harris County courts at law also have jurisdiction over partition actions, so long as the amount in controversy falls within the specified range. Eris v. Giannakopoulos (App. 1 Dist. 2012) 369 S.W.3d 618, petition for review filed. Courts ☞ 472.3

### [16] Misdemeanors

State's appeal from justice court's dismissal, based on failure to allege the location of the offense, of misdemeanor complaints alleging failure to stop at stop sign, an offense punishable only by a fine, so that justice court had original jurisdiction, had to be made to county court for trial de novo on the dismissed complaint, rather than being made directly to court of appeals. State v. Alley (Cr.App. 2005) 158 S.W.3d 485. Criminal Law ☞ 260.13

County court had jurisdiction to issue writ of habeas corpus on applications challenging prior misdemeanor convictions for driving while intoxicated (DWI) supporting felony charge. Ex parte Schmidt (Cr.App. 2003) 109 S.W.3d 480, on remand 2003 WL 22304571, on remand 2003 WL 22304626. Habeas Corpus ☞ 230

The statutory county court at law and the judges of that court have the power to issue the writ of habeas corpus when a person is restrained by an accusation or conviction of misdemeanor, and the jurisdiction is not limited to cases in which the petitioner is confined; even though statute permits application to county judge if person is confined on a charge of misdemeanor, the constitution and other statutory provisions give jurisdiction to the county court as provided by law and confer power to issue writ of habeas corpus; abrogating *Ex parte Oyedo*, 939 S.W.2d 785. Ex parte Schmidt (Cr.App. 2003) 109 S.W.3d 480, on remand 2003 WL 22304571, on remand 2003 WL 22304626. Habeas Corpus ☞ 251

Concurrent jurisdiction for the same misdemeanor offense charged in an indictment may be in a county court, one of several county courts at law, a justice court, or a corporation court. Hullum v. State (Cr.App. 1966) 415 S.W.2d 192. Criminal Law ☞ 87; Criminal Law ☞ 90(5)

### [17] Liens

County court did not have jurisdiction to hold that holders of note, who were seeking to foreclose on lien securing payment on note, had right to proceed with foreclosure of lien on land, though county court had jurisdiction over debt based on note. Matherne v. Carre (App. 9 Dist. 1999) 7 S.W.3d 903, rehearing overruled, review denied. Courts ☞ 183

County court did not have subject-matter jurisdiction over suit to enforce mechanic's and materialman's liens against landowners' property. Conger v. Dalrymple (Civ.App. 1980) 608 S.W.2d 808. Courts ☞ 183

### [18] Amount in controversy--In general

Motorist's mere allegation of damages in excess of county court's jurisdictional limits in his amended petition did not deprive trial court of jurisdiction over motorist's action against city arising out of injuries suffered when motorist's car collided with city street sweeper, even if amended petition did not expressly state that additional damages accrued because of passage of time, where amount originally sought was within county court's jurisdiction, there was no proof of fraud, and motorist stated he did not realize extent of future medical damages until after case was originally filed. City of San Antonio v. Ash (App. 4 Dist. 2011) 2011 WL 446279, opinion withdrawn on rehearing 2011 WL 3119718. Courts ☞ 170

Statute providing that county court at law has concurrent jurisdiction with the district court in civil cases in which the matter in controversy exceeds $500 but does not exceed $200,000 values the matter in controversy on the amount of damages alleged by the plaintiff, not on the amount the plaintiff is likely to recover. Sohani v. Sunesara (App. 1 Dist. 2018) 546 S.W.3d 393, rule 53.7(f) motion granted. Courts ⚷ 170

Usually, for the purpose of determining the jurisdiction of a county court at law, the amount in controversy includes all of the damages the plaintiff seeks to recover at the time suit is filed, not merely what the plaintiff is likely to recover. In re City of Dallas (Sup. 2016) 501 S.W.3d 71. Courts ⚷ 169(1)

In the jurisdictional context, the phrase "amount in controversy" means the sum of money or the value of the thing originally sued for. In re City of Dallas (Sup. 2016) 501 S.W.3d 71. Courts ⚷ 169(1)

County court at law was required to determine whether county's tortious interference claim against nearby city would exceed $200,000 jurisdictional cap before court ruled on county's request for pre-suit discovery. In re City of Dallas (Sup. 2016) 501 S.W.3d 71. Courts ⚷ 119.1

Amount in controversy in partition action exceeded county court's $200,000.00 jurisdictional maximum limit, although the plaintiff did not seek damages, where property was valued between $700,000.00 and $950,000.00. Eris v. Giannakopoulos (App. 1 Dist. 2012) 369 S.W.3d 618, petition for review filed. Courts ⚷ 169(2)

County civil court at law lacked subject matter jurisdiction over equipment company's breach of contract claim against conservation and reclamation district, as company, in its original petition, claimed damages of $280,000, which sun exceeded the $100,000 jurisdictional limit of the county civil court at law. Gulf Coast Waste Disposal Authority v. Four Seasons Equipment, Inc. (App. 1 Dist. 2010) 321 S.W.3d 168. Courts ⚷ 169(1)

Amount in controversy did not exceed county civil court at law's jurisdictional limit of $100,000 in proceeding to confirm arbitration award in favor of factoring company regarding tort claimant's alleged breach of agreement regarding transfer of lump-sum payment under structured settlement, although award ordered claimant and company that acted as annuity insurer and annuity obligor to make $100,000 lump-sum payment to factoring company and awarded factoring company $375 in arbitration fees; award required factoring company to pay claimant net amount of $4,625 for assignment of right to future payment under transfer agreement. Transamerica Occidental Life Ins. Co. v. Rapid Settlements, Ltd. (App. 1 Dist. 2008) 284 S.W.3d 385. Alternative Dispute Resolution ⚷ 355; Courts ⚷ 169(5)

County civil court at law lacked subject matter jurisdiction over plaintiff's suit seeking confirmation of arbitration award, as jurisdictional limit of county civil court at law was more than $500 but less than $100,000, excluding interest, statutory or punitive damages, penalties, attorney fees, and costs, copy of arbitration award that was attached to petition to confirm award and expressly incorporated by reference demonstrated that total damages claim involved plaintiff's rights to payments totaling $187,000 plus $500 in arbitration fees, which exceeded the $100,000 jurisdictional limit of the court, and even after subtracting the $13,000 plaintiff owed to defendant under arbitrator's award, amount sought by plaintiff still exceeded $100,000. Transamerica Occidental Life Ins. Co. v. Rapid Settlements, Ltd. (App. 1 Dist. 2008) 262 S.W.3d 409. Alternative Dispute Resolution ⚷ 355; Courts ⚷ 169(5)

"Amount in controversy" when former employee filed employment discrimination suit included front pay sought by him, even if recovery of front pay was speculative and uncertain, and, thus, the amount in controversy exceeded $100,000 and deprived the county court at law of jurisdiction. United Services Auto. Ass'n v. Brite (Sup. 2007) 215 S.W.3d 400. Courts

🔑 169(1)

Prejudgment interest that plaintiff sought in personal injury suit filed in county court was allowed as "eo nominee interest," not "interest as damages," under statute providing that a judgment in a personal injury suit must include prejudgment interest, and thus was not taken in account in determining the court's jurisdiction. Weidner v. Sanchez (App. 14 Dist. 2000) 14 S.W.3d 353, rehearing overruled. Courts 🔑 169(4)

County court at law was without jurisdiction over claims by husband against stepson and stepson's attorney for accounting and distribution of deceased wife's estate, intentional interference with inheritance rights, constructive trust, and intentional infliction of emotional distress, where such claims exceeded $100,000, all claims arose from stepson's taking possession of estate's assets, wife's will was probated as a muniment of title, and all matters related to estate were final and concluded at time claims were brought. Power v. Chapman (App. 6 Dist. 1999) 994 S.W.2d 331. Courts 🔑 169(1)

A county court, constitutional or statutory, is powerless to hear an original injunction or mandamus proceeding unless the plaintiff alleges an amount in controversy within the county court's jurisdiction. Martin v. Victoria Independent School Dist. (App. 13 Dist. 1998) 972 S.W.2d 815, rehearing overruled, review denied. Courts 🔑 170

Aggregating statute, even assuming its applicability to county courts at law, does not apply to require that multiple counterclaims be aggregated to determine amount in controversy for purposes of determining whether county court's maximum statutory jurisdictional limit has been exceeded; statute, which provides that it applies when two or more persons "originally and properly join in one suit," was enacted to allow multiple plaintiffs to aggregate their claims to achieve minimum jurisdictional amount for court, not to defeat jurisdiction for multiple defendants each of whose counterclaims is within jurisdictional limit. Smith v. Clary Corp. (Sup. 1996) 917 S.W.2d 796, rehearing overruled, on remand 949 S.W.2d 452, review denied, rehearing of petition for review overruled. Courts 🔑 169(3)

Statutory county court judge who was properly appointed to sit on district court had authority to hear case even though amount in controversy exceeded $100,000. Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Development, Inc. (App. 13 Dist. 1996) 915 S.W.2d 61, rehearing overruled, writ denied. Judges 🔑 25(1)

So long as original amount in controversy is within jurisdiction limit of statutory county court exercising civil jurisdiction, county court at law may render judgment for amount in excess of statutory jurisdictional limit; statutory jurisdictional limit is thus not limitation on court's power to render judgment. State Farm Fire & Cas. Co. v. Griffin (App. 1 Dist. 1994) 888 S.W.2d 150. Courts 🔑 168

Grants under Vernon's Ann.Civ.St. art. 1760a (repealed; now this section) and Vernon's Ann.Civ.St. art. 1970-62.2 (repealed; see, now, § 25.2222) which conferred concurrent jurisdiction of county and district court in civil cases when matter in controversy exceeded $500 and did not exceed $5,000 were inapplicable in suit to foreclose mechanic's and materialman's liens on property of landowners since amount in controversy was not only determinative matter of jurisdiction issue. Conger v. Dalrymple (Civ.App. 1980) 608 S.W.2d 808.

Ten thousand dollar jurisdictional limit on amount in controversy in actions in County Court at Law of Angelina County applies only to those civil cases where county court exercises concurrent jurisdiction with district court and limitation does not apply to cases being tried under court's probate jurisdiction. English v. Cobb (Sup. 1979) 593 S.W.2d 674. Courts 🔑 183; Courts 🔑 472.3

Where the amount in controversy exceeds the trial court's maximum jurisdiction, any judgment rendered is void; the "amount in controversy" is the amount of damages claimed in the pleading. Tejas Toyota, Inc. v. Griffin (Civ.App. 1979) 587 S.W.2d 775, ref. n.r.e.. Courts 🔑 169(1); Judgment 🔑 16

Jurisdiction is determined by amount in controversy at time of filing of pleadings. Our Fair Lady Health Resort v. Miller (Civ.App. 1978) 564 S.W.2d 410. Courts 🔑 170

County Court at Law did not have jurisdiction of action for reformation of clauses of contract for purchase of equipment, which clauses were in their nature security for payment of balance on purchase price, where addition of unpaid balance of purchase price, or alleged value of equipment to which rights to repossess pertained, whichever was jurisdictional amount of suit, when added to amount of damages sought, exceeded $1,000. Super-Cold Southwest Co. v. Pennington (Civ.App. 1950) 231 S.W.2d 687. Courts 🔑 169(1)

Trial court had basis to dismiss, for want of jurisdiction, inmate's in forma pauperis lawsuit against prison employees for alleged deprivation of inmate's personal property, where amount recoverable in conversion action was reasonable market value of property at time of conversion, purported value of property was $50, and trial court could not entertain claim for $50, even though inmate sought punitive damages and interest. Hammonds v. Camp (App. 7 Dist. 2004) 2004 WL 769373, Unreported. Courts 🔑 121(5); Courts 🔑 121(9)

### [19] ---- Pleadings generally, amount in controversy

Under Texas law, to determine whether plaintiff has alleged claims seeking relief beyond jurisdiction of county court, court must look to amount alleged in plaintiff's pleading. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 170

Under Texas law, in cases of doubt, all intendments of claimant's pleading will be construed in favor of jurisdiction. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 35

Under Texas law, unless it is clear from face of pleadings that court lacks jurisdiction of amount in controversy, court should retain the case. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 122

Under Texas law, to avoid jurisdiction of court, claimant must affirmatively plead himself out of court. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 32.3

Plaintiffs' statement in their petition in Texas state court that damages "far exceeded" minimal jurisdictional limits of that court furnished no basis for concluding that amount in controversy exceeded $50,000 required for removal on basis of diversity jurisdiction; at most, minimum amount required in Texas district courts is $500, and claims of all plaintiffs are aggregated to reach that amount. 'Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A., C.A.5 (Tex.)1993, 988 F.2d 559, rehearing and suggestion for rehearing en banc denied, rehearing denied 5 F.3d 530, certiorari denied 114 S.Ct. 685, 510 U.S. 1041, 126 L.Ed.2d 653. Removal Of Cases 🔑 75

Judgment creditor's petition, alleging damages exceeding $84,000 but "within the jurisdictional limits of this court," controlled for jurisdictional purposes, notwithstanding that value of property interest at issue in court's judgment was $340,000, which exceeded county court at law's $100,000 jurisdictional maximum amount in controversy. Parham Family

Ltd. Partnership v. Morgan (App. 14 Dist. 2014) 434 S.W.3d 774. Courts ⚷ 170

Plaintiff's petition was defective in failing to assert that the matter in controversy was within the monetary limitations of the county court at law's jurisdiction, but plaintiff could cure this defect by proving jurisdiction in the trial court, as his original petition did not affirmatively demonstrate an absence of jurisdiction. United Services Auto. Ass'n v. Brite (Sup. 2007) 215 S.W.3d 400. Courts ⚷ 170

Unaccrued claim asserted by community association in its petition for recovery of property owner's unpaid maintenance assessments, along with the claim for previous year's assessment, could be included in determining amount in controversy for jurisdictional purposes; assessment at issue in unaccrued claim was alleged to become due and delinquent before trial, and there was no evidence that association included the unaccrued claim in bad faith in order to confer jurisdiction upon the court. Haas v. Ashford Hollow Community Improvement Ass'n, Inc. (App. 14 Dist. 2006) 209 S.W.3d 875. Courts ⚷ 169(1)

Plaintiff's allegation that amount in controversy exceeded minimum jurisdictional limits was sufficient to grant County Court at law jurisdiction over action, even though there was no allegation that the amount in controversy was within the court's maximum jurisdictional limit and plaintiff's petition indicated that the maximum amount claimed for all damages was greater than maximum jurisdictional limit, where there was a fact question as to whether the actual amount of plaintiff's damages was within court's jurisdictional limits at time original petition was filed. United Services Auto. Ass'n v. Brite (App. 4 Dist. 2005) 161 S.W.3d 566, review granted, reversed 215 S.W.3d 400. Courts ⚷ 122

Amount in controversy between parties, for purposes of subject matter jurisdiction, is determined by good faith pleadings of parties and, ultimately, by proof adduced at trial. Smith Detective Agency & Nightwatch Service, Inc. v. Stanley Smith Sec., Inc. (App. 5 Dist. 1996) 938 S.W.2d 743, writ denied. Courts ⚷ 122

Court should presume in favor of jurisdiction, unless lack of jurisdiction affirmatively appears on face of petition. Taliancich v. Betancourt (App. 13 Dist. 1991) 807 S.W.2d 891. Courts ⚷ 35

Unless it is clear from pleadings that court lacks jurisdiction of amount in controversy, it should retain case. Taliancich v. Betancourt (App. 13 Dist. 1991) 807 S.W.2d 891. Courts ⚷ 122

Even if jurisdictional amount is never established by pleading, plaintiff may recover if jurisdiction is proved at trial. Taliancich v. Betancourt (App. 13 Dist. 1991) 807 S.W.2d 891. Courts ⚷ 122

Only when party specifically pleads amount under minimum jurisdiction of court does party plead himself out of court. Taliancich v. Betancourt (App. 13 Dist. 1991) 807 S.W.2d 891. Courts ⚷ 122

Trial court was bound by its determination that it had jurisdiction based on pleading of an unspecified amount in husband's original petition in dispute with wife over personal property following divorce and, viewing claims of wife and two children individually, was vested with jurisdiction to award wife $2,568.20 and each child $9,802.29, representing savings account funds and value of destroyed property, notwithstanding that limit on amount of trial court's jurisdiction under statute in effect at that time was from $500 to $10,000. Blake v. Blake (App. 1 Dist. 1987) 725 S.W.2d 797. Courts ⚷ 168

Whether jurisdiction exists in county court at law is determined by amount alleged in plaintiff's petition. Kitchen Designs, Inc. v. Wood (Civ.App. 1979) 584 S.W.2d 305, ref. n.r.e.. Courts ⚷ 169(1)

Pursuant to general jurisdiction statute, county court at law lacked subject matter jurisdiction over individual's action against corporation and its officer for tortious interference with contractual and business relationship, where court determined, after review of pleadings and evidence, that matter in controversy exceeded statutory $100,000 limit and no effort was made to direct court to evidence that would weigh against such finding. Frank Smith's, Inc. v. Sheffield (App. 3 Dist. 2003) 2003 WL 192099, Unreported, rehearing overruled. Courts ☞ 182.1

**[20] ---- Amendment of pleadings, amount in controversy**

In the absence of pleading and proof that the allegations in a plaintiff's original petition have been made fraudulently or in bad faith, the fact that the plaintiff's amended petition alleges damages in excess of the court's jurisdictional limit does not necessarily deprive the court of its jurisdiction over the case. Weidner v. Sanchez (App. 14 Dist. 2000) 14 S.W.3d 353, rehearing overruled. Courts ☞ 170

Defendants to personal injury lawsuit did not establish that plaintiff and her attorney knew or should have known that injuries were permanent when original petition alleging $95,000 in damages was filed, and thus, amended petition alleging damages over $100,000 jurisdictional limit did not deprive statutory county court of subject matter jurisdiction based on plaintiff's bad faith, even if attorney exhibited a pattern of filing claims in county court valued at $95,000, where plaintiff was still undergoing treatment at time of original petition, and counsel claimed he did not realize treating doctor considered injuries permanent until he took doctor's deposition nearly two years later. Weidner v. Sanchez (App. 14 Dist. 2000) 14 S.W.3d 353, rehearing overruled. Courts ☞ 170

If party alleges amount of damages in excess of trial court's jurisdictional limits and damages as alleged are liquidated and nonseverable, then party cannot freely amend pleadings to reduce liquidated damage claim to amount to be within court's jurisdiction; however, party may freely reduce unliquidated claim if party pleads in good faith. Smith Detective Agency & Nightwatch Service, Inc. v. Stanley Smith Sec., Inc. (App. 5 Dist. 1996) 938 S.W.2d 743, writ denied. Pleading ☞ 250

Defendant who claimed unliquidated damages in counterclaim was free to amend counterclaim to state amount of damages within trial court's jurisdiction. Smith Detective Agency & Nightwatch Service, Inc. v. Stanley Smith Sec., Inc. (App. 5 Dist. 1996) 938 S.W.2d 743, writ denied. Pleading ☞ 250

If plaintiff's original petition is properly brought in particular court, but amendment increases amount in controversy above court's jurisdictional limits, court continues to have jurisdiction if additional damages accrued because of passage of time. Continental Coffee Products Co. v. Cazarez (Sup. 1996) 937 S.W.2d 444, rehearing overruled. Courts ☞ 170

Mere allegation of damages in excess of county civil court's jurisdictional limits in amended petition did not deprive court of jurisdiction over workers' compensation claimant's retaliation charge against employer and employee relations manager. V.T.C.A., Labor Code § 451.003; Continental Coffee Products Co. v. Cazarez (Sup. 1996) 937 S.W.2d 444, rehearing overruled. Courts ☞ 170

Although the amount of relief requested by the buyer in its first amended original petition against the seller exceeded the jurisdictional limits of the trial court, where the original petition did not request an amount in excess of the jurisdictional limit, the trial court properly acquired jurisdiction through the good-faith allegations of the buyer in its original petition, and the subsequent amendment to the petition, seeking only additional attorney fees accruing due to the further prosecution of the suit, did not divest the trial court of jurisdiction. Printing Center of Texas, Inc. v. Supermind Pub. Co., Inc. (App. 14 Dist. 1984) 669 S.W.2d 779. Courts ☞ 122

Where original petition filed in county court sought damages, within jurisdictional limit of county court, for wrongful conversion of automobile, and amended petition added new defendant to original count, and also added counts for wrongful inducement to enter into lease and for recovery of security deposit, with aggregate damage claims in new counts exceeding county court jurisdictional limits, original count constituted old suit with new defendant, related back to date of filing of original petition, and county court had jurisdiction thereof; however, new counts in amended petition presented new cause of action involving controversy in excess of jurisdictional limits of county court and were properly dismissed for lack of jurisdiction. Elkins v. Auto Recovery Bureau (App. 5 Dist. 1982) 649 S.W.2d 73, ref. n.r.e.. Courts 🔑 170

Amount in controversy in action in which original petition alleged damages of $828.83 for cost of repairs, $450 for car rental, and $3,000 exemplary damages, and in which first amended original petition, upon which parties went to trial, alleged actual damages of $3,256.57 and $3,000 exemplary damages and was never properly amended prior to trial, exceeded jurisdictional limit of county court at law. Ken Pruitt Buick Co. v. Henderson (Civ.App. 1976) 545 S.W.2d 261. Courts 🔑 170

### [21] ---- Counterclaims, amount in controversy

Under Texas law, defendant's allegation that county court lacked jurisdiction over his counterclaim because amount actually in controversy exceeded $50,000 fell short of affirmatively pleading an amount in excess of county court's statutory maximum jurisdictional limit, which was $100,000, and thus county court properly maintained jurisdiction over defendant's counterclaims. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 169(5)

County court at law had jurisdiction over defendant's counterclaim, which asserted unliquidated damages "not to exceed the maximum jurisdictional limits of the court and not less than $95,000," even though the unliquidated damages alleged in first amended counterclaim exceeded maximum jurisdictional limits of court. Smith Detective Agency & Nightwatch Service, Inc. v. Stanley Smith Sec., Inc. (App. 5 Dist. 1996) 938 S.W.2d 743, writ denied. Courts 🔑 183

Counterclaim is not within jurisdiction of county court at law when amount in controversy exceeds maximum jurisdictional limit of court. Smith v. Clary Corp. (Sup. 1996) 917 S.W.2d 796, rehearing overruled, on remand 949 S.W.2d 452, review denied, rehearing of petition for review overruled. Courts 🔑 169(5)

Supreme Court does not favor construing statutes so as to repeal by implication county court's ancillary jurisdiction to entertain each defendant's counterclaim up to jurisdictional maximum of court. Smith v. Clary Corp. (Sup. 1996) 917 S.W.2d 796, rehearing overruled, on remand 949 S.W.2d 452, review denied, rehearing of petition for review overruled. Courts 🔑 160

Where carrier filed suit in county court at law to set aside award of the Industrial Accident Board in the sum of $2,377.62, and claimant counterclaimed for benefits in unspecified amount within jurisdictional limits of court, verdict for claimant in amount of $34,692.21 representing accrued disability payments, additional disability payments, and costs of reasonable medical care was proper even though county court's jurisdiction did not exceed $5,000 exclusive of interest. Standard Fire Ins. Co. v. Stigger (App. 5 Dist. 1982) 635 S.W.2d 667. Workers' Compensation 🔑 1828

Where counterclaim and amended counterclaim exceeded jurisdictional limits of county court at law, such counterclaim should have been dismissed, notwithstanding that claim of petition was within jurisdictional limits of court. Kitchen Designs, Inc. v. Wood (Civ.App. 1979) 584 S.W.2d 305, ref. n.r.e.. Pretrial Procedure 🔑 627

Contracting company's counterclaim for more than $100,000 against supply company, in supply company's action to collect on sworn account, exceeded maximum jurisdictional amount of the Probate Court and, thus, was subject to dismissal. H & S Supply Co., Inc. v. Oscar Renda Contracting, Inc. (App. 2 Dist. 2003) 2003 WL 1897584, Unreported. Courts 🔑 169(5)

### 22 ---- Crossclaims, amount in controversy

Cross actions are treated as separate suits and must meet the same maximum jurisdictional requirement as an original action when brought in a court of limited jurisdiction. Tejas Toyota, Inc. v. Griffin (Civ.App. 1979) 587 S.W.2d 775, ref. n.r.e.. Courts 🔑 168

Cross action which, as amended by trial amendment, sought $4,582.50 in damages plus $993 in attorney fees demanded a sum in excess of $5,000 jurisdictional limitation of the county court at law, so that the court had no jurisdiction over the action. Tejas Toyota, Inc. v. Griffin (Civ.App. 1979) 587 S.W.2d 775, ref. n.r.e.. Courts 🔑 169(4)

### 23 ---- Separate causes of action, amount in controversy

Where petition filed by landlord against tenant sought payment of two months' rent and related payments and that amount totalled more than $5,000, county court did not have jurisdiction, even though each month's rental under lease contract constitutes separate and independent cause of action. Williams v. Le Garage De La Paix, Inc. (Civ.App. 1978) 562 S.W.2d 534, ref. n.r.e.. Courts 🔑 169(1)

### 24 ---- Subsequent events, amount in controversy

Under Texas law, jurisdiction is determined by amount in controversy at time original pleading is filed. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 122

Under Texas law, once jurisdiction attaches, it cannot be defeated by any subsequent fact or event. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 30

Under Texas law, claimant cannot deprive court of jurisdiction already properly obtained simply by amending his pleading to allege damages in excess of court's jurisdictional limits. Jones v. Sheehan, Young & Culp, P.C., C.A.5 (Tex.)1996, 82 F.3d 1334. Courts 🔑 170

Jurisdiction is based on allegations in petition about amount in controversy; absent anything on face of those petitions suggesting nor any evidence in record proving that amount in controversy is fraudulently alleged, averments in petition control. Continental Coffee Products Co. v. Cazarez (Sup. 1996) 937 S.W.2d 444, rehearing overruled. Courts 🔑 170

Where plaintiff, in his petition, sought recovery of an amount within county court at law's jurisdictional amount, jurisdiction attached, and no subsequent fact or event defeated the court's jurisdiction of plaintiff's claim. First Nat. Bank of McAllen v. Brown (App. 13 Dist. 1982) 644 S.W.2d 808, ref. n.r.e.. Courts 🔑 169(1)

The county civil court at law, having obtained jurisdiction over an independent suit to enforce a contract to make monthly payments provided for any property settlement agreement, was entitled to retain jurisdiction when the amount in controversy

had grown past its jurisdictional limits and, hence, to enter a judgment in excess of its $5,000 jurisdiction. Underhill v. Underhill (Civ.App. 1981) 614 S.W.2d 178, ref. n.r.e.. Courts ⚷ 170

Jurisdiction of subject matter and parties, once acquired by county court, could not be divested by filing of subsequent suit in district court for sum greater than jurisdictional limit of county court, and thus county court action was not abated by filing of district court claim, which was alleged to be compulsory counterclaim. Pinckard v. Associated Popcorn Distributors, Inc. (Civ.App. 1981) 611 S.W.2d 491. Abatement And Revival ⚷ 11

Where builder sought recovery on contract in amount of $782.89 plus $350 attorney fees, pleading brought amount in controversy within jurisdictional limits of county court at law, jurisdiction attached and no subsequent fact or event would defeat court's jurisdiction over builder's claim. Kitchen Designs, Inc. v. Wood (Civ.App. 1979) 584 S.W.2d 305, ref. n.r.e.. Courts ⚷ 169(1)

Once jurisdiction is lawfully and properly acquired, no subsequent fact or event in particular case serves to defeat jurisdiction. Our Fair Lady Health Resort v. Miller (Civ.App. 1978) 564 S.W.2d 410. Courts ⚷ 30

Where county court at law, at time suit against tenant by landlord seeking rent was filed had jurisdiction where amount claimed exceeded $200 but was less than $500 and landlord sought recovery of $180 rent plus $90 attorney's fees and in addition sought recovery of rent as it accrued for each month of unexpired term of lease, and at time case was set for trial amount due in rent was $1,080 but court's jurisdiction had been increased to $5,000, court had jurisdiction to hear case. Regal Properties v. Donovitz (Civ.App. 1972) 479 S.W.2d 748, ref. n.r.e.. Courts ⚷ 160

Where action to recover $500 deposit made to insure plaintiff's right to buy certain boat if plaintiff should decide he wanted to buy it, and for exemplary damages, was properly in County Court at law, and such court had jurisdiction, mere fact that defendants subsequently filed suit in district court against plaintiff for more than $2,000, on alleged contract for purchase of the boat, did not constitute ground for abating or dismissing plaintiff's action on theory of policy of avoiding multiplicity of suits, of policy of encouraging amicable settlement of difficulties, or of estoppel by judgment. Nelms v. C. B. Delhomme, Inc. (Civ.App. 1960) 340 S.W.2d 123. Abatement And Revival ⚷ 6; Pretrial Procedure ⚷ 552; Pretrial Procedure ⚷ 562

### [25] ---- Treble damages, amount in controversy

Damages in amount of $4,750 sought in negligence action were within county court's jurisdiction, but treble damages prayed for in deceptive trade practices claim were in excess of the court's jurisdictional limits, and thus, trial court should have retained negligence cause of action while dismissing the other. Hawkins v. Anderson (App. 5 Dist. 1984) 672 S.W.2d 293. Courts ⚷ 169(6)

Petition alleging violation of Texas Deceptive Trade Practices-Consumer Protection Act (V.T.C.A. Bus. & C. § 17.41 et seq.) and for alleged breach of bailment contract was not within jurisdiction of county court where petition asserted an amount of actual damages which, when tripled, exceeded maximum jurisdiction of court provided in Vernon's Ann.Civ.St. art. 1970a (repealed; now this section). Allright, Inc. v. Guy (Civ.App. 1979) 590 S.W.2d 734, ref. n.r.e.. Courts ⚷ 121(9)

### [26] ---- Attorney fees, amount in controversy

In limited liability company's (LLC) action against its prior owner, complaint in intervention for declaratory judgment filed

by prior owner's former business partner was not within the subject-matter jurisdiction of the county court at law based on the amount in controversy, where the former business partner sought no damages other than attorney fees. Abdullatif v. Erpile, LLC (App. 14 Dist. 2015) 460 S.W.3d 685. Corporations and Business Organizations ☞ 3654(3); Courts ☞ 170; Courts ☞ 183; Declaratory Judgment ☞ 273

Teachers failed to plead any elements of an amount in controversy which would have given county court jurisdiction over their action for mandamus and injunctive relief, alleging that school district violated Open Meetings Act and Public Information Act; although teachers sought attorney fees and costs, that prayer was incidental to real relief sought and Government Code excluded attorney fees and costs in determining amount in controversy. Martin v. Victoria Independent School Dist. (App. 13 Dist. 1998) 972 S.W.2d 815, rehearing overruled, review denied. Courts ☞ 170

Matter in controversy under petition seeking damages in the total sum of $4,500 plus "reasonable attorney's fees" did not exceed the $5,000 jurisdictional limit of county court despite plaintiffs' failure to allege specific amount of attorney's fees sought. Whitley v. Morning (App. 12 Dist. 1991) 814 S.W.2d 537. Courts ☞ 170

Claim of attorney fees on appeal was severable item of plaintiff's contractual claim for attorney fees which was properly deleted by postverdict, prejudgment amendment to reduce entire claim to amount within county court's jurisdiction, especially where defendant had consented to forum. Failing v. Equity Management Corp. (App. 1 Dist. 1984) 674 S.W.2d 906. Courts ☞ 169(4)

A demand for attorney fees in a petition, as well as attorney fees for appellate work, constitute part of the amount in controversy in the determination of such amount for jurisdictional purposes. Printing Center of Texas, Inc. v. Supermind Pub. Co., Inc. (App. 14 Dist. 1984) 669 S.W.2d 779. Courts ☞ 121(5)

Award of attorney fees in excess of $5,000 did not deprive county court at law of its jurisdiction, notwithstanding that its maximum jurisdictional amount in controversy was $5,000. Allied Finance Co. v. Garza (App. 13 Dist. 1981) 626 S.W.2d 120, ref. n.r.e.. Courts ☞ 169(4)

Attorney's fees were an element of damages and were not mere court costs and hence were includible in jurisdictional amount of County Court at Law, where terms and conditions of personal property lease agreement sued on as printed on reverse side of original invoice included a provision for attorney's fee. Norman v. Safway Products, Inc. (Civ.App. 1966) 404 S.W.2d 69. Courts ☞ 169(4)

### [27] ---- Judgments, amount in controversy

Limitation on amount in controversy under Vernon's Ann.Civ.St. art. 1970a (repealed; now this section) was not a limitation on court's power to render judgment. Standard Fire Ins. Co. v. Stigger (App. 5 Dist. 1982) 635 S.W.2d 667. Courts ☞ 168

### [28] Subject matter jurisdiction

In limited liability company's (LLC) action against its prior owner for declaratory judgment that he no longer had a membership interest in LLC, complaint in intervention for declaratory judgment filed by prior owner's former business partner was not so "inherently intertwined" with the LLC's claims as to grant the county civil court at law subject-matter jurisdiction over the former partner's complaint in intervention, where the former partner asserted independent claims for declaratory judgment that his settlement agreement with the prior owner was enforceable but that former partner was excused

from performing due to a breach by prior owner, and none of the claims asserted were within the county civil court at law's exclusive jurisdiction. Abdullatif v. Erpile, LLC (App. 14 Dist. 2015) 460 S.W.3d 685. Corporations and Business Organizations ⚷ 3654(3); Courts ⚷ 183; Declaratory Judgment ⚷ 273

Although value of property alleged to have been fraudulently transferred exceeded county court at law's jurisdictional maximum amount in controversy, court had subject matter jurisdiction, based on subject matter of claim, rather than amount in controversy; court had jurisdiction to "decide the issue of title to real or personal property" and to "hear a suit for the enforcement of a lien on real property." Parham Family Ltd. Partnership v. Morgan (App. 14 Dist. 2014) 434 S.W.3d 774. Courts ⚷ 169(2); Courts ⚷ 183

County court at law, rather than justice court, had jurisdiction, in prosecution for class B misdemeanor of knowing disclosure to a member of the public of a certified agenda or tape recording of a meeting that was lawfully closed to the public under the Texas Open Meetings Act (TOMA), as conviction carried sentence of confinement and maximum fine for offense exceeded $500. Cooksey v. State (App. 11 Dist. 2012) 377 S.W.3d 901. Criminal Law ⚷ 87

District court, not county court at law, had exclusive subject matter jurisdiction over testamentary trust beneficiary's action against trustee seeking removal of trustee, an accounting, appointment of a successor trustee, and money damages and attorney's fees, and thus judgment rendered by county court at law was void. Carroll v. Carroll (Sup. 2010) 304 S.W.3d 366. Courts ⚷ 472.3; Trusts ⚷ 167; Trusts ⚷ 298

Subject matter jurisdiction continues even if the plaintiff subsequently amends the petition by increasing the amount in controversy above the court's jurisdictional limits, if the additional damages accrued because of the passage of time. Weidner v. Sanchez (App. 14 Dist. 2000) 14 S.W.3d 353, rehearing overruled. Courts ⚷ 170

Subject matter jurisdiction is never presumed and cannot be waived. Continental Coffee Products Co. v. Cazarez (Sup. 1996) 937 S.W.2d 444, rehearing overruled. Courts ⚷ 35; Courts ⚷ 37(1)

County court at law must not only have jurisdiction over amount in controversy, but must also have subject matter jurisdiction over counterclaim. Smith v. Clary Corp. (Sup. 1996) 917 S.W.2d 796, rehearing overruled, on remand 949 S.W.2d 452, review denied, rehearing of petition for review overruled. Courts ⚷ 183

### [29] Concurrent jurisdiction--In general

County courts at law are courts of limited jurisdiction, and many lack jurisdiction over a matter in controversy that exceeds $200,000. In re City of Dallas (Sup. 2016) 501 S.W.3d 71. Courts ⚷ 168; Courts ⚷ 183

In civil cases where the amount in controversy exceeds $500 but does not exceed $200,000, the county courts at law and the district courts have concurrent jurisdiction. In re Dominguez (App. 8 Dist. 2013) 416 S.W.3d 700. Courts ⚷ 472.3

The concurrent jurisdiction of a statutory county court with a district court is only applicable when the statutory county court is exercising civil jurisdiction concurrent with the jurisdiction of a constitutional county court. Thielemann v. Kethan (App. 1 Dist. 2012) 371 S.W.3d 286, rehearing overruled, review denied, rehearing of petition for review denied. Courts ⚷ 472.3

The general grant of jurisdiction of a statutory county court includes concurrent jurisdiction with constitutional county courts

and district courts in civil cases with an amount in controversy between $500 and $100,000. In re Marriage of Skarda (App. 7 Dist. 2011) 345 S.W.3d 665. Courts ☞ 472.3

Court clerk's assignment to county court at law, rather than district court, of mobile home owner's lawsuit alleging claim for breach of contract against landowners was appropriate, as case did not involve trespass to try title, and, thus, county court at law and district court had concurrent jurisdiction, and, in case of concurrent jurisdiction, clerk was to assign case to either the district court or the statutory county court in accordance with local administrative rules established by the local administrative judge. Chambers v. Pruitt (App. 5 Dist. 2007) 241 S.W.3d 679. Courts ☞ 472.3

County court at law had jurisdiction to decide mobile home owner's claim that owners of land on which mobile home was located breached an alleged oral contract to sell land to her, pursuant to statute providing that, in civil cases where amount in controversy exceeded $500 but did not exceed $100,000, county courts at law and district courts had concurrent jurisdiction. Chambers v. Pruitt (App. 5 Dist. 2007) 241 S.W.3d 679. Courts ☞ 472.3

County civil courts at law have concurrent jurisdiction with district courts in civil cases in which the amount in controversy falls within a certain jurisdictional dollar limit for statutory county courts. Weidner v. Sanchez (App. 14 Dist. 2000) 14 S.W.3d 353, rehearing overruled. Courts ☞ 472.3

Where prosecution of motorist for driving while intoxicated was begun by filing of complaint and presentment of information in County Court at Law of Lubbock County after enactment of Vernon's Ann.Civ.St. art. 1970-340.1 (repealed; see, now, § 25.1542), which created County Court at Law No. 2 of Lubbock County which had concurrent jurisdiction with County Court at Law No. 1, County Court at Law No. 2 had jurisdiction to try case and enter judgment of conviction. Newsom v. State (Cr.App. 1963) 372 S.W.2d 681. Criminal Law ☞ 87

### [30] ---- Transfers within county, concurrent jurisdiction

Under statute governing enactment of local rules of court, county could adopt local rules permitting transfer of cases from district court to county court at law, where two courts had concurrent jurisdiction. In re Siemens Corp. (App. 5 Dist. 2005) 153 S.W.3d 694. Courts ☞ 78

Where legislature, in creating County Court at Law No. 2 and County Court at Law No. 3 for Harris County, conferred upon both courts concurrent criminal jurisdiction over misdemeanor offenses, and prosecution for drunken driving was instituted when complaint and information were filed in County Court at Law No. 2, defendant's attack upon jurisdiction of County Court at Law No. 3 which entered a judgment of conviction, made for first time on appeal, came too late notwithstanding absence of showing how case got from one court to the other, in view of presumption that proper transfer was made. Gower v. State (Cr.App. 1960) 169 Tex.Crim. 81, 332 S.W.2d 328. Criminal Law ☞ 1033.1; Criminal Law ☞ 1144.5

### [31] ---- Injunctions, concurrent jurisdiction

County court at law No. 2 of Harris county had jurisdiction of application for temporary injunction restraining execution on judgment rendered in county court at law of Harris county. Wilkenfeld v. Ballard (Civ.App. 1935) 84 S.W.2d 279. Courts ☞ 480(3)

### [32] ---- Workers compensation

County civil court had concurrent subject matter jurisdiction with district court over workers' compensation claimant's retaliation charge against employer and employee relations manager; statutory language that district courts "shall" or "may" restrain violations of anti-retaliation law did not grant exclusive jurisdiction to district courts. Continental Coffee Products Co. v. Cazarez (Sup. 1996) 937 S.W.2d 444, rehearing overruled. Courts 🔑 472.3

### [33] Injunctions

County court of Cameron county at law had no jurisdiction of action to enforce specific performance of contract by means of injunction. McAllen and Harlingen Local No. 688 of International Alliance of Theatrical State Employees and Moving Picture March. McAllen and Harlingen Local No. 688 of International Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators of U.S. and Canada v. Publix Theatres Corp. (Civ.App. 1932) 51 S.W.2d 1090. Injunction 🔑 1504

V. T. C. A., Government Code § 25.0003, TX GOVT § 25.0003

Current through the end of the 2021 Regular and Called Sessions of the 87th Legislature.
(C) 2021 Thomson Reuters. No Claim to Orig. US Gov. Works.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Blackburn on behalf of William Richard Thompson
Bar No. 788537
efile@dpslawgroup.com
Envelope ID: 102496798
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellants Brief
Status as of 6/27/2025 7:07 AM CST

Associated Case Party: FrancesSpanosShelton

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kirk Pittard | | kpittard@dpslawgroup.com | 6/26/2025 5:03:01 PM | SENT |
| Craig Cherry | 24012419 | ccherry@cjsjlaw.com | 6/26/2025 5:03:01 PM | SENT |
| Rick Thompson | | rthompson@dpslawgroup.com | 6/26/2025 5:03:01 PM | SENT |
| Scott James | | sjames@cjsjlaw.com | 6/26/2025 5:03:01 PM | SENT |
| Michala Quillen | | kquillen@cjsjlaw.com | 6/26/2025 5:03:01 PM | SENT |
| Ryan Johnson | | rjohnson@cjsjlaw.com | 6/26/2025 5:03:01 PM | SENT |

Associated Case Party: Vernon Leuschner

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Angus McSwain | 13861100 | mcswain@thetexasfirm.com | 6/26/2025 5:03:01 PM | SENT |
| Mark Firmin | 24099614 | firmin@thetexasfirm.com | 6/26/2025 5:03:01 PM | SENT |

Associated Case Party: RobertLeeSpanos

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Dunnam | 6258010 | jimdunnam@dunnamlaw.com | 6/26/2025 5:03:01 PM | SENT |
| Mason Dunnam | | masondunnam@dunnamlaw.com | 6/26/2025 5:03:01 PM | SENT |
| Andrea Mehta | | andreamehta@dunnamlaw.com | 6/26/2025 5:03:01 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jenn Haring | | jharing@cjsjlaw.com | 6/26/2025 5:03:01 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Blackburn on behalf of William Richard Thompson
Bar No. 788537
efile@dpslawgroup.com
Envelope ID: 102496798
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellants Brief
Status as of 6/27/2025 7:07 AM CST

Case Contacts

| Jenn Haring | | jharing@cjsjlaw.com | 6/26/2025 5:03:01 PM | SENT |
| Sarah Rowell | | rowell@thetexasfirm.com | 6/26/2025 5:03:01 PM | SENT |
| Ashley Snyder | | snyder@thetexasfirm.com | 6/26/2025 5:03:01 PM | SENT |
| Kelly Blackburn | | efile@dpslawgroup.com | 6/26/2025 5:03:01 PM | SENT |